**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AEARO TECHNOLOGIES LLC, *et al.*,[1] | ) | Case No. 22-02890-JJG-11 |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING THE
DEBTORS TO FILE ONE LIST OF THE TOP LAW FIRMS
REPRESENTING THE LARGEST NUMBERS OF TORT PLAINTIFFS
ASSERTING CLAIMS AGAINST THE DEBTORS, (II) AUTHORIZING
THE DEBTORS TO FILE ONE CONSOLIDATED CREDITOR MATRIX,
(III) AUTHORIZING THE LISTING OF ADDRESSES OF COUNSEL FOR
TORT CLAIMANTS IN THE CREDITOR MATRIX IN LIEU OF CLAIMANTS'
ADDRESSES, (IV) AUTHORIZING THE DEBTORS TO REDACT PERSONALLY
IDENTIFIABLE INFORMATION, (V) APPROVING CERTAIN NOTICE PROCEDURES
FOR TORT CLAIMANTS, (VI) APPROVING THE FORM AND MANNER OF NOTICE OF THE
COMMENCEMENT OF THESE CHAPTER 11 CASES, AND (VII) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (the "Motion"):[2]

**Requested Relief**

1.    By this motion, the Debtors seek entry of an order, substantially in the form

attached hereto as **Exhibit A** (the "Order"): (i) authorizing the Debtors to file a single

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief*, filed contemporaneously herewith. The location of the Debtors' service address for the purposes of these chapter 11 cases is: 7911 Zionsville Road, Indianapolis, Indiana 46268.

[2]    The facts and circumstances supporting this Motion are set forth in the *Declaration of John R. Castellano in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") filed contemporaneously with this Motion and incorporated by reference herein. Capitalized terms used but not immediately defined have the meanings given to them elsewhere in this Motion or in the First Day Declaration, as applicable.

consolidated list consisting of the top law firms representing the largest numbers of Tort Claimants (as defined below) asserting claims against the Debtors as determined by the volume or other related factors (the  "Top Counsel List"); (b) authorizing the Debtors to file one consolidated Creditor Matrix  (the "Creditor Matrix"), (c) authorizing the listing of addresses of counsel for the claimants asserting Combat Arms Claims or certain respirator claims (collectively, the "Tort Claims") against the Debtors (the "Tort Claimants") in the Creditor Matrix (all as defined below) in lieu of the claimants' addresses; (d) authorizing the Debtors to redact certain personally identifiable information; (e) approving certain notice procedures for the Tort Claimants; (f) approving the form and manner of the Notice of Commencement (as defined below) of these chapter 11 cases and the scheduling of the meeting of creditors under section 341 of the Bankruptcy Code (as defined below); and (g) granting related relief.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Indiana (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the Southern District of Indiana, dated July 11, 1984.  This is a core proceeding pursuant to 28 U.S.C. § 157.  The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 107(c), and 521 of title 11 of the United States Code (the "Bankruptcy Code"), rules 1007, 2002, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules B-1007-1, B-1009, and

B-9013-3 of the Local Rules of the United States Bankruptcy Court for the Southern District of Indiana (the "Local Rules").

## **Background**

5.      Under the brand name Aearo Technologies, the Debtors manufacture and sell custom noise, vibration, thermal, and shock protection solutions, primarily serving the aerospace, commercial vehicle, heavy equipment, and electronics industries.   The Debtors have 330 employees and generated approximately $108 million in direct sales in 2021.   The Debtors are headquartered in Indianapolis, Indiana, where they have been based for over 40 years and where they maintain their main operating facility.  In 2008, the Debtors were acquired by non-Debtor 3M Company ("3M," and together with its non-Debtor affiliates, the "Non-Debtor Affiliates"),[3] through its Safety and Industrial Business Group, in a stock purchase.   The Debtors are wholly-owned subsidiaries of non-Debtor 3M.

6.      In recent years, the Debtors have been the subject of a flood of tort litigation primarily arising from the sale of noise-reduction earplugs, known as "Dual-Ended Combat Arms — Version 2" earplugs (the "Combat Arms Earplugs").  Five of the Debtors and non-Debtor 3M are the named defendants in the largest multidistrict litigation ("MDL") in history, in which approximately 230,000 unvetted claims are pending against the Debtors in the Northern District of Florida.  The MDL surpasses most of its predecessor and contemporary MDLs by orders of magnitude.  The claims, which are centralized for pretrial proceedings, allege hearing loss and other personal injuries arising from the Combat Arms Earplugs, which were developed by the Debtors more than 20 years ago.  A detailed description of the facts and circumstances surrounding

---

[3]      Non-Debtor 3M and its other Non-Debtor Affiliates are not debtors in these chapter 11 cases.

the Debtors' litigation is set forth in the Informational Brief[4] filed contemporaneously with this Motion and incorporated by reference herein.

7.      Through these chapter 11 cases, the Debtors seek to achieve a fair and efficient resolution to the litigation, reduce uncertainty, and increase clarity for all stakeholders, while avoiding the time and complexity of litigating thousands of cases.  To ensure that they can achieve these goals, on July 25, 2022, the Debtors entered into a funding and indemnification agreement under which non-Debtor 3M has agreed to fully fund these chapter 11 cases and to contribute $1 billion to a trust to ensure claimants determined to be entitled to compensation receive payment (the "Funding Agreement").  If necessary to achieve a resolution, non-Debtor 3M has committed to provide additional funding.  Non-Debtor 3M's agreement to provide the Debtors with funding for tort claims will ensure fair compensation is available to claimants who are determined to be entitled to compensation based on an equitable and efficient estimation of liabilities, unconstrained by the Debtors' own ability to pay.

8.      On July 26, 2022 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances giving rise to the Debtors' chapter 11 cases and in support of this Motion is set forth in the First Day Declaration.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

---

[4]      *See Informational Brief of Aearo Technologies LLC* (the "Informational Brief").

**Basis for Relief**

**I.      The Top Counsel List Is Appropriate in these Cases.**

9.      Pursuant to Bankruptcy Rule 1007(d), "a debtor in a voluntary chapter 11 reorganization case shall file with the petition a list containing the name, address and claim of the creditors that hold the twenty largest unsecured claims, excluding insiders, as prescribed by the appropriate Official Form." Bankruptcy Rule 1007(d).  Additionally, Local Rule B-1007-1(a)(3) requires listing creditors alphabetically, "including the full mailing address and zip code for each listed creditor, or include a statement that the address is unknown."  The Top Counsel List is primarily used by the Office of the United States Trustee, including the United States Trustee for the Southern District of Indiana (the "U.S. Trustee"), to identify potential candidates to serve on an official committee of unsecured creditors in accordance with section 1102 of the Bankruptcy Code.  Considering the nature of the Debtors' restructuring, the Debtors anticipate that the U.S. Trustee will appoint an official committee of Tort Claimants (a "Tort Claimants Committee"), in lieu of an official committee of general unsecured creditors.  The Tort Claimants Committee will consist of law firms that represent the largest number of Tort Claimants.  For the reasons stated herein, the Debtors believe that it is in the best interests of their estates and creditors, and that it will be most helpful to the U.S. Trustee, to produce one Top Counsel List consisting of counsel that represent the largest number of Tort Claimants.

10.      As detailed more fully in the First Day Declaration and the Informational Brief, as of the Petition Date, the bulk of claims against the Debtors in these chapter 11 cases originate from approximately 230,000 Combat Arms Claims.[5]  The Debtors are also subject to a smaller number

---

[5]      The Debtors specifically intend to utilize chapter 11 to review, estimate, and address the alleged existing and future tort liabilities related to earplugs, without impairing any creditors.

of claims related to alleged personal injury from workplace exposures to asbestos, silica, coal mine dust, or other occupational dusts in connection with the use of the Debtors' mask and respirator products. Since virtually all of the Tort Claimants hold unliquidated claims against the Debtors, it is impossible for the Debtors to determine, for purposes of filing the Top Counsel List pursuant to section 1007(d), which litigation claimants hold the "largest" unsecured claims in these chapter 11 cases. Moreover, Tort Claimants rarely assert a damages amount in their complaints.

11.     The Debtors believe that filing one Top Counsel List will also allow the Debtors to provide the most accurate disclosure of information required by Bankruptcy Rule 1007(d) in light of the limitations of the known information regarding the Tort Claimants in these chapter 11 cases. Numerous courts in other jurisdictions have approved the provision of a list of law firms representing the largest number of personal injury claimants asserting claims against debtors in complex mass tort cases. *See, e.g.*, *In re LTL Mgmt. LLC*, No. 21-30589 (JCW) (Bankr. W.D.N.C. Nov. 4, 2021) (authorizing debtors to file, in lieu of a Top Twenty List, a consolidated list of law firms representing the largest number of claimants in lawsuits in which debtors were defendants); *In re Aldrich Pump LLC*, No. 20-30608 (JCW) (Bankr. W.D.N.C. June 25, 2020) (same); *In re Cyprus Mines Corp.*, No. 21-10398 (Bankr. D. Del. Feb. 17, 2021) (authorizing listing of addresses of counsel for talc claimants in lieu of claimants' addresses); *In re Boy Scouts of America and Delaware BSA*, LLC, No. 20-10343 (LSS) (Bankr. D. Del Mar. 23, 2020) (authorizing debtors to file a consolidated list of counsel representing the largest number of abuse victims); *In re DBMP LLC*, No. 20-30080 (JCW) (Bankr. W.D.N.C. Jan. 28, 2020) (authorizing debtor to file, in lieu of a Top Twenty List, a list of law firms with most significant representations of parties with asbestos claims against the debtor based on volume of filings, scope of payments, or other related factors, across the major types of claims faced by the debtor); *In re Maremont Corp.*, No. 19-10118 (KJC)

(Bankr. D. Del. Jan. 23, 2019) (authorizing the filing of a list of the twenty-five law firms representing the largest numbers of asbestos plaintiffs asserting claims against the debtors and the unsecured creditors of the debtors).

**II.    The Debtors Should be Authorized to File One Consolidated Creditor Matrix.**

12.    Unless a debtor's schedules of assets and liabilities are filed simultaneously with a chapter 11 petition, section 521(a) of the Bankruptcy Code, Bankruptcy Rule 1007(a)(1), and the *Procedures Manual* of the United States Bankruptcy Court for the Southern District of Indiana (the "Procedures Manual") require each debtor to file a list containing the name and address of each creditor.  The Procedures Manual requires that the Creditor Matrix be "filed or presented electronically."  Procedures Manual, "Creditor List (f.k.a. creditor matrix)," May 19, 2016.  The Procedures Manual further specifies the format in which debtors must submit mailing matrices. *Id.* (specifying certain information, for example, the information required to be included in the Creditor Matrix for each "bankruptcy case").

13.    The Debtors are defendants in hundreds of thousands of tort-related lawsuits.  The Debtors have sought to retain Kroll Restructuring Administration LLC as the Debtors' proposed noticing, claims, and balloting agent (the "Claims and Noticing Agent").  Kroll will relieve the Clerk of the Court (the "Clerk") of the burden of sending notices to the Debtors' numerous creditors and parties in interest.  Subsequently, the Debtors submit that the Clerk does not need the information provided in a mailing matrix formatted in accordance with the Procedures Manual and pursuant to the Bankruptcy Rules.

14.    Compiling the information in the format required for each Debtor would create an unnecessary administrative burden for the Debtors' estates.  The preparation of separate lists of

creditors for each Debtor would be expensive, time consuming, and administratively burdensome. The Debtors request authority to file one consolidated Creditor Matrix for all of the Debtors.

15.     Courts in the 7th Circuit and other jurisdictions have regularly granted relief similar to the relief requested herein.  *See, e.g., Interlogic Outsourcing, Inc.*, No. 19-31445-hcd (Bankr. N.D. Ind. Aug. 16, 2019) (authorizing the debtors to file a consolidated list of creditors in lieu of submitting a separate mailing matrix for each debtor); *Morgan Administration, Inc. d/b/a, et al., d/b/a Home Owners Bargain Outlet*, No. 18-30039 (Bankr. N.D. Ill. Nov. 2, 2018); *In re Le Tote, Inc.*, No. 20-33332 (KLP) (Bankr. E.D. Va. Aug. 27, 2020); *In re Ascena Retail Group, Inc.*, No. 20-33113 (KRH) (Bankr. E.D. Va. July 24, 2020) (same); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. May 15, 2020) (same).

## III.    The Debtors Should Be Authorized to Replace Addresses of Tort Claimants in the Creditor Matrix with Addresses of Their Counsel of Record.

16.     As discussed above, Bankruptcy Rule 1007(a) requires a debtor to file with the petition for relief a Credit Matrix.  *See* Bankruptcy Rule 1007(a).  As noted above, the Debtors are defendants in hundreds of thousands of tort-related lawsuits, and nearly all of their known contingent creditors are personal injury claimants.  Because the hundreds of plaintiffs' firms will have the most accurate knowledge of their clients' current addresses, the Debtors believe that these firms are better positioned to receive communications on behalf of the Tort Claimants. Accordingly, the Debtors request authorization to list the addresses of counsel to the Tort Claimants on the Creditor Matrix in lieu of the individual addresses of such plaintiffs.

17.     The individual plaintiff information that the Debtors possess is, in many cases, incomplete or obsolete, and supplemental information cannot be obtained in an efficient or complete manner.  Moreover, even where the Debtors do have a record of a claimant's address, it is likely that such address was obtained from an original complaint and has not been updated or

confirmed in years.  Years have passed since certain of the Tort Claims were filed.  Gathering all of the updated addresses for individual claimants now would require an extensive review of the files maintained by the Debtors' various past and present tort litigation counsel across the country, and such review would yield incomplete and potentially inaccurate results at best.

18.     The Debtors believe that the actual notice that claimants will receive via their counsel pursuant to the Claimant Notice Procedures (as defined below) will be superior to the notice that such claimants would receive if the Debtors were to attempt to deliver notices and other communications directly to the claimants.  The Debtors also believe that listing and using the addresses of counsel of record for the Tort Claimants will ease the burden on both claimants and the Debtors.  Such claimants may be unfamiliar with the types of notices and pleadings that will be served in these chapter 11 cases, or any required actions in response to such communications. In addition, listing counsel of record for each Tort Claimant in lieu of individual addresses will dramatically ease the Debtors' administrative burden of attempting to obtain verified information, and of sending notices to thousands of personal injury claimants, resulting in more cost-effective notice procedures that benefit the Debtors' estates and creditors.  At this critical juncture in the Debtors' reorganization, accuracy and administrative efficiency are key.

## IV.   To the Extent Applicable, Redaction of Certain Confidential Information of Individuals Listed on the Creditor Matrix Is Warranted.

19.     Section 107(c) of the Bankruptcy Code provides that the Court:

for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:

(A) Any means of identification . . . contained in a paper filed, or to be filed, in a case under [the Bankruptcy Code].

(B) Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(1).

20.    As explained more fully in the Cash Management Motion,[6] much of the Debtors' operations and general administrative functions, including the procurement of insurance, are administered by non-Debtor affiliates, including 3M, with nationwide and worldwide operations, and could be implicated by data and privacy regulations in certain jurisdictions.

21.    More specifically, in 2018, the state of California enacted the California Consumer Privacy Act of 2018 (the "CCPA"), which provides individuals domiciled in California the right to, among other things, request their collected personal information, including postal addresses, be deleted by entities subject to the regulation and opt out of the sale of personal information by such entities to third parties.  Violators risk injunctions and civil penalties of up to $2,500 for *each* violation and up to $7,500 for *each intentional* violation.  Cal. Civ. Code § 1798.155.  The CCPA applies to all for-profit entities doing business in California ("CCPA Entities") that collect and process consumers' personal data and satisfy one of the following criteria:  (i) annual gross revenue in excess of $25 million; (ii) buys, shares, receives, or sells the personal information of more than 50,000 consumers, households, or devices for commercial purposes; or (iii) receives 50% or more of their annual revenues from selling consumers' personal information.  Cal. Civ. Code § 1798.140(c)(1).  The Debtors and their non-Debtor affiliates, including 3M, likely qualify as

---

[6]    "Cash Management Motion" means the *Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Maintain Existing Business Forms and Books and Records, and (C) Perform Intercompany Transactions and Grant Administrative Expense Status to Intercompany Transactions and (II) Granting Related Relief*, filed contemporaneously herewith.

CCPA Entities because there are significant operations located in California and the Debtors' annual gross revenue for 2021 exceeds $25 million.

22.     Further, the United Kingdom Data Protection Act of 2018 and the United Kingdom General Data Protection Regulation (together, the "UK GDPR"), the European General Data Protection Regulation (the "EU GDPR"), and similar laws in other jurisdictions, impose significant constraints on the processing (which includes the transferring or disclosing of) information relating to identified or identifiable individuals (which includes names and home addresses of individuals and individual business contacts) ("Personal Data").  The UK GDPR and EU GDPR apply to the processing of Personal Data in the context of an establishment of a controller or processor in the United Kingdom, regardless of whether the processing (including transfer or disclosure) takes place in the United Kingdom, the European Economic Area, or in the European Economic Area (and, in some circumstances, organizations established in other countries when processing Personal Data relating to individuals located in the United Kingdom or European Economic Area).

23.     Violators of the UK GDPR and EU GDPR risk severe penalties.  If an organization is found to have processed information in breach of the UK GDPR, the organization may be fined up to the higher of £17,500,000 or 4% of worldwide annual turnover—*i.e.*, total annual revenues— of the preceding financial year.  *See* United Kingdom Data Protection Act 2018, section 157(5)(a) (as amended by Data Protection, Privacy and Electronic Communications (Amendments etc.) (EU Exit) Regulations 2019).  For a breach of the EU GDPR, the organization may be fined up to the higher of €20,000,000 or 4% of worldwide annual turnover—*i.e.*, total annual revenues—of the preceding financial year.   *See* General Data Protection Regulation (EU) 2016/679, art. 83(5). The processing of information includes transferring or disclosing it to others, and the Debtors or

their non-Debtor affiliates risk liability under the UK GDPR and the EU GDPR to the extent that under the ordinary-course operation of shared services agreements, individuals' Personal Data may be transferred or disclosed by non-Debtor affiliates, including 3M affiliates, that have establishments in the relevant jurisdictions.

24.    Here, it is appropriate to authorize the Debtors to redact from any paper filed or to be filed with the Court in these chapter 11 cases, including the Creditor Matrix and Schedules and Statements,[7] (a) the home addresses of individual creditors—including the Debtors' employees and the Tort Claimants—and (b) the names, addresses, and other Personal Data of any natural person to the extent they are processed (*i.e.*, transferred or disclosed) subject to the UK GDPR or EU GDPR because respectively, (x) such information can be used to perpetrate identity theft and phishing scams or to locate survivors of domestic violence, harassment, or stalking under 11 U.S.C. § 107(c)(1), and (y) disclosure risks violating the CCPA, UK GDPR, and EU GDPR, exposing the Debtors to potential civil liabilities and significant financial penalties.  The risk in relation to 11 U.S.C. § 107(c)(1) is not merely speculative.  In at least one recent chapter 11 case, the abusive former partner of a debtor's employee used the publicly accessible creditor and employee information filed in the chapter 11 case to track the employee at her new address that had not been publicly available until then, forcing the employee to change addresses again.[8]

25.    The Debtors propose to provide an unredacted version of the Creditor Matrix, Schedules and Statements, and any other filings redacted pursuant to the proposed order to (a) the

---

[7]    As defined in the *Debtors' Motion for Entry of an Order (I) Extending Time to File (A) Schedules of Assets and Liabilities, (B) Schedules of Current Income and Expenditures, (C) Schedules of Executory Contracts and Unexpired Leases, (D) Statements of Financial Affairs, and (II) Granting Related Relief*, filed contemporaneously herewith.

[8]    The incident, which took place during the first Charming Charlie chapter 11 proceedings in 2017, is described in the "creditor matrix motion" filed in *Charming Charlie Holdings Inc.*, Case No. 19-11534 (CSS) (Bankr. D. Del. Jul. 11, 2019), ECF No. 4.

Court, the U.S. Trustee, counsel to any official committee appointed in these chapter 11 cases, and (b) any party in interest upon a request to the Debtors (email is sufficient) or to the Court that is reasonably related to these chapter 11 cases.  In each case, this would be subject to a review of whether such disclosure, on a case-by-case basis, would violate any obligation under the CCPA, UK GDPR, EU GDPR, or any other privacy or data protection law or regulation.  The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document. Nothing herein precludes a party in interest's right to file a motion requesting that the Court unseal the information redacted by the Order, once entered.  In addition, the Debtors will distribute as applicable any notices that are received at the Debtors' corporate headquarters and are intended for a current employee.

26.     Courts in this jurisdiction and others have granted the relief requested herein in comparable chapter 11 cases.  *See, e.g.*, *In re USA Gymnastics*, No. 18-09108-RLM-11 (Bankr. S.D. Ind. Dec. 11, 2018) (authorizing the debtor to file a redacted creditor matrix of Doe Claimant and employee names); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 8, 2022) (authorizing the debtors to redact the names and home addresses of individuals listed on the creditor matrix or other documents filed with the court and names and addresses of any natural person protected by the GDPR); *In re Gold Standard Baking, LLC*, No. 22-10559 (JKS) (Bankr. D. Del. June 23, 2022) (authorizing the debtors to redact home addresses of individuals listed on the creditor matrix, schedules and statements, and other documents filed with the court); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. May 18, 2022) (authorizing the debtors to redact address information of their current and former individual employees and independent contractors listed on the creditor matrix); *In re Northwest Senior Housing Corp.,* No. 22-30659 (MLV) (Bankr. N.D. Tex. Apr. 19, 2022) (authorizing the debtors

to redact residents' home addresses and related information in order to protect personal and private information); *In re Nordic Aviation Capital Designated Activity Co.*, No. 21-33693 (KRH) (Bankr. E.D. Va. Dec. 21, 2021) (authorizing the debtors to redact the names and home addresses of individuals listed on the creditor matrix or other documents filed with the court and names and addresses of any natural person protected by the GDPR); *In re Stein Mart Inc.,* No. 20-02387 (Bankr. M.D. Fla. Aug. 14, 2020) (authorizing the debtors to redact the home addresses of individual creditors listed on the creditor matrix or other documents filed with the court); *In re Murray Metallurgical Coal Holdings, LLC*, No. 20-10390 (JEH) (Bankr. S.D. Ohio Feb. 14, 2020) (authorizing the debtors to redact certain personally identifiable information, including home address information, of the debtors' employees listed on the creditor matrix, schedules and statements, or similar documents filed with the court); *In re Christopher & Banks Corp.*, No. 21-10269 (ABA) (Bankr. D.N.J. Jan. 15, 2021) (authorizing the debtors to redact the home addresses of individuals listed on the creditor matrix, schedules and statements, or other documents filed with the court and names and addresses of individuals protected by the GDPR); *In re Dura Auto. Sys., LLC*, No. 19-06741 (RSM) (Bankr. M.D. Tenn. Oct. 21, 2019) (same); *In re Jack Cooper Ventures, Inc.*, No. 19-62393 (PWB) (Bankr. N.D. Ga. Aug. 9, 2019) (authorizing the debtors to redact address information of individual creditors listed on the creditor matrix); *In re White Star Petroleum Holdings, LLC*, No. 19-12521 (JDL) (Bankr. W.D. Ok., June 26, 2019) (authorizing the debtors to file portions of the creditor matrix containing the home addresses of the debtors' current and former employees and parties protected by the GDPR under seal); *In re Specialty Retail Shops Holding Corp.*, No. 19-80064 (TLS) (Bankr. D. Neb. Jan. 18, 2019) (authorizing the debtors to redact address information of individual creditors listed on the creditor matrix); *In re Mission Coal Co., LLC*, No. 18-04177 (TOM) (Bankr. N.D. Al. Oct. 16, 2018) (authorizing the debtors to redact

address information of the debtors' employees and independent contractors listed on the creditor matrix); *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo. Jan. 13, 2016) (authorizing the debtors to redact personal information of individual creditors listed on the creditor matrix).[9]

27.     In addition to granting the requested relief, courts have also expounded on the importance of authorizing debtors to redact individual creditors' personally identifiable information, including home addresses in particular.  In *Pier 1,* Judge Huennekens overruled the objection of the U.S. Trustee for the Eastern District of Virginia to the same redaction relief proposed here, noting:

> [L]ooking at the overriding policy and what we're trying to do in bankruptcy cases, it is not publish this information but protect these individuals.  And this is just for their protection, and I think that it makes perfectly good sense.  And I wouldn't be surprised if the rule was changed some time in the future to accommodate that.

Hr'g Tr. at 47:11–16, *In re Pier 1 Imports, Inc.*, No. 20-30805 (KRH) (Bankr. E.D. Va. Mar 13, 2020).   Not long after, in *Intelsat*, Judge Phillips agreed with Judge Huennekens' reasoning in *Pier 1* and overruled the same objection from the U.S. Trustee:

> I do think that maybe in some instances the Bankruptcy Code may be lagging a little bit in keeping up with today's society, but in any event, I'm going to follow Judge Huennekens' example in *Pier 1* and find that the [redaction] request is reasonable and justified under the circumstances.

Hr'g Tr. at 56:21-25, *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. May 15, 2020).

28.     In *Art Van Furniture*, in overruling the objection of the U.S. Trustee for the District of Delaware to the same redaction relief proposed here, the Bankruptcy Court noted that the proposed redaction is not a "burden of proof" issue so "much as a common sense issue."  Hr'g Tr.

---

[9]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

at 25:6–7, *In re Art Van Furniture, LLC*, No. 20-10533 (CSS) (Bankr. D. Del. Mar. 2020).[10]  The

Bankruptcy Court found that "at this point and given the risks associated with having any kind of

private information out on the internet, [redaction] has really become routine [and] I think obvious

relief." *Id*. at 25:13–16.  Similarly, in *Clover Technologies*, the Bankruptcy Court overruled the

U.S. Trustee's objection, noting that "[t]o me it is common sense.  I don't need evidence that there

is, at best, a risk of identity theft and worse a risk of personal injury from listing someone's name

and address on the internet by way of the court's electronic case filing system and, of course, the

claims agent's website. . . .  The court can completely avoid contributing to the risk by redacting

the addresses.  And while there is, of course, an important right of access we routinely redact

sensitive and confidential information for corporate entities and redact individual's home

addresses."  Hr'g Tr. at 24:21–25, 25:9–10, *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO)

(Bankr. D. Del. Jan. 22, 2020).  And, in *Forever 21*, in overruling the U.S. Trustee's objection, the

Bankruptcy Court found that "[w]e live in a new age in which the theft of personal identification

is a real risk, as is injury to persons who, for personal reasons, seek to have their addresses

withheld."  Hr'g Tr. at 60:22-25, *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del.

Dec. 19, 2019).

---

[10]    Similarly, the Bankruptcy Court previously overruled the Delaware U.S. Trustee's objection to the redaction of
individuals' information and found that "it's just plain common sense in 2019—soon-to-be 2020—to put as little
information out as possible about people's personal lives to present [sic] scams . . . [Identity theft] is a real-life
issue, and, of course, the issue of domestic violence is extremely important."  Hr'g Tr. at 48:20–22, 49:3–5, *In re
Anna Holdings*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019).

Notably, the Bankruptcy Court acknowledged that "the world is very different from [the 1980s] when you and I
started practice with the problems of identity theft" and that his perspective had evolved in that he was not
previously aware of "the dangers with this kind of information becoming public."  *See* Hr'g Tr. at 45:25-46:2,
47:22–24.  The Debtors reserve the right to supplement the record with respect to such risks insofar as they are
not self-evident in this instance.

29.     Further, the Bankruptcy Court found that it was not necessary to the effective administration of the debtors' bankruptcy estates to disclose the personally identifiable information of the debtors' stakeholders who are European Union member citizens which therefore created risk that debtors could be fined under the GDPR for unnecessary disclosures of personal information.

> But I'll say the GDPR contains a necessity test in its guidelines. Is disclosure necessary for the legal proceedings at hand? Clearly, disclosing home addresses is not necessary for the conduct of the bankruptcy case and the absence of the address does not prejudice anyone; indeed, there's been no objection from any creditor in this case.

Hr'g Tr. at 62:16–22, *In re Forever 21, Inc.*, No. 19-12122.

30.     For these reasons, the Debtors respectfully submit that cause exists to authorize the Debtors to redact, pursuant to 11 U.S.C. § 107(c)(1) and in compliance with the CCPA, UK GDPR, and EU GDPR, the home addresses of individuals and, where such information has been provided to, and is being processed by, an organization with an establishment located in the United Kingdom or a member state of the European Economic Area, the names, home addresses, and other Personal Data of any individual listed on the Creditor Matrix, Schedules and Statements, or any other document filed with the Court.   Absent such relief, the Debtors (a) may be in violation of applicable data privacy law, thereby exposing them to severe monetary penalties, (b) would unnecessarily render individuals more susceptible to identity theft, and (c) could jeopardize the safety of employees, Tort Claimants, and other individual creditors who, unbeknownst to the Debtors, are survivors of domestic violence, harassment, or stalking by publishing their home addresses without any advance notice or opportunity to opt out or take protective measures.

**V.      The Claimant Notice Procedures Are Appropriate and Should Be Approved.**

31.      Pursuant to section 105(a) of the Bankruptcy Code, the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a). In addition, the Court may "enter orders designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by [the Bankruptcy Rules]." Bankruptcy Rule 2002(m).

32.      The Supreme Court has stated that, in general, due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Courts have further held that a debtor in a chapter 11 reorganization case may fulfill the requirements of due process by providing notice to the counsel of record for a claimant who is engaged in litigation with the debtor. *See, e.g., In re Garlock Sealing Techs., LLC*, 2017 WL 2539412, at *15 (W.D.N.C. June 12, 2017) (finding all asbestos claimants had been afforded due process when debtors provided notice of their proposed plan of reorganization and confirmation hearing to asbestos claimants' counsel, rather than to asbestos claimants); *In re WorldCom*, No. 02-13533, 2005 WL 3875192, at *3 (Bankr. S.D.N.Y. Oct. 25, 2005) (holding that notice to a creditor's attorney is binding on that creditor where the attorney was retained in a state court matter with sufficient knowledge of and nexus to the bankruptcy case); *The Muralo Co., Inc. v. All Defendants Listed on Exhibits A Through D to Complaint (In re The Muralo Co., Inc.)*, 295 B.R. 512, 525 (Bankr. D.N.J. 2003) ("In a mass tort case such as this . . . this court believes that service on counsel could well be 'better' in substantive terms (not just 'administratively') than certain other individualized service alternatives."); *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) (acknowledging that providing notice to a claimant's acting pre-bankruptcy counsel is sufficient to satisfy the requirements of due process).

18

33.     Throughout these chapter 11 cases, the Debtors will be required to send certain notices, mailings, and other communications to the Tort Claimants that have asserted claims against the Debtors.  Through the Claims and Noticing Agent, the Debtors aim to ensure that the Tort Claimants receive proper and timely notice of filings and critical events in these chapter 11 cases.  As such, the Debtors seek to implement a notice procedure by which the Debtors' Claims and Noticing Agent will send required notices, mailings, and other communications to the counsel of record for the Tort Claimants (the "Claimant Notice Procedures").  Specifically, with the assistance of the Claims and Noticing Agent approved by the Court, the Debtors will provide notices, mailings, and other communications required to be served on the Tort Claimants to the respective counsel of record for such claimants in the manner required pursuant to otherwise applicable noticing procedures in effect in these chapter 11 cases.[11]

34.     By implementing the Claimant Notice Procedures, the actual notice that the Tort Claimants will receive via their counsel will be superior to the notice such claimants would receive if the Debtors were to attempt to deliver notices and other communications directly to the claimants based on the incomplete information available in the Debtors' records.  The addresses for counsel of record to the Tort Claimants are more likely to remain unchanged over time (and are likely publicly available), and noticing counsel of record instead of individual claimants will allow for more accurate notice to the Tort Claimants.  Further, given that most of the Tort Claimants are

---

[11]     Pursuant to Bankruptcy Rule 9014(b), service of pleadings in a contested matter is to be accomplished in the manner provided for by Bankruptcy Rule 7004.  Pursuant to Bankruptcy Rule 7004(b)(8), "in addition to the methods authorized by Rule 4(e) . . . service may be made within the United States by first class mail postage prepaid" upon "any defendant . . . [by mailing] a copy of the summons and complaint . . . to an agent of such defendant authorized by appointment or by law to receive service of process . . . ."  Bankruptcy Rule 7004(b)(8). Rule 4(e)(2)(C) of the Federal Rules of Civil Procedure states that "an individual . . . may be served in a judicial district of the United States by . . . delivering a copy of [a summons and complaint] to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2)(C).  Accordingly, the Debtors respectfully submit that the procedures described herein are consistent with such rules and reasonably calculated to apprise the Tort Claimants of any notices, mailings, pleadings and communications, in a contested matter.

unfamiliar with the chapter 11 process, providing the notices and communications to such claimants' counsel of record will better facilitate their participation in these chapter 11 cases. The Claimant Notice Procedures will also ease the Debtors' administrative burden of sending notices to thousands of Tort Claimants, resulting in a more cost-effective notice procedure that benefits the Debtors' estates and creditors.

35.     Moreover, the Indiana Rules of Professional Conduct dictate that communication with a represented counterparty shall not take place without the presence or consent of the counterparty's counsel. *See* Ind. R. Prof. Conduct 4.2. As such, communications regarding with Tort Claimants, including requests for updated contact information, would have to occur through and with counsel to such claimants. Adequately identifying approximately 230,000 or more claimants would require cooperation from the law firms that represent these plaintiffs, who may not be willing to provide the Debtors with claimants' addresses given client confidentiality and privacy issues.

36.     The addresses or other contact information for many of the individual Tort Claimants are not readily available to the Debtors. Accordingly, relevant case law and the facts and circumstances of these chapter 11 cases support the implementation of the Claimant Notice Procedures set forth herein to ensure that the Tort Claimants receive proper and timely notice of filings and critical events in these chapter 11 cases. The Debtors believe that such relief is necessary to facilitate and improve the administration of these chapter 11 cases and provide meaningful notice and due process to the Tort Claimants.

37.     The provision of notices to Tort Claimants through their counsel, rather than to the claimants at their home addresses, is a standard practice in mass tort chapter 11 cases. Courts in various jurisdictions have granted similar relief in other mass tort chapter 11 cases where the

debtors were a defendant in numerous personal injury lawsuits. *See*, *e.g.*, *In re LTL Mgmt. LLC*, No. 21-30589 (JCW) (Bankr. W.D.N.C. Oct. 14, 2021) (approving the claimant notice procedures through the claimants' counsel of record); *In re Maremont Corp.*, No. 19-10118 (KJC) (Bankr. D. Del. Jan. 23, 2019) (same); *In re Garlock Sealing Techs., LLC*, 2017 WL 2539412, at *15 (W.D.N.C. June 12, 2017) (finding that all asbestos claimants had been afforded due process when debtors provided notice of their proposed plan of reorganization and the confirmation hearing to asbestos claimants' attorneys, rather than to asbestos claimants); *In re Yarway Corp.*, Case No. 13-11025 (BLS) (Bankr. D. Del. Apr. 25, 2013) (authorizing the debtor to send notices and mailings regarding the bankruptcy case to counsel of record for personal injury claimants in lieu of sending communications to such individual claimants); *In re Rapid-Am, Corp.*, Case No. 13-10687 (Bankr. S.D.N.Y. Mar. 13, 2013) (same).

## VI.    The Notice of Commencement Should Be Approved and Service Should Be Authorized.

38.    Bankruptcy Rule 2002(a)(1) provides, in relevant part, that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of:  (1) the meeting of creditors under § 341 or § 1104(b) of the Code."  Bankruptcy Rule 2002(a)(1).  Subsection (f)(1) provides that notice of the order for relief shall be sent by mail to all creditors.  *See* Bankruptcy Rule 2002(f)(1).

39.    The Debtors seek (a) approval of the notice of commencement of these chapter 11 cases, substantially in the form attached as <u>Exhibit 1</u> to the Order hereto (the "<u>Notice of Commencement</u>") and (b) authority to serve, through the Claims and Noticing Agent, the Notice of Commencement on all parties listed on the Creditor Matrix to advise them of the meeting of creditors under section 341 of the Bankruptcy Code.  Service of the Notice of Commencement simultaneously with the notice of the 341 meeting on the Creditor Matrix will avoid confusion

among creditors, and prevent the Debtors' estate from incurring unnecessary costs associated with serving multiple notices to the parties listed on the Debtors' complex and atypical Creditor Matrix. Accordingly, the Debtors submit that approval and service of the Notice of Commencement is warranted.

### **Consultation With the United States Trustee and the Clerk of the Court's Office**

40.     Debtors' counsel provided notice of the filing of the chapter 11 cases to the Clerk of the Court and the Chief Judge's Courtroom Deputy on July 21, 2022.  The Debtors' counsel discussed this Motion, and the relief requested herein, with the United States Trustee for Region 10 on July 22, 2022.

### **Notice**

41.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a)  the United States Trustee for Region 10, Attn:  Ronald Moore; (b) the Top Counsel List; (c) counsel for non-Debtor 3M; (d) the United States Attorney's Office for the Southern District of Indiana; (e) the Internal Revenue Service; (f) the office of the attorneys general for the states in which the Debtors operate or face Tort Claims; (g) the United States Department of Veterans Affairs; (h) the United States Department of Defense; (i) the Securities and Exchange Commission; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule B-9013-3(d).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

42.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially

in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief

as the Court deems appropriate under the circumstances.

Indianapolis, Indiana
Dated:  July 26, 2022

/s/ Jeffrey A. Hokanson

**ICE MILLER LLP**
Jeffrey A. Hokanson (Ind. Atty. No. 14579-49)
John C. Cannizzaro (Ohio Atty. No. 85161)
Connor Skelly (Ind. Atty. No. 35365-06) (*pro hac vice* pending)
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone:    (317) 236-2100
Facsimile:     (317) 236-2219
Email:          Jeff.Hokanson@icemiller.com
                   John.Cannizzaro@icemiller.com
                   Connor.Skelly@icemiller.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice* pending)
Emily Geier (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:          edward.sassower@kirkland.com
                   emily.geier@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Chad J. Husnick, P.C. (*pro hac vice* pending)
Spencer A. Winters (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:          chad.husnick@kirkland.com
                   spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in
Possession*