# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| AEARO TECHNOLOGIES LLC, *et al.*,[1] | ) Case No. 22-02890-JJG-11 |
| Debtors. | ) (Jointly Administered) |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' FIRST DAY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF SPECIFIED TRADE CLAIMANTS, (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS ON ACCOUNT OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF (THE "<u>CRITICAL VENDORS MOTION</u>")**

In support of her Objection (the "Objection") to the Debtors' First Day Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Specified Trade Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief (the "Critical Vendors Motion") Nancy J. Gargula, the United States Trustee for Region 10 (the "U.S. Trustee"), by and through her undersigned counsel, states as follows:

---

[1] The debtors in these cases are Aearo Technologies LLC, In re Aearo Holding LLC, In re Aearo Intermediate LLC, Aearo LLC, Aearo Mexico Holding Corporation, In re Cabot Safety Intermediate LLC, and 3M Occupational Safety LLC. The debtors have requested that the cases be jointly administered. See Docket in cases 22-02890-JJG-11, 22-02891-JJG-11, 22-02892-JJG-11, 22-02893-JJG-11, 22-02894-JJG-11, 22-02895-JJG-11, and 22-02896-JJG-11. The caption to the U.S. Trustee's Objection is the caption proposed by debtors.

## INTRODUCTION

The Court should deny the Debtors' Critical Vendors Motion or defer entry of the proposed interim and final orders until the Debtors provide adequate information to support the Critical Vendors Motion and more adequate notice to creditors and parties in interest. Concurrent with this Critical Vendors' Motion, the Debtors also filed first day motions seeking to extend the time to file Schedules and Statements of Affairs and to file a single list of top law firms for their creditor matrix. See Case No. 22-02890-JJG-11, Dkt. Nos. 16 and 17. According to the Critical Vendors Motion, the Debtors have in excess of 230,000 tort creditors alone. As such, it appears that the majority of the Debtors' creditors will not receive notice of these filings until after the proposed first day hearing on this Critical Vendors Motion. Moreover, no creditors committee has been appointed nor can be appointed in time for a committee to review the Critical Vendors Motion. Accordingly, the U. S. Trustee submits that there is a public interest in ensuring that assets of the Debtors' estates are not so speedily expended and on such limited notice.

The Debtors have failed to identify any of the specific vendors, 503(b)(9) Claimants, Lien Claimants, or Foreign Claimants[2] to whom the proposed payment of prepetition claims would be made. Nor have the Debtors specified the actual proposed amounts to be paid to the unidentified vendors, 503(b)(9) Claimants, Lien Claimants, or Foreign Claimants. Moreover, although the

---

[2] Capitalized terms not otherwise defined in this Objection have the meaning ascribed in the Debtors' Critical Vendors' Motion.

2

Debtors seek joint administration of the seven Debtors, these cases have not been substantively consolidated and the Debtors have failed to identify which Debtor owes which vendor or claimant. The only information provided is a boilerplate recitation of case law on critical vendor motions, with the request for authority to pay unidentified vendors and claimants, unidentified amounts, owed by unidentified individual Debtors, all in contradiction to the normal priorities of distribution, without adequate information as to why such payments are truly critical and necessary. Consequently, it is not possible for parties in interest to understand fully the particulars of the amounts of monies to be paid from the Debtors' estates.

**JURISDICTION**

1. This Court has jurisdiction to hear this Objection under 28 U.S.C. §§ 157 and 1334.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (noting the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding, including with regard to this Objection.

3

**BACKGROUND**

4. On July 26, 2022, the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the Bankruptcy Code.

5. An official committee of creditors has not yet been appointed in this case.

6. The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. Concurrently with the Critical Vendors Motion, the Debtors have filed certain other motions and applications also seeking certain "first day" relief on an emergent basis, including multiple other motions seeking authority to pay pre-petition obligations at the outset of these cases.

8. The Debtors have also filed the Declaration of John R. Castellano in Support of Debtors' Chapter 11 Petitions and Requests for First Day Motions (the "Castellano's Declaration") (Docket No. 11).

**ARGUMENT**

**The Debtors Have Not Provided Adequate Information to Support the Necessity of Paying Vendors' Prepetition Claims**

9. Because the Debtors have failed to identify the vendors proposed to be paid, the specific services each particular vendor provides, or the actual amounts proposed to be paid to each particular vendor, the Debtors have not provided adequate information and evidence to meet the high burden set forth by the Seventh Circuit in *In re Kmart Corp.,* 359 F.3d 866 (7th Cir. 2004), necessary to establish that payment of pre-petition obligations for the proposed

4

critical vendors is warranted or that the Debtors will suffer irreparable harm if the relief sought is denied.

   10.   As the Seventh Circuit explained,

> Section 105(a) allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Code. This does not create discretion to set aside the Code's rules about priority and distribution; the power conferred by § 105(a) is one to implement rather than override. Every circuit that has considered the question has held that this statute does not allow a bankruptcy judge to authorize full payment of any unsecured debt, unless all unsecured creditors in the class are paid in full.

*In re Kmart Corp.,* 359 F.3d at 871 (citations omitted).

   11.   By the Critical Vendors Motion, the Debtors seek to pay the unnamed creditors, who provide unidentified services and products, the full amount of their pre-petition debt, while an unknown number of other creditors in the same class may not be paid in full, or at all[3].

   12.   The Debtors, however, have not adequately demonstrated that any particular vendor would cease doing business with the Debtors if it is not paid immediately. *See In re Kmart,* 359 F.3d at 868. Additionally, the Debtors have not shown any evidence that discrimination among the creditors is the only way to facilitate their reorganization or that they would truly be as well off if

---

[3] The Debtors have indicated their intention to not impair any creditor in these cases through the Chapter 11 process. However whether they will be fully successful in achieving that intention cannot be ascertained at this early stage of these case filings. Castellano's Declaration, footnote 22.

5

the critical vendors are paid in full as they would be if the critical vendors are not paid in full. *Id.*

13. The Debtors provide inadequate information regarding actual efforts made to find alternate vendors, providing only generalities regarding the process. The Debtors provide inadequate information as to the uniqueness of the particular goods or products for which any of the critical vendors are to be provided payment in full. Thus, they have not met their burden of proof to show that dealing with any particular vendor is "virtually indispensable to profitable operations or preservation of the estate." *In re CoServ, L.L.C.,* 273 B.R. 487, 498 (Bankr. N.D. Tex. 2002).

14. The Debtors do not show that any, or even most, of the vendors are not just as reliant on the Debtors' continuing business as the Debtors are reliant on receiving the particular vendors' continuing goods or services. *See, e.g. In re Kmart,* 359 F.3d at 873 (observing that some supposedly critical vendors will continue to do business with the debtor because they must). Nor have the Debtors shown that they have explored alternate terms of payment. *See In re CoServ, L.L.C.,* 273 B.R. at 499 ("If payment is intended to assuage the claimant's concern about future dealings, a deposit, collect on delivery terms, payment on shipment and countless other devices are available that will not offend the general principle that prepetition claims should not be paid.").

15. The Debtors also fail to provide the Court and parties in interest with the model form of agreement to be sent to the proposed "critical" vendors or with the terms evidencing that the vendors will, in fact, provide the Debtors

6

with ongoing goods or services. As explained in *In re United Am., Inc.,* 327 B.R. 776, 784 (Bankr. E.D. Va. 2005),

> The court cannot allow the position [of critical vendor] to be abused. … [T]he remedy must be crafted to the circumstances of the case, … and should provide an adequate remedy …but not a windfall. … Part of a complete remedy must assure the debtor of the vendor's future performance. There must be an obligation on the part of the critical vendor to provide future supplies and services. He may not accept the pre-petition payment and then terminate an at-will relationship.

16. Under such circumstances, at a minimum, prior to the entry of even an interim order, the Court should require the Debtors to provide creditors and parties in interest with adequate notice and an opportunity to understand the specifics regarding the amounts proposed to be paid, the identities of the creditors proposed to be paid, the specific services of each such creditor to be paid, the terms under which the proposed critical vendors would continue to provide services, and the actual efforts made to obtain alternate providers or to negotiate the continuation of services without the necessity of immediate, post-petition payment of prepetition claims. Adequate notice of the actual relief to be granted and adequate time to object is the minimum baseline required for these proposed extraordinary transactions.

17. Most significantly, because of their failure to include the true details of the identity of the providers, the actual proposed payments, terms of continued service, and the other information required by Seventh Circuit case law, the Debtors have failed to meet their burden to demonstrate that there is a true threat to the businesses as going concerns, *see CoServ.,* 273 B.R. at 499,

7

or to demonstrate, in fact, that denial of the Motion will result in immediate and irreparable harm. Fed. R. Bankr. P. 6003.[4]

18.　This holds true for the Foreign Claimants, who are also unidentified. While in some cases, courts have held that a foreign creditor may be paid as a critical vendor, *see In re CoServ, L.L.C.,* 273 B.R. at 497, it is incumbent upon the Debtors to identify each Foreign Claimant, the amount to be paid, and to demonstrate the harm to the Debtors' Estates if the particular Foreign Claimant were not paid.

### The Debtors Have Not Provided Adequate Information to Support the Necessity of Immediate Payment of 503(b)(9) Claims

19.　Likewise, the Debtors fail to identify the particular creditors they seek to pay pursuant to 11 U.S.C. § 503(b)(9), the specifics of the goods provided, or the dates on which the goods were actually received. Without identifying the individual 503(b)(9) Claimants and the specifics of the goods and dates received, the Debtors cannot meet the burden to demonstrate that the proposed payments are appropriate under the statute.

---

[4] Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, issue an order granting the following:
> ***
> (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

20. Moreover, as the Debtors acknowledge, the Code only requires § 503(b)(9) claims to be paid in full for the Debtors to confirm a chapter 11 plan. See 11 U.S.C. § 1129(a)(9)(A). It does not require immediate payment of those claims, and the Code certainly does not provide for immediate payment of such claims without even an identification of the claimant, the precise goods received, or the precise amounts owed.

21. Rather, the Court has discretion to determine when administrative claims may be paid and should consider factors such as prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors. *In re NE Opco, Inc.,* 501 B.R. 233, 259 (Bankr. D. Del. 2013) (citations and quotations omitted). Moreover, to qualify for exceptional immediate payment, both necessity and ability to pay must be proven. *Id.* (citations and quotations omitted).

22. Further, Section 503(b)(9) pertains to goods, not services, but the Debtors appear to lump services in with goods as part of the proposed immediate payments to the 503(b)(9) Claimants. *See In re Plastech Engineered Products, Inc.,* 397 B.R. 828, 836 (Bankr. E.D. Mich. 2008) (denying payment of portion of 503(b)(9) claim for labor services). Accordingly, the paucity of information provided as to what goods were received, who supplied them and whether some portion of the 503(b)(9) claims are also for services rather than goods requires denial of the Motion.

9

### The Debtors Have Not Provided Adequate Information to Support the Necessity of Immediate Payment of Potential Lien Claimants

23. The Debtors have not provided any information that demonstrates why unidentified creditors who may have the right to assert mechanic's liens or warehouseman's liens should be afforded immediate payment ahead of other creditors. Indeed, the mere potential for liens to arise with respect to such unidentified creditors does not create the likelihood of harm to the Debtors such that the normal priorities of payment should be cast aside to allow the extraordinary relief of immediate payment in full of prepetition claims. See *In re United Am., Inc.,* 327 B.R. at 785 (denying immediate payment to creditors who did not yet have mechanics' liens).

24. Further, the Debtors seek an extension of time to file their Schedules, Statements of Affairs and other required documents, by an additional twenty days, to and including August 29, 2022, for a total of thirty-four days from the Petition Date, and without prejudice to the Debtors' ability to request additional extensions for cause shown. Dkt. No. 16. Additionally, the Debtors seek permission to file consolidated matrices and to limit the notice to parties during these crucial first phases of these cases. See Dkt. No. 17.

25. Moreover, a creditors committee has not yet been appointed, so the majority of the creditors will likely have no notice and no voice in these proceedings until after many significant matters have been presented to the Court. This lack of notice to so many of the creditors militates against the entry of orders disposing of estate assets on such an expedited basis. Rather, the

10

U.S. Trustee submits that the Court should deny the Critical Vendors Motion and should preserve the status quo until all parties in interest have adequate notice and may make informed decisions as to whether they should respond or object to the relief sought.

## CONCLUSION

For the reasons set forth herein, the U.S. Trustee requests that the Court deny the Critical Vendors Motion, or at a minimum, defer entry of an order authorizing any payments until other creditors and parties in interest have at least some opportunity, even on shortened notice, to consider the Critical Vendors Motion and submit responses to the Court. The U.S. Trustee reserves the right to submit additional objections in the event the Debtors provide further details regarding the substance of the proposed transactions, or to withdraw her Objection, as the case may be, should the Debtors provide the evidence to support the Critical Vendors Motion.

Date: July 26, 2022                                     Respectfully submitted,

                                                        NANCY J. GARGULA
                                                        United States Trustee

                                        By:     /s/ Harrison E. Strauss
                                                Harrison E. Strauss
                                                Trial Attorney

                                                Office of the United States Trustee
                                                46 East Ohio Street, Room 520
                                                Indianapolis, IN 46204
                                                O: (317) 226-6101
                                                D: (317) 226-5705
                                                F: (317) 226-6356
                                                Harrison.Strauss@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2022, a copy of the foregoing *Objection* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Michael Andolina mandolina@whitecase.com, jdisanti@whitecase.com,mco@whitecase.com

Laura Elizabeth Baccash laura.baccash@whitecase.com

Kayla D. Britton kayla.britton@faegredrinker.com, noticeFRindy@faegrebd.com

Jeffrey A Hokanson jeff.hokanson@icemiller.com, bgnotices@icemiller.com,david.young@icemiller.com

Jay Jaffe jay.jaffe@faegredrinker.com, noticeFRindy@faegrebd.com

Jessica Lauria jessica.lauria@whitecase.com, jdisanti@whitecase.com;mco@whitecase.com

Matthew Evan Linder mlinder@whitecase.com

Elizabeth Marie Little elizabeth.little@faegredrinker.com, noticeFRindy@faegredrinker.com;anita.sery@faegredrinker.com;docketgeneral@faegredrinker.com

Harmony A Mappes harmony.mappes@faegredrinker.com, kristina.tinsley@faegrebd.com

Robert J Pfister rpfister@ktbslaw.com

Nir Maoz nmaoz@ktbslaw.com

Sasha M. Gurvitz sgurvitz@ktbslaw.com

Thomas E Patterson tpatterson@ktbslaw.com

      I further certify that on July 26, 2022, a copy of the foregoing *Objection* was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

    None

                                        /s/ Harrison E. Strauss
                                        Harrison E. Strauss
                                        Trial Attorney