# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AEARO TECHNOLOGIES LLC, *et al.*,[1] | ) | Case No. 22-02890-JJG-11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' FIRST DAY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING BUSINESS FORMS AND BOOKS AND RECORDS, AND (C) PERFORM POSTPETITION INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO PREPETITION INTERCOMPANY CLAIMS AMONG THE DEBTORS, AND (III) GRANTING RELATED RELIEF (THE "CASH MANAGEMENT MOTION")**

In support of her Objection (the "Objection") to the Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Maintain Existing Business Forms and Books and Records, and (C) Perform Postpetition Intercompany Transactions, (II) Granting Administrative Expense Status to Prepetition Intercompany Claims Among the Debtors, and (III) Granting Related Relief (the "Cash Management Motion"); Nancy J. Gargula, the United States

---

[1] The debtors in these cases are Aearo Technologies LLC, In re Aearo Holding LLC, In re Aearo Intermediate LLC, Aearo LLC, Aearo Mexico Holding Corporation, In re Cabot Safety Intermediate LLC, 3M Occupational Safety LLC. The debtors have requested that the cases be jointly administered. See Docket in cases 22-02890-JJG-11, 22-02891-JJG-11, 22-02892-JJG-11, 22-02893-JJG-11, 22-02894-JJG-11, 22-02895-JJG-11, and 22-02896-JJG-11. The caption to the U.S. Trustee's Objection is the caption proposed by debtors.

Trustee for Region 10 (the "U.S. Trustee"), by and through her undersigned counsel, states as follows:

1. This Court has jurisdiction to hear this Objection under 28 U.S.C. §§ 157 and 1334.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (noting the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding, including with regard to this Objection.

## BACKGROUND

4. On July 26, 2022, the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the Bankruptcy Code.

5. An official committee of creditors has not yet been appointed in these cases.

6. The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. Concurrently with the Cash Management Motion, the Debtors have filed certain other motions and applications also seeking certain "first day" relief on an emergent basis, including multiple other motions seeking authority to pay pre-petition obligations at the outset of these cases.

8. The Debtors have also filed the Declaration of John R. Castellano in Support of Debtors' Chapter 11 Petitions and Requests for First Day Motions (the "Castellano's Declaration") (Docket No. 11).

**ARGUMENT**

9. Except as provided in the paragraphs below, the U.S. Trustee has no objection to the relief requested regarding continued use of the Debtor's existing cash management system.

10. The U.S. Trustee has broad duties to monitor and take action in any bankruptcy case pursuant to 28 U.S.C. § 586 and 11 U.S.C. § 307 when she determines it to be appropriate. In order to assist with her duties the United States Trustee Program has published Guidelines regarding the operation of chapter 11 cases ("Guidelines").

11. As part of the Guidelines, the U.S. Trustee requires that debtors in chapter 11 cases close pre-petition bank accounts and relocate those funds to a depository included on the list of authorized depositories that the U.S. Trustee maintains and supplies to chapter 11 debtors.

<u>Use of Non-Debtor 3M Account</u>

12. The Debtors have indicated that they wish to maintain their existing bank accounts (the "Bank Accounts") at JPMorgan Chase New York

and Bank of America National Association (collectively, the "Banks"). The Banks are currently authorized depositories.

13. In addition, the Debtors have indicated that they wish to maintain approximately $30 million currently held in two bank accounts owned by 3M Financial Management Company ("Non-Debtor 3M"). The Debtors have failed to identify where these bank accounts are held, whether they are held in an authorized depository, and any rationale for allowing the monies to be held by a non-debtor entity.

14. In order to be an authorized depository, a depository must agree to certain conditions. Some of the conditions include supplying the U.S. Trustee with monthly or quarterly bank account statements for debtor-in-possession bank accounts, and that the depository fully insure the account balances either via FDIC insurance; by posting a surety bond; or, by posting collateral with the Federal Reserve Bank.

15. The U. S. Trustee imposes these requirements upon chapter 11 debtors and their depositories for numerous reasons.

16. First, the authorized depositories send bank account statements directly to the U.S. Trustee. This procedure prevents the alteration of the statements and ensures that the U.S. Trustee will have, at least, some up-to-date financial information regarding a debtor even if the debtor fails to file monthly operating reports, an all too frequent occurrence in chapter 11 cases.

17. Second, the requirements ensure that a debtor's bank accounts are fully insured regardless of how much money is in the account at any given

point in time. In the event of a bank failure, chapter 11 accounts that are properly collateralized will not result in a loss to the estate.

18. Section 345 requires collateralization unless the account is "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States…" Congress enacted 11 U.S.C. § 345 presumably fully aware of the full range of financial laws, regulations, and governmental oversight in place regarding national banks and other financial institutions. Despite that knowledge, Congress enacted § 345(b) requiring that funds be collateralized to the extent they are not otherwise insured. Congress clearly expressed its concern regarding loss of estate funds, not from robbers or thieves, but rather from failing banks or other financial institutions.

19. The Debtors indicate that they are currently "in substantial compliance" with Section 345(b), as all six of the Debtors' bank accounts are insured by the Federal Deposit Insurance Corporation ("FDIC") and maintained with authorized depositories. Cash Management Motion, ¶ 41.

20. The use of the phrase "substantial compliance" implies that Debtors are not in total compliance.

21. It is therefore not clear if the Non-Debtor 3M bank accounts are in compliance with Section 345(b), as the Debtors have failed to identify where these bank accounts are maintained and whether they are maintained in authorized depositories.

22. By requiring the placement of the funds in an authorized depository in the name of the Debtors, the U.S. Trustee can more easily track

funds in bank accounts and take steps to insure those funds if they exceed the FDIC insurance limits. To do otherwise requires that the court rely upon the Debtors to immediately advise the court and the U.S. Trustee if the funds on deposit exceed the FDIC insurance limits.

23. Moreover, even if the funds are held by a financial institution that is not a currently an authorized depository, there is nothing that prevents a financial institution from requesting to become an authorized depository. If a bank wishes to do so, the U. S. Trustee is willing and able to supply the required agreement and would review the same upon return from the requesting financial institution.

24. It should also be noted that the U. S. Trustee treats the fiduciaries in all chapters of bankruptcy the same. The U.S. Trustee requires that all chapter 12 and 13 standing trustees and all chapter 7 panel trustees maintain their financial accounts in authorized depositories who have entered into the required agreement. The U.S. Trustee routinely monitors collateralization of those accounts and assures appropriate collateralization of those accounts with the posting of surety bonds or the pledge of collateral with the Federal Reserve Bank by the financial institutions.

25. The Debtors provide no rationale for maintaining two bank accounts with a non-debtor entity other than wishing to continue having Non-

Debtor 3M make disbursements to third parties and non-debtor affiliates on an average of $3.7 million per month.[2]

26. The U.S. Trustee concedes that closing a bank account and opening another always imposes a burden on a debtor, but the advantages of being able to maintain stricter oversight of the new bank account far outweighs the inconvenience and expense and comports with the requirements of the Bankruptcy Code.

### The Concentration Account

27. As part of a new cash pooling agreement among the Debtors ("Cash Pool Agreement"), the Debtors implemented a cash management system consisting of six bank accounts held by the Debtors (collectively the "Cash Pooling Accounts"). The Cash Pool Agreement system does not include the Non-Debtor 3M bank accounts.

28. From the six Cash Pooling Accounts, (i) three collection accounts ("Collection Accounts") are used to deposit all cash receipts from customers, (ii) one controlled disbursement account ("Controlled Disbursement Account") is kept to fund a limited portion of the operating and capital expenses, (iii) one account is held for Debtor Cabot Safety Intermediate, LLC ("Cabot Account") with $1.2 million, and (iv) one concentration account ("Concentration

---

[2] Pursuant to a funding and indemnification agreement between the Debtors and Non-Debtor 3M, Non-Debtor 3M has agreed to fully fund the chapter 11 cases and to contribute approximately $1 billion to a trust to ensure claimants determined to be entitled to compensation receive payment ("Funding Agreement.") (Docket No. 11, Exhibit 3). Pursuant to the Funding Agreement, Non-Debtor 3M will continue making disbursements on behalf of the Debtors to third parties. Cash Management Motion, ¶ 20.

Account"), where all cash from the Collection Accounts is automatically swept, is used to fund certain operating and capital expenses.

29. The U.S. Trustee does not object to the Cash Pooling Agreement provided the Debtors can verify to the Court that the Debtors can track all deposits and disbursements made in each of the Cash Pooling Accounts and determine which deposits and which disbursements are attributable to each individual Debtor.

## CONCLUSION

For the reasons set forth herein, the U.S. Trustee requests that the Court grant the Cash Management Motion subject to the requirement that Debtors: (i) transfer the funds in the Non-Debtor 3M Account to a new account with an authorized depository which is under the control of the Debtors; and, (ii) only permit the use of the Cash Pooling Agreement if the Debtors present evidence that they will be able to properly trace all deposits and disbursements to and from the Cash Pooling Accounts to each Debtor entity generating said deposits and disbursements.

Date: July 26, 2022

Respectfully submitted,

NANCY J. GARGULA
United States Trustee

By: /s/ Harrison E. Strauss
Harrison E. Strauss
Trial Attorney

Office of the United States Trustee

        46 East Ohio Street, Room 520
Indianapolis, IN 46204
O: (317) 226-6101
D: (317) 226-5705
F: (317) 226-6356
Harrison.Strauss@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 26, 2022, a copy of the foregoing *Objection* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Michael Andolina mandolina@whitecase.com, jdisanti@whitecase.com,mco@whitecase.com

Laura Elizabeth Baccash laura.baccash@whitecase.com

Kayla D. Britton kayla.britton@faegredrinker.com, noticeFRindy@faegrebd.com

Jeffrey A Hokanson jeff.hokanson@icemiller.com, bgnotices@icemiller.com,david.young@icemiller.com

Jay Jaffe jay.jaffe@faegredrinker.com, noticeFRindy@faegrebd.com

Jessica Lauria jessica.lauria@whitecase.com, jdisanti@whitecase.com;mco@whitecase.com

Matthew Evan Linder mlinder@whitecase.com

Elizabeth Marie Little elizabeth.little@faegredrinker.com, noticeFRindy@faegredrinker.com;anita.sery@faegredrinker.com;docketgeneral@faegredrinker.com

Harmony A Mappes harmony.mappes@faegredrinker.com, kristina.tinsley@faegrebd.com

Robert J Pfister rpfister@ktbslaw.com

Nir Maoz nmaoz@ktbslaw.com

Sasha M. Gurvitz sgurvitz@ktbslaw.com

Thomas E Patterson tpatterson@ktbslaw.com

David Horowitz dhorowitz@kirkland.com

McClain Thompson mcclain.thompson@kirkland.com

Edward Sassower esassower@kirkland.com

Derek Hunter derek.hunter@kirkland.com

Spencer Winters spencer.winters@kirkland.com

Ashley Keller ack@kellerpostman.com

Emily Geier emily.geier@kirkland.com

Chad Husnick chusnick@kirkland.com

    I further certify that on July 26, 2022, a copy of the foregoing *Objection* was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

    None

    /s/ Harrison E. Strauss
    Harrison E. Strauss
    Trial Attorney