# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AEARO TECHNOLOGIES LLC, *et al.*,[1] | ) Case No. 22-02890-JJG-11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. 173** |

# DEBTORS' SUPPLEMENTAL BRIEF
# IN SUPPORT OF THEIR MOTION FOR ENTRY OF AN ORDER
# ENFORCING THE AUTOMATIC STAY AND GRANTING RELATED RELIEF

---

[1] The above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief*, entered by the Court for each consolidated Debtor [Docket Nos. 37–42]. The location of the Debtors' service address for the purposes of these chapter 11 cases is 7911 Zionsville Road, Indianapolis, Indiana 46268.

**Table of Contents**

**INTRODUCTION**..................................................................................................................1

**AMENDED RELIEF REQUESTED** ..................................................................................2

**SUPPLEMENTAL BACKGROUND** .................................................................................3
        A.      Keller Postman's Mounting Violations Of The Automatic Stay. ............................3
              1.      Keller Postman's First Attempt To Enjoin 3M In The MDL Court. ...........3
              2.      Keller Postman's Second Attempt To Enjoin 3M In The MDL Court
                      ...................................................................................................................4
              3.      Keller Postman's New PI Motion Seeks To Enjoin 3M From
                      Performing Critical Contracts For The Debtors.............................................5
              4.      Keller Postman Continues To File JPML Tag-Along Actions
                      Seeking To Transfer These Proceedings To The MDL. ...............................7
        B.      Actions By Other MDL Plaintiff Law Firms Raise Stay Violation Concerns.
                      ...........................................................................................................................7

**SUPPLEMENTAL BASIS FOR RELIEF**..........................................................................8

**I.**      **THE AUTOMATIC STAY PROHIBITS ACTIONS AGAINST PROPERTY
           OF THE ESTATE.**........................................................................................................8

**II.**     **THE DEBTORS' CONTRACTS ARE PROPERTY OF THE ESTATE. ..................**9

**III.**    **THE AUTOMATIC STAY APPLIES TO REQUESTS FOR INJUNCTIVE
           RELIEF.**........................................................................................................................11

**IV.**    **INJUNCTIONS INTERFERING WITH A DEBTOR'S CONTRACT
           RIGHTS VIOLATE THE STAY.** ..............................................................................11

**V.**     **KELLER POSTMAN'S AUTOMATIC STAY VIOLATIONS ARE
           WILLFUL.**...................................................................................................................12

**NOTICE**.................................................................................................................................13

**ORDER ENFORCING THE AUTOMATIC STAY AND GRANTING RELATED
        RELIEF**........................................................................................................................1

**Introduction**

The Debtors file this supplement in support of their opening motion to enforce [Docket No. 173] (the "Motion")[1] to apprise this Court of and seek appropriate relief for escalating violations of the automatic stay by the Keller Postman law firm. As the Motion explained, on July 26, 2022—just hours after Debtors filed their chapter 11 petitions—the Keller Postman law firm violated the automatic stay by filing a tag-along notice with the JPML seeking to transfer the entirety of these bankruptcy proceedings to the MDL Court.[2] Since that time, Keller Postman has ratcheted up its stay violations through a preliminary injunction motion in the MDL Court and additional JPML transfer notices, all the while making no bones about its goal of "sending this proceeding to a different tribunal"—the MDL Court.[3]

On August 3, 2022, Keller Postman filed in the MDL Court an "emergency motion," purportedly "on behlaf [sic] of all plaintiffs" for a preliminary injunction against 3M seeking, among other things, to prevent 3M from "supporting an injunction against any Plaintiffs from litigating CAEv2 matters against 3M in this [MDL] Court or following a remand for trial."[4] This broad attempt to foreclose any 3M "support" of the Debtors' preliminary injunction efforts violates the automatic stay by attempting to interfere with the Debtors' rights under two critical contracts: (a) the Support Services Agreement—cutting off the Debtors' access to critical shared

---

[1] The facts and circumstances leading up to the filing of these chapter 11 cases are set forth in the *Declaration of John R. Castellano in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 11] (the "First Day Declaration"), filed on July 26, 2022. Capitalized terms used but not immediately defined herein have the meanings given to them elsewhere in this Brief, in the Motion, or in the First Day Declaration, as applicable.

[2] *See* JPML Docket No. 1771, attached to this Brief as **Exhibit C**

[3] First Day Hr'g Tr. (a.m.) at 99, attached to this Brief as **Exhibit K-1**.

[4] *Plaintiff's Emergency Motion for Preliminary Injunction Against Defendant 3M Company*, *In re: 3M Combat Arms Earplug Products Liability Litigation*, No. 3:19-md-2885 (N.D. Fla. Aug. 3, 2022) [Docket No. 3358], attached to this Brief as **Exhibit B** (the "PI Motion").

services provided thereunder; and (b) the Funding Agreement—putting at risk the entirety of the Debtors' reorganization efforts, each in plain violation of the automatic stay. Critically, less than three hours after Keller Postman filed the PI Motion, the MDL Court set it for hearing on August 11, 2022—four days before this Court's August 15, 2022, hearing on the Debtors' preliminary injunction in the Adversary Proceeding. Meanwhile, Keller Postman has filed several more JPML Transfer Requests[5] aimed at transferring specific proceedings—including the Adversary Proceeding and the Debtors' Bankruptcy Cases—to the MDL Court.

Keller Postman's actions violate the automatic stay provisions of section 362(a) and jeopardize the Debtors' ability to fairly, efficiently, and effectively restructure. The Debtors file this supplemental Brief to expand their original Motion to include the new Keller Postman PI Motion and the additional Transfer Requests and to modify the Motion's proposed form of order (Docket No. 173-1), to include a finding that these additional actions violate the automatic stay.[6]

The Debtors file this supplemental brief (this "Brief") in support of the Debtors' opening Motion to enforce the automatic stay and respectfully state as follows:

## Amended Relief Requested

1.  The Debtors seek entry of an order, substantially in the form attached to this Brief as **Exhibit A** (the "Order"), (a) finding that the PI Motion violates the automatic stay under section 362 of the Bankruptcy Code; (b) finding that the four Transfer Requests violate the automatic stay under section 362 of the Bankruptcy Code; (c) directing Keller Postman to

---

[5] See "Notice[s] of Potential Tag-Along Action" filed by Keller Postman LLC on July 26, 2022, July 29, 2022, August 2, 2022, and August 2, 2022, before the United States Judicial Panel on Multidistrict Litigation in *In re 3M Combat Arms Earplug Products Liability Litigation*, MDL 2885 [JPML Docket Nos. 1771, 1774, 1778, 1779], attached to this Brief as **Exhibits C, D, E, and F** (collectively, the "Transfer Requests").

[6] The amended proposed Order also reflects the consensual resolution of the stay violations related to 94 amended Complaints.

2

withdraw the Transfer Requests; and (d) granting such other relief as the Court deems appropriate.

## Supplemental Background

    **A.**    **Keller Postman's Mounting Violations Of The Automatic Stay.**

          **1.**    **Keller Postman's First Attempt To Enjoin 3M In The MDL Court.**

    2.    On the Petition Date, the Debtors commenced the above captioned chapter 11 cases (the "Bankruptcy Cases") and initiated an adversary proceeding with this Court seeking to preliminarily enjoin all Combat Arms Litigation (22-ap-50059) (the "Adversary Proceeding"). The next day, July 27, 2022, at 9:28 a.m.[7]—just minutes before this Court began the first day hearing (the "First Day Hearing"), Keller Postman filed a motion for a TRO in the MDL Court seeking, among other things, to prevent 3M from taking any steps outside of the MDL to enjoin lawsuits against 3M. MDL Dkt. 3332, attached to this Brief as **Exhibit G**. Less than two hours later, at 11:50 a.m., the MDL Court, *sua sponte,* ordered 3M to respond to the Keller TRO motion by 2:00 p.m. that same day. MDL Dkt. 3333, attached to this Brief as **Exhibit H**.

    3.    3M complied with the four-hour turn-around time (which was elapsing at the same time as this Court was holding its First Day Hearing) and opposed the TRO on multiple grounds. 3M observed that Keller Postman's TRO motion was "a misplaced and misguided effort to ask [the MDL] Court to preemptively rule on the scope of the automatic stay" and "to get a pre-bite at the apple through a repackaged objection to the Debtors' pending [preliminary injunction] motion" in this Court. MDL Docket No. 3335 at 1-2, attached to this Brief as **Exhibit I**. During this Court's First Day Hearing, Keller Postman principal, Ashley Keller, made clear that he had no intention of withdrawing its MDL TRO motion, even though certain plaintiffs' law firms had committed to try to persuade him to do so. First Day Hr'g Tr. (p.m.) at 101, attached to this Brief

---

[7] All time references in this Brief refer to Prevailing Eastern Time.

3

as **Exhibit K-2**.

4.      On July 28, 2022, the MDL court denied the TRO motion, stating, "[g]iven that there is presently no automatic stay in place as to 3M Company and the bankruptcy court's decision on whether the automatic stay will apply to 3M Company will not be made until August 18 or later, as well as the fact that the parties have stipulated to continuing Wave 3 discovery deadlines within the MDL, the Court finds that Plaintiff has failed to show irreparable harm absent a seven-day TRO." MDL Dkt. 3343, attached to this Brief as **Exhibit L**.

### 2.      Keller Postman's Second Attempt To Enjoin 3M In The MDL Court.

5.      On August 3, 2022—undeterred by the denial of its first TRO motion (and on the heels of the Debtors' August 1, 2022, Motion to enforce the automatic stay as to the first Transfer Request)—Keller Postman announced that it would again attempt to enjoin 3M with a "renewed" TRO motion in the MDL court. At 2:02 pm, Keller Postman emailed counsel for the Debtors and 3M, stating "[w]e intend to renew our motion seeking the relief sought by the Motion for the Temporary Restraining Order against 3M Company filed last week. MDL Dkt 3332." Email from Ashley Barriere of Keller Postman, attached to this Brief as **Exhibit M**.

6.      At 4:03 p.m., Keller Postman filed its PI Motion in the MDL, which is now styled as an *Emergency Motion on Behlaf [sic] of All Plaintiffs for Preliminary Injunction Against Defendant 3M Company*, MDL Dkt. 3358. Keller Postman did not move for reconsideration of the MDL Court's prior denial of its TRO motion, nor did it offer any new evidence or argument that could not previously have been made—despite its assertion in that same PI Motion that "[p]arties who disagree with Court orders but respect the rule of law have two options: file a motion for reconsideration or file a notice of appeal." PI Motion at 7. Keller Postman did neither of these things before filing its "renewed" motion, and instead only reasoned that its first TRO motion was "hurried." *Id.* at 4.

4

7. Keller Postman asked for expedited briefing on its PI Motion, seeking a response date of August 10, and a hearing date of August 12—all of which would be before this Court has an opportunity to hear the Debtors' preliminary injunction motion on August 15, 2022. *Id.* at 22–23. At 6:38 p.m. on August 3, 2022 (the same day Keller Postman filed the PI Motion), the MDL Court entered a briefing schedule that was even more expedited than requested by Keller Postman (making opposition briefs due August 9, instead of August 11), provided for a Keller Postman reply brief (which was not requested and is not allowed as a matter of right under the local rules governing the MDL Court), and set a hearing date of August 11 (which was also sooner than requested by Keller Postman, and still before the August 15, 2022, preliminary injunction hearing scheduled before this Court). MDL Dkt. 3359, attached to this Brief as **Exhibit N**. The MDL Court's order setting the briefing and hearing dates did not refer to the previous denial of Keller Postman's TRO motion nor question why the renewed motion was procedurally proper. *See id.*

### 3. Keller Postman's New PI Motion Seeks To Enjoin 3M From Performing Critical Contracts For The Debtors.

8. Among other things, the PI Motion asked the MDL Court to enjoin 3M from "supporting an injunction against any Plaintiffs from litigating CAEv2 matters against 3M in this [MDL] Court or following a remand for trial." This request directly seeks to enjoin 3M from providing services and funding *to the Debtors*—as required by several important contracts.

9. *First*, 3M and Non-Debtor Affiliates provide critical shared services to the Debtors pursuant to the Support Services Agreement, an agreement governing shared services between the parties for over 14 years.

10. *In-House Legal Services:* The Debtors do not maintain a stand-alone legal department and rely on 3M and the Non-Debtor Affiliates to provide comprehensive legal services support, including in-house support for the Debtors' litigation responsibilities and management of

5

external counsel. This support is crucial to the Debtors' administration of their chapter 11 cases. For example, the Debtors' corporate secretary, Leigh Gillett, is a 3M employee and member of the 3M legal department. Enjoining the participation of 3M's legal department in the preliminary injunction hearing before this Court impedes on the Debtors' contractual right to services provided under the Support Services Agreement and would frustrate the Debtors' ability to administer their bankruptcy estates as debtors-in-possession.

11. *Human Resources*: The Debtors rely on 3M and the Non-Debtor Affiliates for the provision of comprehensive human resources services, including payroll processing and administration, management of benefits programs, management of employee performance evaluation processes, personnel recruiting, and training and development. The PI Motion, insofar as it seeks to enjoin 3M's "support" of the Debtors in pursuing a preliminary injunction enjoining Combat Arms-related claims against 3M, effectively handcuffs the Debtors' employees from participation in the hearing and related preparation for the Adversary Proceeding, potentially restricting the processing and payment of wages as provided under the Support Services Agreement and as already approved on an interim basis by this Court. *See* [Docket No. 150] (the "Interim Wages Order"). The human resources services provided by 3M pursuant to the Support Services Agreement enable the Debtors to effectively utilize key personnel critical in the administration of these chapter 11 cases.

12. *Second*, the Funding Agreement obligates 3M to provide funding to the Debtors for various uses, including the payment of "the costs, expenditures (including capital expenditures), or other amounts incurred or to be incurred by such Aearo Entity . . . to administer a Bankruptcy Case, including any related professional fees and expenses." *See* Funding Agreement, § 1, definition of "Permitted Funding Use." The PI Motion seeks to enjoin the Debtors' contractual

6

right to payment by prohibiting 3M from funding any costs and expenses associated with the preliminary injunction proceeding before this Court.

\* \* \*

13. On August 4, 2022, the Debtors sent Keller Postman a letter notifying it that the PI Motion violated the automatic stay, and specifically referenced the interference with the Debtors' contracts. Aug. 4, 2022, C. Husnick Ltr., attached to this Brief as **Exhibit O**. Keller Postman has neither responded to the letter, nor withdrawn or modified its PI Motion.

    4. **Keller Postman Continues To File JPML Tag-Along Actions Seeking To Transfer These Proceedings To The MDL.**

14. The PI Motion is the latest in a series of Keller Postman actions that violate the automatic stay. After the Debtors commenced these chapter 11 cases, Keller Postman filed four Transfer Requests. For the reasons discussed in the Debtors' opening Motion, each of the Transfer Requests violates the Bankruptcy Code's automatic stay, which enjoins "all parties" from taking certain actions against the Debtors or interfering with property of their estate.

    a. July 26, 2022—JPML Docket No. 1771 (seeking to transfer the Bankruptcy Cases), attached to this Brief as **Exhibit C**;

    b. July 29, 2022—JPML Docket No. 1774 (seeking to transfer the Adversary Proceeding), attached to this Brief as **Exhibit D**;

    c. August 2, 2022—JPML Docket No. 1778 (seeking to transfer the Bankruptcy Cases and listing parties more specifically), attached to this Brief as **Exhibit E**; and

    d. August 2, 2022—JPML Docket No. 1779 (seeking to transfer the Bankruptcy Cases and listing parties more specifically), attached to this Brief as **Exhibit F**.

**B.**    **Actions By Other MDL Plaintiff Law Firms Raise Stay Violation Concerns.**

15. While not the subject of this Brief, on August 4, 2022, MDL Executive Committee member Adam Wolfson (of Quinn Emanuel) filed a separate motion asking the MDL Court to issue an advisory ruling regarding 3M's potential successor liability to the Aearo Debtors. MDL

Dkt. 3361, attached to this Brief as **Exhibit J.** The MDL Court granted Quinn Emanuel's request to expedite briefing on the motion and "join" in the August 11 hearing that the MDL Court already set on Keller Postman's PI Motion. MDL Dkt. 3364. The Debtors reserve all rights with respect to the Quinn Emanuel motion, including seeking additional relief in connection with the automatic stay.

## Supplemental Basis For Relief

16. Keller Postman's PI Motion and Transfer Requests are knowing and willful violations of the automatic stay. *See* Motion at ¶¶ 5-21.

### I. THE AUTOMATIC STAY PROHIBITS ACTIONS AGAINST PROPERTY OF THE ESTATE.

17. The commencement of a bankruptcy case results in the imposition of an automatic stay, which operates as an injunction against "all entities" from taking certain actions against a debtor. 11 U.S.C. § 362(a). Specifically, section 362(a)(3) of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Any action taken in violation of the automatic stay is void and without effect, and such violation may necessitate proceedings in the bankruptcy court, with the attendant possibility of sanctions, costs, and other expenses. *See Cent. States, Se. and Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369 (7th Cir. 1992); *Fidelity Mortg. Inv'rs v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093 (1977).

18. All of Keller Postman's actions took place after the automatic stay was in effect. Each act was a violation of sections 362(a)(1) and (a)(3) of the Bankruptcy Code. Keller Postman's PI Motion and the request contained therein—that the MDL Court prohibit 3M from *supporting* an injunction against any Combat Arms Litigation—is a clear violation. As discussed above, and shown below, the Debtors' contractual interests in the Support Services Agreement and

8

the Funding Agreement are property of the Debtors' bankruptcy estates and thereby protected by the automatic stay.  Moreover, 3M's support under those agreements is instrumental to the Debtors' ability to obtain the preliminary injunction necessary and appropriate to their formulation of a plan of reorganization and successful administration of their estates.

## II.  THE DEBTORS' CONTRACTS ARE PROPERTY OF THE ESTATE.

19. It is black letter law that a debtor's contracts "are considered a form of property of the estate" and, as such, "the debtor's interests in such contracts and leases are protected against . . . interference that would have the effect of removing or hindering the debtor's rights in violation of section 362(a)(3)."  3 Collier on Bankruptcy ¶ 362.03[5][a].  This broad interpretation has been reinforced by the Supreme Court, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983), and repeatedly upheld by circuit courts across the country.  *See Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 707-08 (7th Cir. 1994) (holding that the debtor's "right to collect from the general partners [under a partnership agreement] is 'property of the estate'" protected by section 362(a)(3) of the Bankruptcy Code); *In re Mirant Corp.*, 440 F.3d 238, 251–52 (5th Cir. 2006) (finding that a debtor's interest in a contract is property of the estate protected by the automatic stay); *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987) ("The courts are in agreement that [executory contracts and unexpired leases] constitute property of the bankrupt estate."); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002 (4th Cir. 1986) ("Under the weight of authority, [a debtor's] contracts have been said to be embraced in this statutory definition of 'property.'"); *In re Computer Commc'ns, Inc.*, 824 F.2d 725, 729 (9th Cir. 1987) (explaining that "contracts are embraced in the statutory definition of 'property'"); *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1256 (11th Cir. 2006) ("The property of the estate of [the debtor] includes any contractual rights that it owned when it filed for bankruptcy."); *cf. In re Majestic Star Casino, LLC*, 716 F.3d 736, 750–51 (3d Cir. 2013) ("It is also well established

9

that the mere opportunity to receive an economic benefit in the future is property with value under the Bankruptcy Code.").[8]

20. The Debtors have contract rights arising from the Support Services Agreement and the Funding Agreement (together, the "Agreements"). These contract rights are property of the estate. Keller Postman's attempt to enjoin 3M from performing under the Agreements for certain purposes (i.e., supporting the Debtors' efforts to enjoin Combat Arms Litigation against non-debtor affiliates) seeks to exercise control over the Agreements by preventing the Debtors from exercising their contractual rights thereunder.

21. Specifically, Keller Postman's request seeks to prohibit the Debtors from obtaining through the Funding Agreement any funding from 3M for the costs and expenses associated with the preliminary injunction proceeding before this Court. The Debtors' rights under the Funding Agreement to receive funding from 3M to support the administration of these chapter 11 cases are unquestionably "opportunit[ies] to receive an economic benefit in the future," which is "property with value under the Bankruptcy Code." *Extraction*, 2020 WL 7074142, at *4. Likewise, the Debtors will need to utilize the critical human resources services, shared employees, and in-house legal support services from 3M which the Debtors are entitled to under the Support Services

---

[8] *See also see e.g.*, *In re Lee*, 524 B.R. 798, 804 (Bankr. S.D. Ind. 2014) (holding that a debtor's voting rights under an operating agreement were property of the estate and protected by the automatic stay); *In re Windstream Holdings, Inc.*, 627 B.R. 32, 42 (Bankr. S.D.N.Y. 2021) ("Section 362(a)(3) clearly encompasses and protects a debtor's executory contracts, which are property of the debtor's estate under 11 U.S.C. § 541."); *U.S. BankTrust Nat'l Assn. v. Am. Airlines, Inc. (In re AMR, Inc.)*, 485 B.R. 279, 294 (Bankr. S.D.N.Y. 2013) (explaining that contract rights are property of the estate protected by section 362(a)(3) from the exercise of control over them), *aff'd* 730 F.3d 88 (2nd Cir. 2013); *In re Enron Corp.*, 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) ("Courts have consistently held that contract rights are property of the estate, and that therefore those rights are protected by the automatic stay."); *Adelphia Communs. Corp. v. The America Channel, LLC (In re Adelphia Communs. Corp.)*, 2006 Bankr. LEXIS 975, at *10 (Bankr. S.D.N.Y. Apr. 5, 2006) ("An interference with the estate's . . . contractual right . . . is a classic and egregious violation of section 362(a)(3)."); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS), 2020 WL 7074142, at *4 (Bankr. D. Del. Dec. 3, 2020) ("Courts have repeatedly held that 'the mere opportunity to receive an economic benefit in the future is property with value under the Bankruptcy Code.'").

10

Agreement as they prepare for and prosecute the preliminary injunction proceeding before this Court. Moreover, the Debtors reiterate that this Court has already approved on an interim basis the processing and payment of wages by 3M pursuant to the Interim Wages Order.

### III. THE AUTOMATIC STAY APPLIES TO REQUESTS FOR INJUNCTIVE RELIEF.

22. The fact that Keller Postman's PI Motion requests injunctive relief does not absolve it as a clear violation of the automatic stay. The consensus among courts interpreting the automatic stay's application to injunctive relief is that the "stay includes actions seeking injunctive or similar relief." 3 Collier on Bankruptcy P 362.03 (16th 2022). *See, e.g.*, *Advanced Computer Servs. of Michigan, Inc. v. MAI Sys. Corp.*, 161 B.R. 771, 774 (E.D. Va. 1993) ("There is no merit to the argument that a suit for injunctive and declaratory relief is an equitable suit and not a 'judicial action' as to which a stay is applicable."); *Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 707-08 (7th Cir. 1994) (holding that the automatic stay applied to an injunction exercising control over the debtor's contractual right to payment).

### IV. INJUNCTIONS INTERFERING WITH A DEBTOR'S CONTRACT RIGHTS VIOLATE THE STAY.

23. Moreover, the fact that Keller Postman's PI Motion seeks to interfere with the Debtors' contract rights is a violation of section 362(a)(3) of the Bankruptcy Code. Several courts, including the Seventh Circuit Court of Appeals, have expressly held that an injunction that interferes with a debtor's contractual rights violates the automatic stay. *See, e.g.*, *Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 707-08 (7th Cir. 1994) (holding that the automatic stay applied to an injunction exercising control over the debtor's contractual right to payment); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2006 WL 1529357, at *4 (Bankr. S.D.N.Y. June 5, 2006) (holding that third-party's attempt to enjoin debtor's asset sale violated the automatic stay and explaining that "[a]n interference with the estate's . . . contractual right to secure

11

[funds] . . . is a classic, and egregious, violation of section 362(a)(3)"); *In re MCEG Prods., Inc.*, 133 B.R. 232, 235 (Bankr. C.D. Cal. 1991) (holding that an attempt to enjoin a non-debtor's performance under contracts with the debtor violated automatic stay because it "affected [the debtor's] interest in the [contracts]," and explaining that section "362(a)(3) protects against such acts to exercise control over property of the estate without distinction as to the form such interference takes"); *In re Dublin Properties*, 20 B.R. 616, 620 (Bankr. E.D. Pa. 1982), *rev'd in part sub nom. Frankford Tr. Co. v. Allanoff*, 29 B.R. 407 (E.D. Pa. 1983) ("We find it inconceivable to imagine that anyone familiar with the Bankruptcy Code could, in good faith, believe that the automatic stay provisions of the Code do not prohibit a person from taking action in another court to eliminate a property interest held by the estate.").

## V. KELLER POSTMAN'S AUTOMATIC STAY VIOLATIONS ARE WILLFUL.

24. Keller Postman has appeared before this bankruptcy Court and is well aware of the import of the automatic stay, and has received written notice (both through direct correspondence and the original enforcement Motion) that its actions violate the stay. Despite this knowledge, Keller Postman's repeated acts—culminating (so far) in the PI Motion—to exercise control over property of the estate constitute willful violations of the automatic stay.

25. As set forth in the proposed Order, the Debtors seek entry of an order finding that Keller Postman has violated the automatic stay through both its PI Motion and Transfer Requests. The Debtors respectfully defer to this Court as to what, if any, additional relief it deems appropriate in this circumstance. *See In re Klarchek*, 508 B.R. 386, 393 n.4 (Bankr. N.D. Ill. 2014) (to protect this jurisdiction, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" (citing 11 U.S.C. § 105(a) and *Zerand-Bernal Group, Inc. v. Cox,* 23 F.3d 159, 162 (7th Cir. 1994))).

## Notice

26.  The Debtors will provide notice of this Brief to the following parties or their respective counsel: (a) the United States Trustee for Region 10, Attn: Ronald Moore; (b) the Top Counsel List;[9] (c) counsel for non-Debtor 3M; (d) the United States Attorney's Office for the Southern District of Indiana; (e) the Internal Revenue Service; (f) the office of the attorneys general for the states in which the Debtors operate or face Tort Claims;[10] (g) the United States Department of Veterans Affairs; (h) the United States Department of Defense; (i) the Securities and Exchange Commission; (j) counsel for Keller Postman; (k) counsel for Aylstock, Keller Postman, and the other lawyers listed on Exhibit C to the opening Motion; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Notice of this Brief and any order entered hereon will be served in accordance with Local Rule B-9013-3(d). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

---

[9]  As defined in the Debtors' creditor matrix motion [Docket No. 17] (the "Creditor Matrix Motion").

[10] As defined in the Creditor Matrix Motion.

13

WHEREFORE, the Debtors respectfully submit this Brief in support of the Motion and request the Court enter an order sustaining the Motion, as supplemented by this Brief, and granting such other relief to which the Debtors may be entitled.

Indianapolis, Indiana
Dated:  August 9, 2022

/s/ Jeffrey A. Hokanson

**ICE MILLER LLP**
Jeffrey A. Hokanson (Ind. Atty. No. 14579-49)
Connor Skelly (Ind. Atty. No. 35365-06) (*pro hac vice* pending)
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone:      (317) 236-2100
Facsimile:       (317) 236-2219
Email:             Jeff.Hokanson@icemiller.com
                       Connor.Skelly@icemiller.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Emily Geier (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:             edward.sassower@kirkland.com
                       emily.geier@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Spencer A. Winters (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:             chad.husnick@kirkland.com
                       spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*