# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AEARO TECHNOLOGIES LLC, | ) | Case No. 22-02890-JJG-11 |
| | ) | |
| Debtor. | ) | |

## DEBTORS' MOTION TO EXTEND
## THEIR EXCLUSIVE PERIODS TO FILE AND
## SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN

The above-captioned debtor and debtor in possession (together with its debtor affiliates, the "Debtors")[1] respectfully state as follows in support of this motion (the "Motion"):[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), extending by approximately four months the periods during which the Debtors have the exclusive right to file a chapter 11 plan through and including March 23, 2023 (the "Filing Exclusivity Period"), and to solicit votes thereon through and including May 23, 2023 (the "Solicitation Exclusivity Period," and together with the Filing Exclusivity Period, collectively, the "Exclusivity Periods"), and granting related relief.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief*, entered by the Court for each consolidated Debtor [Docket Nos. 37–42]. The location of the Debtors' service address for the purposes of these chapter 11 cases is: 7911 Zionsville Road, Indianapolis, Indiana 46268.

[2] Detailed descriptions of the Debtors, their business, and the facts and circumstances surrounding these chapter 11 cases are set forth in the *Declaration of John R. Castellano in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 11], filed on July 26, 2022. Capitalized terms used but not immediately defined have the meanings given to them elsewhere in this Motion or in the First Day Declaration, as applicable.

**Preliminary Statement**

2.  The Debtors filed these chapter 11 cases in an effort to resolve a flood of tort litigation. An initial focus of the cases was on extension of the automatic stay to concurrent litigation so that all stakeholders could focus on resolution. The denial of such relief is now on appeal before the United States Court of Appeals for the Seventh Circuit (the "Seventh Circuit"). To-date, the Debtors have obtained necessary first- and second- day relief, filed their schedules and statements, and held their 341 meetings. Attention then turned to mediation, which remains the principal focus of the Debtors and their stakeholders. The Debtors have laid the groundwork for claims determination and potential estimation proceedings should mediation falter. This includes lifting the stay with the respect to appeals on the merits in the United States Court of Appeals for the Eleventh Circuit (the "Eleventh Circuit") and the filing of schedules and statements in this Court. The Debtors have also engaged with the Respirator Committee to provide access to information about their claims to facilitate settlement negotiations regarding such claims. Under these circumstances, a first four-month extension of exclusivity is warranted to allow the Debtors to build upon the extensive and necessary groundwork that they have established during the initial stages of these cases and work toward a resolution through negotiations among the Debtors and their stakeholders or, in the event discussions are unsuccessful, use the tools available in chapter 11 to advance the cases. Termination of the Exclusivity Periods is especially unwarranted while mediation is ongoing and appellate review is underway before the Seventh Circuit, as the outcome may facilitate all parties coming together to negotiate a consensual plan of reorganization.

3.  These cases are among the largest and most complex mass tort bankruptcies in history. The multidistrict litigation ("MDL") in which the claims arising from the sale of noise-reduction earplugs, known as "Dual-Ended Combat Arms — Version 2" earplugs

(the "Combat Arms Earplugs" and claims relating thereto, the "Combat Arms Claims"), are pending (the "Combat Arms MDL") includes more than 230,000 claims, making it more than twice the size of the other 191 pending MDLs combined.³ The Debtors are also subject to claims alleging personal injury in connection with the use of the Debtors' mask and respirator products. Especially where mediation is ongoing, courts regularly grant extensions of exclusivity in large and complex mass tort bankruptcies like this one.⁴

4.  At the outset of these cases, the Debtors sought and litigated a preliminary injunction through an adversary proceeding in this Court. The Debtors and their advisors expended considerable time and effort participating in a three-day trial. Although this Court denied the request for a preliminary injunction, the Court acknowledged that resolution of these issues presented a matter of public importance and stated that, in the Court's view, involved "questions of law for which there is no controlling decision from the Seventh Circuit Court of Appeals or the Supreme Court of the United States."⁵ On October 12, 2022, the Seventh Circuit certified the decision for direct appeal.⁶

5.  From the outset, the Debtors have pursued efforts to engage in mediation with the plaintiffs. Discussions commenced before the ruling on the preliminary injunction and culminated

---

³ *See In re Aearo Technologies LLC*, 642 B.R. 891, 902 (Bankr. S.D. Ind. 2022) (c*iting* MDL Statistics Report – Distribution of Pending MDL Dockets by Actions Pending (September 15, 2022), U.S. Judicial Panel on Multidistrict Litigation).

⁴ *See, e.g.*, *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Aug. 20, 2021) (granting an extension of the exclusivity periods while mediation was in process); *In re Boy Scouts of America*, No. 20-10343 (LSS) (Bankr. D. Del. Jul. 9, 2020) (same); *In re Paddock Enterprises, LLC*, No. 20-10028 (LSS) (Bankr. D. Del. Feb. 19, 2021) (same); *In re USA Gymnastics*, No. 18-09108-RLM-11 (Bankr. S.D. Ind. Jul. 25, 2019) (same).

⁵ *See Certification for Direct Appeal* [Adv. Proc. Docket No. 181].

⁶ *See Order Granting Certification for Direct Appeal* [Adv. Proc. Docket No. 225].

in multiple motions and hearings before this Court. The Court ultimately appointed the Honorable James M. Carr and Randi S. Ellis as co-mediators.

6. Pursuant to that authorization, the Debtors are now engaged in ongoing mediation. The Debtors do not expect the success of mediation to be judged at the outset. Instead, as Judge Carr observed, mediation "[is] not a string of pearls. It's not like you go from mediation session to mediation session. You mediate every day once this starts."[7] The Debtors agree that a successful mediation will require an active and ongoing dialog between the co-mediators, the Debtors, and the other parties in interest. That is happening now. The parties' actions in these cases since the mediation began demonstrate that the parties are focusing considerable time and effort on the mediation.

7. Appreciating that the Respirator Committee[8] is not a participant in the MDL mediation, the Debtors have remained engaged with the Respirator Committee so that any resolution with respect to respirator claims can keep pace with efforts to resolve Combat Arms Claims. The Debtors have begun exchanging information with the Respirator Committee regarding the complex issues related to those claims. Other interested parties related to the Debtors' respirator claims have indicated their desire to engage in discussions to resolve issues, and the Debtors will continue to engage with those parties and the Respirator Committee.[9]

8. In addition to these efforts to facilitate a resolution, the Debtors have laid the groundwork for further proceedings in this Court if current efforts prove unsuccessful. The

---

[7] *See* 9/7/2022 Hr'g Tr. at 60:10–12.

[8] As defined in the *Notice of Appointment of Additional Committee – Tort Claimants Related to Respirators* [Docket No. 395].

[9] *See, e.g.*, *Statement of Cabot CSC LLC in Support of Mediation and Participation as a Mediation Party with Respect to Respirator Claims* [Docket No. 560] and the *Response of American Optical Corporation* to the Chapter 11 Mediation Motion [Docket No 562].

4

Debtors sought, and obtained, consensual relief from the automatic stay to pursue appeals in the Eleventh Circuit addressing cross-cutting issues at the heart of the Combat Arms Earplugs litigation.[10] These issues concern the applicability of the "government contractor" defense, which the Debtors have argued is a total defense to liability, jury instruction errors that were repeated at every one of the sixteen bellwether trials, whether the federal Noise Control Act required certain testing and labeling of the Combat Arms Earplugs, and other pivotal evidentiary issues about the design of the product.[11] Resolution of these appeals will provide additional clarity with respect to the viability of the underlying Combat Arms Claims. These pending appeals, together with the appeal in the Seventh Circuit, are yet another factor supporting extension of exclusivity. Courts around the country have recognized that pending appeals favor such an extension.[12]

9. Moreover, on August 29, 2022, the Debtors filed their schedules of assets and liabilities and statements of financial affairs, an amended version of which was filed on September 19, 2022. This required a significant expenditure of time and effort at the outset of these cases. It also lays the groundwork for a potential bar date motion, should it prove necessary and appropriate.

---

[10] *Order Granting Mot. of the Debtors to Lift the Automatic Stay to Permit Certain Appeals to Proceed* [Docket No. 548].

[11] *Debtors' Mot. to Lift the Automatic Stay to Permit Certain Appeals to Proceed* [Docket No. 413].

[12] *See, e.g.*, *In re Hoffinger Industries, Inc.*, 292 B.R. 639, 644 (8th Cir. B.A.P. 2007) (finding that the pendency of an appeal to resolve a substantial judgment was a factor in favor of exclusivity extension); *In re Gabriel Technologies Corp.*, 2013 WL 5550391 at *3 (Bankr. N.D. Cal. 2013) (finding that resolution of a threshold issue on appeal warranted suspension); *In re R&G Properties, Inc.*, 2009 WL 269696 at *1 (Bankr. D. Vt. 2009) (finding that the pendency of an appeal, in conjunction with other factors, supports an extension of the exclusivity periods); *In re UNR Industries, Inc.*, 72 B.R. 789, 792 (Bankr. N.D. Ill. 1987) (same); *In re Texaco Inc.*, 76 B.R. 322, 326-7 (Bankr. S.D.N.Y. 1987) (finding that the appeal of a threshold issue was a major factor warranting exclusivity extension); *In re United Press Intern., Inc.*, 60 B.R. 265, 270 (Bankr. D. D.C. 1986) (granting an extension of the exclusivity periods because the debtor was subject to an "avalanche" of litigation); *In re Swatara Coal Co.*, 49 B.R. 898, 899 (Bankr. E.D. Pa. 1985) (granting an extension of the exclusivity periods where threshold matters such as the debtor's lack of legal right to file a reorganization plan and stipulated negotiation periods stalled the bankruptcy proceedings).

5

10. Given the facts and circumstances of these chapter 11 cases and the standards set forth by applicable law, the Debtors believe they meet the standard for extension of the Exclusivity Periods as requested herein. The Debtors would benefit from additional time to participate in mediation, advance their appellate proceedings, and otherwise continue negotiating with parties in interest and advancing these chapter 11 cases.

## Jurisdiction and Venue

11. The United States Bankruptcy Court for the Southern District of Indiana (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the Southern District of Indiana, dated July 11, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157. The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13. The bases for the relief requested herein is section 1121 of title 11 of the United States Code (the "Bankruptcy Code"), rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules B-1015-1(b)(5)(B)(iii) and B-9013-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Indiana (the "Local Rules").

## Basis for Relief

14. Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the commencement of a chapter 11 case during which only a debtor may file a plan and an additional 60-day period during which only the debtor may solicit votes for a plan, both of which are subject to extension through motion practice. 11 U.S.C. § 1121(d). Currently, the Filing

6

Exclusivity Period will expire on November 23, 2022, and the Solicitation Exclusivity Period will expire on January 23, 2023. The Debtors believe it is appropriate to seek an extension of the Exclusivity Periods in order to preserve their exclusive ability to file and solicit a plan of reorganization.

15. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause." The word "cause" is not defined in the Bankruptcy Code, and its meaning has been developed by the courts on a case-by-case basis. *In re Veit*, 227 B.R. 873, 874 (Bankr. S.D. Ind. 1998) (citing *In re Fernstrom Storage & Van Co.*, 938 F.2d 731 (7th Cir. 1991)). Nevertheless, it is clear from cases in this circuit, and from the congressional record, that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors; bankruptcy courts have broad discretion to extend exclusivity, and the decision to do so should be based upon the facts and circumstances of a particular case with keen consideration given to creating circumstances to aid the debtor in negotiating a consensual plan. *See, e.g.*, *203 N. LaSalle St. P'ship v. Bank of Am. Nat'l Ass'n*, 1999 WL 1206619 at *4 (N.D. Ill. Dec. 13, 1999) ("[T]he Code commits decisions on extending the exclusivity period to the discretion of the bankruptcy court."); H.R. Rep. No. 95-595, at 231-32 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); 140 Cong. Rec. H. 10764 (Oct. 4, 1994); H.R.Rep. No. 103-835, at 36 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3344 ("Exclusivity is intended to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.").

16.    Courts often use the following factors in determining whether "cause" exists to extend a debtor's exclusive plan filing period:

 a. the size and complexity of the case;

 b. necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

 c. the existence of good faith progress towards reorganization;

 d. the fact that the debtor is paying its bills as they become due;

 e. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

 f. whether the debtor has made progress in negotiation with its creditors;

 g. the amount of time that has elapsed in the case;

 h. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and/or

 i. whether an unresolved contingency exists.

*See, e.g.*, *In re Gialamas*, 2019 WL 6215974 at *1 (Bankr. W.D. Wisc. 2019) (setting forth nine factors courts typically consider when determining whether to extend the debtor's exclusive period to file a plan); *see In re Quality Inns Int'l, Inc. v. L.B.H. Associates Ltd. P'Ship*, 911 F.2d 724 at *2 (4th Cir. 1990) (affirming the bankruptcy court's grant of an exclusivity extension based on four of the above factors: (a) the debtor was involved in protracted litigation; (b) the case was complex; (c) the debtor had been making every effort to rehabilitate itself; and (d) there was a promise of success); *In re Scotty's Holdings, LLC*, No. 18-09243-JJG-11 (Bankr. S.D. Ind.) (relying on the above factors in granting the debtors' exclusivity extension motion); *In re USA Gymnastics*, No. 18-09108-RLM-11 (Bankr. S.D. Ind.) (same); *In re hhgregg, Inc.*, No. 17-01302-RLM-11 (Bankr. S.D. Ind.) (same).

17.    Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g.*,

8

*In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing all nine factors later set forth in *Gialamas* but relying on only four as relevant in determining whether there was "cause" to extend exclusivity). Indeed, the size and complexity of a debtor's case alone can support a determination that cause exists to extend the Exclusivity Periods. *See In re Express One*, 194 B.R. at 100 (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the cases alone); *In re Texaco*, 76 B.R. 322, 325–27 (Bankr. S.D.N.Y. 1987) (holding that cause existed to warrant extension of exclusivity based on the size and complexity of the case alone). Moreover, courts regularly grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan. *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (internal citation omitted); *see also In re Borders Grp., Inc.*, 460 B.R. at 825 (same).

18. The Debtors submit that sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to extend the Exclusivity Periods as provided herein. As set forth below, each of the relevant factors weighs in favor of an extension of the Exclusivity Periods:

- *The Debtors' Chapter 11 Cases are Large and Complex.* With more than 230,000 pending Combat Arms Claims, as well as pending claims in Minnesota state court and respirator claims, the Debtors face thousands of claims in addition to the largest MDL in history. It is impossible to deny that a mass tort bankruptcy with claimants this numerous, asserting claims of such a magnitude, qualifies as large and complex. Accordingly, the size and complexity of these chapter 11 cases weigh in favor of extending the Exclusivity Periods.

- *The Debtors Have Made Good-Faith Progress Toward Exiting Chapter 11.* Since July 26, 2022 (the "Petition Date"), the Debtors have sought to utilize chapter 11 tools to bring order to a vast number of claims, to protect the estates for the value of all parties in interest, and to reach a resolution that is prompt,

9

equitable, and final.  The Debtors continue to pursue ongoing negotiations regarding a consensual resolution.  The Debtors obtained necessary first- and second- day relief, filed their schedules and statements, and held their 341 meetings.  In addition, the Debtors have been authorized to participate in the MDL mediation and obtained the consensual appointment of Judge Carr and Ms. Ellis as co-mediators by this Court in its mediation order.  The Debtors are hopeful that mediation will aid in formulating and negotiating a confirmable chapter 11 plan.  Accordingly, the Debtors' good-faith progress toward an exit from chapter 11 weighs in favor of extending the Exclusivity Periods.

- *An Extension of the Exclusivity Periods Will Not Prejudice Creditors*.  Continued exclusivity will avoid competing plans that could derail the ongoing mediation and the Debtors' restructuring process.  As a result of litigation in multiple forums at the outset of these chapter 11 cases—collateral litigation that continues against 3M to this day—the Debtors have just recently had the opportunity to focus on beginning to craft a consensual resolution.  Extending the Exclusivity Periods will benefit the Debtors' estates, their creditors, and all other key parties in interest by avoiding the inevitable litigation and distraction that competing plans would cause so early in these chapter 11 cases.

- *The Debtors Are Paying Their Bills as They Come Due*.  Since the Petition Date, the Debtors have paid their vendors and third-party partners in the ordinary course of business, or as otherwise provided by orders of the Court.  The Debtors' cash from operations and funding provided by that certain funding and indemnification agreement entered into on July 25, 2022, by and between the Debtors and non-Debtor 3M Company (the "Funding and Indemnification Agreement") has allowed the Debtors to meet their obligations as they come due in the ordinary course.  Accordingly, this factor weighs in favor of extending the Exclusivity Periods.

- *The Debtors Have Reasonable Prospects for Filing a Viable Plan.*  The Debtors are financially supported by the Funding and Indemnification Agreement and have the assistance of the co-mediators to engage in negotiations around a prospective resolution.  The ongoing mediation evidences the mutual goal of finding a successful resolution of the Combat Arms Claims.  The Debtors' information exchange with the Respirator Committee and continued discussion with other interested parties related to the respirator claims further demonstrates a commitment to resolution amongst all parties in interest.  The scale and complexity of these chapter 11 cases mean that efforts to reach consensus will take time, but the Debtors are progressing these chapter 11 cases in good faith and have reasonable prospects for filing a viable plan.

- *These Cases Are Not Yet Three Months Old*.  This is the Debtors' first request for an extension of the Exclusivity Periods.  As discussed above, in under three months and in the midst of litigation, the Debtors have accomplished a great deal and continue to work diligently towards a resolution.  The short time that

10

the Debtors have spent in chapter 11 to-date weighs in favor of extending the Exclusivity Periods.

- *An Extension Will Not Pressure Creditors*. The Debtors are proposing an extension of exclusivity to engage with creditors in restructuring negotiations without the distraction and confusion that could be created by multiple competing plans. All creditor groups will have an opportunity to actively participate in these substantive discussions with the Debtors regarding a consensual plan of reorganization. This factor also weighs in favor of extending the Exclusivity Periods. This approach does not pressure or prejudice any stakeholder.

- *The Combat Arms Earplugs Litigation and Relevant Appeals Reflect an Unresolved Contingency*. To identify the universe of claims asserted against the estates, the Debtors must sufficiently understand the bases of these claims. The Combat Arms MDL remains an outsized contingent, unliquidated, and disputed liability of the Debtors. The Debtors' appeals are proceeding in the Eleventh Circuit as to pivotal, cross-cutting questions of law and procedure that are relevant to the entire Combat Arms MDL. The fact that the Combat Arms Claims remain an unresolved contingency in these cases weighs in favor of extending the Exclusivity Periods.

19. An objective analysis of the relevant factors demonstrates that the Debtors are doing what they should be doing as chapter 11 debtors to facilitate a successful conclusion to these complex chapter 11 cases. Granting the requested extension of the Exclusivity Periods at this early stage of the restructuring will afford the Debtors a full and fair opportunity to negotiate and propose a plan of reorganization without the distraction, cost, and delay of a competing plan process. *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan. It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.") (citation and internal quotation marks omitted). Accordingly, the Debtors respectfully submit that sufficient cause exists to extend the Exclusivity Periods as provided herein. This and other courts have granted relief similar to that requested herein. *See In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Feb. 25, 2021) (granting

11

an initial extension of 180 days); *In re Boy Scouts of America*, No. 20-10343 (LSS) (Bankr. D. Del. July 09, 2020) (granting an initial extension of 120 days); *In re DBMP LLC*, No. 20-30080 (JCW) (Bankr. W.D.N.C. June 26, 2020) (granting an approximately four-month initial extension); *In re Scotty's Holdings, LLC*, No. 18-09243-JJG-11 (Bankr. S.D. Ind. Apr. 23, 2019) (granting an initial extension of 60 days); *In re USA Gymnastics*, No. 18-09108-RLM-11 (Bankr. S.D. Ind. Mar. 29, 2019) (granting an initial extension of 120 days); *In re Fayette Memorial Hospital Ass'n, Inc.*, No. 18-0772-JJG-11 (Bankr. S.D. Ind. Mar. 1, 2019) (granting an initial extension of 91 days); *In re hhgregg, Inc.*, No. 17-01302-RLM-11 (Bankr. S.D. Ind. Jul. 13, 2017) (granting an approximately two-month extension).[13]

20.     An extension of the Exclusivity Periods will provide the Debtors with additional time to participate in mediation and negotiate a chapter 11 plan, with the goal of reaching a fair, equitable, and final settlement, or to use the chapter 11 tools should the need arise.  The Debtors have initiated this process and made progress to date and are participating in good faith with all parties in interest.  But there is much more to be done.  The Debtors will use the additional time provided by the extension of the Exclusivity Periods to continue mediation, pursue their appeals currently pending before the Seventh Circuit and the Eleventh Circuit, and develop a confirmable chapter 11 plan.  This is in the best interests of the Debtors and all of the Debtors' stakeholders.

## Notice

21.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee, Attn: Harrison Strauss; (b) co-counsel to the CAE Committee; (c) the Respirator Committee; (d) counsel for 3M; (e) the United States

---

[13] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' counsel.

Attorney's Office for the Southern District of Indiana; (f) the Internal Revenue Service; (g) the office of the attorneys general for the states in which the Debtors operate or face Tort Claims;[14] (h) the United States Department of Veterans Affairs; (i) the United States Department of Defense; (j) the Securities and Exchange Commission; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

22. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

---

[14] As defined in the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File One List of the Top Law Firms Representing the Largest Numbers of Tort Plaintiffs Asserting Claims Against the Debtors, (II) Authorizing the Debtors to File One Consolidated Creditor Matrix, (III) Authorizing the Listing of Addresses of Counsel for Tort Claimants in the Creditor Matrix in Lieu of Claimants' Addresses, (IV) Authorizing the Debtors to Redact Personally Identifiable Information, (V) Approving Certain Notice Procedures for Tort Claimants, (VI) Approving the Form and Manner of Notice of the Commencement of these Chapter 11 Cases, and (VII) Granting Related Relief* (the "Creditor Matrix Motion"), filed on July 26, 2022 [Docket No. 17].

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the forms attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Indianapolis, Indiana
Dated: October 19, 2022

*/s/ Jeffrey A. Hokanson*

| | |
|---|---|
| **ICE MILLER LLP** | **KIRKLAND & ELLIS LLP** |
| Jeffrey A. Hokanson (Ind. Atty. No. 14579-49) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Connor Skelly (Ind. Atty. No. 35365-06) (admitted *pro hac vice*) | Edward O. Sassower, P.C. (admitted *pro hac vice*) |
| One American Square, Suite 2900 | Emily Geier (admitted *pro hac vice*) |
| Indianapolis, Indiana 46282-0200 | Derek I. Hunter (admitted *pro hac vice*) |
| Telephone: (317) 236-2100 | 601 Lexington Avenue |
| Facsimile: (317) 236-2219 | New York, New York 10022 |
| Email: Jeff.Hokanson@icemiller.com | Telephone: (212) 446-4800 |
| Connor.Skelly@icemiller.com | Facsimile: (212) 446-4900 |
| | Email: edward.sassower@kirkland.com |
| *Co-Counsel to the Debtors* | emily.geier@kirkland.com |
| *and Debtors in Possession* | derek.hunter@kirkland.com |

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Spencer A. Winters (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: chad.husnick@kirkland.com
spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*