**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| AEARO TECHNOLOGIES LLC, *et al.*,[1] | Case No. 22-02890-JJG-11 |
| Debtors. | Jointly Administered |

**OBJECTION OF THE OFFICIAL CAE COMMITTEE TO THE
DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS
INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN
POSSESSION EFFECTIVE AS OF JULY 26, 2022**

The Official Committee of Unsecured Creditors for Tort Claimants – Related to Use of

Combat Arms Version 2 Earplugs (the "CAE Committee")[2] hereby objects to the *Debtors'*

*Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis*

*LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in*

*Possession Effective as of July 26, 2022* (the "Application") [Docket No. 300] filed by the debtors

and debtors in possession (collectively, the "Debtors") seeking approval of the retention of

Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "K&E") in the above-

captioned chapter 11 cases (the "Cases").

**PRELIMINARY STATEMENT**

There is an irreconcilable conflict at the heart of these Cases—K&E conceived of and

implemented these Cases in its capacity as counsel to 3M Company ("3M"), the Debtors' ultimate

---

[1]   The Debtors in these Cases, along with the last four digits of each Debtor's federal tax identification number, are
set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief*,
entered by the Court for each consolidated Debtor [Docket Nos. 37–42].  The location of the Debtors' service
address for the purposes of these Cases is 7911 Zionsville Road, Indianapolis, Indiana 46268.

[2]   On August 30, 2022, the Office of the United States Trustee appointed the CAE Committee [Docket No. 393].

parent and equityholder.  It was K&E's work as counsel to 3M in a "litigation risk management" matter code-named "Project Crane" – which is not disclosed in the Application or supporting declaration – that led to the filing of these Cases.  K&E, in its capacity as counsel to 3M, developed the strategy of putting the Debtors into bankruptcy, seeking a preliminary injunction to stay CAEv2 litigation against 3M, and attempting to resolve 3M's CAEv2 liability via non-debtor releases and a permanent injunction in a plan funded by 3M.  To that end, K&E (then on behalf of 3M) drafted the single most important document in these Cases – the Funding Agreement.  In that document, 3M makes an uncapped commitment to fund creditor claims and the costs of these Cases, thereby further enmeshing K&E in a conflict of interest between its two concurrent clients.

The Debtors are asking this Court to approve their retention of K&E as bankruptcy counsel to the Debtors notwithstanding that K&E has served, and continues to serve, as counsel to 3M in other matters and as counsel to the 3M and the Debtors for years in the very same ongoing tort litigation that the Debtors filed these Cases to address.  As the Court is aware, K&E concurrently represents 3M and the Debtors in tort litigation and related Eleventh Circuit appeals arising from the use of Combat Arms Earplugs Version 2 ("CAEv2") by hundreds of thousands of active duty service members, veterans, military contractors, and civilians.  That concurrent representation continues today, even after the filing of these Cases.

That dual representation poses a conflict of interest that gives K&E an interest adverse to the Debtors and their estates.  As of the filing of this Objection, a summary judgment motion is presently under consideration in the MDL (as hereinafter defined) to determine 3M's liability for CAEv2 related claims.  For its part, 3M has opposed the plaintiffs' argument that 3M is fully and independently liable for CAEv2-related claims, whereas the Debtors (who, as co-defendants,

plainly stand to benefit from such a finding), have stood silently by. That is the through-the-looking-glass reality presented by the proposed retention of K&E in these Cases.

In addition to being a litigation co-defendant, contract counterparty, and proposed plan funder and non-debtor release beneficiary, 3M is also a net debtor to and a customer of the Debtors. 3M owes the Debtors a receivable in excess of $900 million, and yet K&E, as the Debtors' restructuring counsel, has apparently not advised the Debtors to seek to collect that receivable for the benefit of the estates. The conflicts between the Debtors and 3M go on and on.

The CAE Committee deliberately considered whether to object to the Application, and the decision to file this Objection was not made lightly.[3] The CAE Committee takes the Debtors at their word that they have been pursuing and will continue to pursue a negotiated resolution of these Cases. Nevertheless, there is no doubt that in the circumstances presented here, K&E repeatedly finds itself, and will continue to find itself, trapped in irreconcilable conflicts between the interests of its two concurrent clients. In light of the underlying fundamental conflicts between the Debtors and 3M, the CAE Committee seriously doubts that a mere change in Debtors' counsel will resolve the root of the problem.[4] The fact is that these Cases were designed for 3M's benefit and are being run for 3M's benefit, regardless of which law firm stands before the Court "for the Debtors" in these Cases. Ultimately, the conflicts inherent in K&E's retention are so egregious that the CAE

---

[3]    The Debtors agreed to continue the hearing on the Application from October 12, 2022 to November 9, 2022 while the CAE Committee considered whether to object. *Joint Motion to Continue Hearing on Certain Debtors' Employment Applications* [Docket No. 684].

[4]    Additionally, the CAE Committee is cognizant that disqualification is rarely ordered in this district. The facts of these Cases are, however, distinguishable from other cases where disqualification has been denied. Other cases did not involve the nature and extent of the concurrent-client conflicts here, and have not elicited objections (to conflicts, as opposed to mere disclosure issues) from the U.S. Trustee. *Cf. In re Caesars Entertainment Operating Co., Inc.*, 561 B.R. 420 (Bankr. N.D. Ill. 2015) (denying disqualification, on much more tenuous allegations of conflict, where neither the U.S. Trustee nor the committee of unsecured creditors objected to K&E's employment application).

Committee felt compelled to join the Office of the United States Trustee in objecting to the Application.

K&E cannot be permitted to serve two masters—one of whom (the Debtors) is incentivized to settle claims, at 3M's expense, as quickly as possible giving the claimants the full tort system value of their claims and the other of whom (3M) is incentivized to hold out as long as necessary to pay claimants as little as possible. The conflicts between the Debtors and 3M have arisen and will continue to arise, including with respect to their positions regarding their respective CAEv2 liability, their different incentives to settle, their structural conflicts in connection with a plan, and their divergent interests as counterparties to the Funding Agreement and the other intercompany claims. These conflicts, both actual and potential, have been inadequately disclosed to this Court and parties in interest, and result in K&E having an adverse interest to the Debtors and not being disinterested as required by section 327. Nor are these issues curable by the fig leaf of independent directors or conflicts counsel. Accordingly, the CAE Committee respectfully submits that the employment of K&E must be denied.

## BACKGROUND AND RELEVANT FACTS

A.    **K&E's Concurrent Representation of the Debtors and 3M**

1.    The Debtors are corporate subsidiaries of 3M, an exceedingly profitable publicly-traded company and a longtime and significant client of K&E. Approximately 1.7 percent of K&E's revenue comes from 3M. *See* Application, Ex. B ("Husnick Declaration") ¶ 35. The Debtors and 3M are also co-defendants in the largest coordinated tort litigation in the country, with over 230,000 CAEv2 claims asserted against the Debtors and 3M in federal and state courts. Since January 2019, K&E has represented both 3M and the Debtors in that litigation. *See* Husnick Decl. ¶ 34; *Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and*

4

*Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 26, 2022* [Docket No. 685] ("<u>Supplemental Declaration</u>") ¶ 7. The Debtors are not, however, a party to K&E's retention agreement for the CAEv2 litigation matter, nor are they mentioned anywhere therein. *See* AEARO_CH11_00003687–90, attached hereto as **<u>Exhibit A</u>**.

2.      On April 3, 2019, the CAEv2 litigation was consolidated into multidistrict litigation (the "<u>MDL</u>"). *See In re Combat Arms Prods. Liab. Litig.*, Case No. 19-2885, ECF No. 1 (N.D. Fla. April 3, 2019). On April 10, 2019, K&E appeared for 3M in the MDL. *See* MDL ECF No. 6 (Notice of Appearance). During the course of the MDL, K&E has also represented (and may currently still represent), at 3M's cost, at least 16 witnesses who have been subpoenaed to give testimony and/or to provide documents in the MDL. *See* AEARO_CH11_00003691–3728, attached hereto as **<u>Exhibit B</u>**.

3.      In addition to currently representing the Debtors and 3M in the MDL, K&E has previously represented and currently represents 3M in several other matters. *See* AEARO_CH11_00003744, attached hereto as **<u>Exhibit C</u>**. Other current representations include representing 3M in another multi-district-litigation and with respect to customer communications. *Id.* Another matter for which K&E represented 3M was "Project Crane" — the codename given for exploring strategic alternatives to the MDL, including a chapter 11 bankruptcy for the Debtors. *See* PI Opinion at 7; Aug. 15, 2022 Hr'g Tr. 90:16–19 & 152:16–25 (Castellano testifying he was retained by 3M to work on contingency planning, code named "Project Crane"); Ex. GF[5] (May 9–10, 2022 3M Board minutes at 6–7; June 7, 2022 3M Board minutes at 2–3; July 22, 2022 3M Board minutes at 2–3; July 23, 2022 3M Board minutes at 7–9) (describing K&E presentations to

---

[5]      Unless otherwise noted, exhibit references are to the exhibits admitted into evidence in connection with the hearing on the Debtors' PI Motion.

3M's Board regarding Project Crane as a "litigation risk management" tactic and "liability resolution strateg[y]" including a funding agreement and chapter 11 filings for the Aearo entities) (July 23, 2022 3M Board minutes 15) (3M Board had determined that the MDL had "not provided a pathway to" resolving the CAEv2 litigation and had "determined that [3M] should instead seek to resolve the claims [including those asserted against 3M] through a chapter 11 process of the Aearo Entities."). K&E now refers to the Project Crane matter as "closed." *See* AEARO_CH11_00003744. Presumably, the desired implication is that K&E's involvement in the Debtors' contingency planning **on behalf of 3M** is "closed"—as though K&E's planning of these Cases on behalf of 3M is a wholly separate matter from K&E's execution of these Cases on behalf of the Debtors. Nevertheless, K&E continues to send all draft documents to the CAE Committee's counsel under the filename "Crane."[6]

4.      K&E has woefully under-disclosed the firm's connection to 3M. Nowhere in the body of the Application does K&E even reference its past or current representations of 3M. In his original declaration, Mr. Husnick states vaguely that "Kirkland currently represents, and in the past has represented, non-Debtor 3M and the Non-Debtor Affiliates **on a variety of matters**," and that "Kirkland has jointly represented 3M and the Debtors as co-defendants in the Combat Arms litigation, including in the MDL." Husnick Decl. ¶¶ 33–34 (emphasis added). He provides limited explanation or disclosure as to the nature of these various representations or the extent to which they are ongoing. Mr. Husnick's Supplemental Declaration similarly fails to tell the whole story. Most notably, neither declaration makes any disclosure whatsoever regarding K&E's representation of 3M in connection with Project Crane, a representation that K&E suggests closed

---

[6]    For example, counsel to CAE Committee received the following correspondence, among others from K&E during these Cases thus far: July 28, 2022 email from K&E attaching "Crane – Agreed Entry (TRO);" Sept. 2, 2022 email from K&E attaching "Crane – Motion for Mediation (MDL Mediation);" Oct. 14, 2022 email from K&E with subject "Crane – Joint Mtn to Continue…."

just prior to the Petition Date and which involved conceiving of and planning for these Cases, including drafting the Funding Agreement (as defined below) and developing the "litigation risk management" tactic of filing these Cases a means to resolve 3M's CAEv2-related liabilities. Moreover, the fact that K&E intends to continue representing 3M in the MDL (concurrent with its representation of the Debtors in these Cases and the MDL) is only obliquely disclosed, at best, by Mr. Husnick's opaque statement that "Kirkland will continue to bill 3M for services rendered in connection with the Combat Arms litigation unrelated to these chapter 11 cases in the ordinary course of business, consistent with its prepetition practices." *Id.* at ¶ 34.

5.    On June 23, 2022, the Debtors formally retained K&E in connection with a potential restructuring, which culminated in these Cases.[7]  *See* Application, Ex. A-1.  That June 23, 2022 retention agreement (the "Restructuring Retention Agreement") defines the Debtors (and only those entities) as the "Client" and states that K&E "does not and will not represent any direct or indirect shareholder … of Client…."    Under the heading "Conflicts of Interest," the Restructuring Retention Agreement discloses, without elaboration, that K&E "currently represents or has represented 3M Company or their affiliates … and will continue to do so in various matters." The Agreement also includes a generic current and advanced conflict waiver by the Debtors with respect to K&E's "representation of another client (a) in other current or future matters substantially unrelated to the Engagement or (b) other than during a Restructuring Case (as defined [later therein]), in other matters related to Client (such representation an 'Allowed Adverse Representation')."  Thus, this provision does not waive conflicts in a "Restructuring Case" with respect to "matters related to Client."  As these Cases and the MDL are clearly both matters related

---

[7]    Even members of the Debtors' management are confused about who K&E represents and when. *See Declaration of John R. Castellano in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 11] ("First Day Decl.") ¶ 13 (stating, incorrectly, that the Debtors retained K&E in April 2022).

to the Debtors, the Debtors have not waived the conflict between the Debtors and K&E's other current client, 3M, in the Restructuring Retention Agreement.

6.      In connection with K&E's engagement, 3M (not the Debtors) paid $7,726,556.88 as an advance payment retainer.  *See* Husnick Decl. ¶ 14.  This is consistent with 3M's practice of funding all the legal costs of defending the MDL on behalf of itself and the Debtors.  *See* Aug. 15, 2022 Hr'g Tr. 118:12–20 & 155:13–20 (Castellano testifying that 3M pays defense costs).

**B.      The Funding Agreement**

7.      The day after the Debtors retained K&E, on June 24, 2022, K&E circulated the first draft of what would ultimately become the funding agreement entered into on July 25, 2022 between 3M and the Debtors (the "Funding Agreement").  *See* PI Opinion at 7–9; Aug. 17, 2022 Hr'g Tr. 35:9–12 (Stein testifying that K&E prepared the first draft).  The Funding Agreement provides, among other things, that 3M will pay in full all of the Debtors' CAEv2 liabilities in exchange for the Debtors "indemnifying" 3M for all CAEv2 claims against 3M.  PI Opinion at 7–8.  As counterparties, the interests of the Debtors and 3M with respect to the Funding Agreement that K&E drafted are quite plainly adverse.  3M is liable for payment in full of all creditors' claims, including all CAEv2 liabilities, costs, and expenses, whether the Debtors are in bankruptcy or not, and with no repayment obligation from the Debtors.  *Id.* at 9–10.

8.      The Debtors' independent directors determined early on that a conflict existed between the Debtors and 3M with respect to the Funding Agreement.  *See* Aug. 17, 2022 Hr'g Tr. 36:25–37:3 (Stein testifying that by June 24th, the independent directors had decided a conflict existed with respect to the Funding Agreement).  Yet, despite the fact that the independent directors had identified the conflict and already retained McDonald Hopkins as early as June 21, 2022, K&E (not McDonald Hopkins) prepared the first draft of the Funding Agreement at the direction of 3M (not the Debtors' independent directors).  *See id.* at 36:8–24 (Mr. Stein acknowledging that the

8

Debtors did not direct K&E to draft the Funding Agreement); *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of McDonald Hopkins LLC as Special Counsel Effective as of the Petition Date* [Docket No. 301], Ex. A-1. (McDonald Hopkins Engagement Letter dated June 21, 2022).  Ironically, the first draft of the funding agreement contemplates conflicts counsel, yet K&E did not list McDonald Hopkins even though McDonald Hopkins had already been retained by the Debtors.

**C.      The Filing of the Debtors' Cases**

9.      On July 26, 2022 (the "Petition Date"), one day after the Funding Agreement was executed, the Debtors filed these Cases.  That same day, the Debtors also filed a motion for injunctive relief to halt CAEv2 litigation against 3M (the "PI Motion").  The stated purpose of both these Cases and the PI Motion was to "permanently protect the Debtors and 3M from further [CAEv2] claims," First Day Decl. ¶ 51, and to find an alternative liability resolution strategy to the MDL.  *See* PI Opinion at 7; *also* Aug. 15, 2022 Hr'g Tr. 131:18–22 (Castellano testifying that the need for these Cases was to resolve the contingent tort liabilities).  On August 26, 2022, following a three-day hearing, the Court denied the PI Motion.  *Order Denying Plaintiffs' Motion for Preliminary Injunction* [Adv. Pro. No. 22-50059, Adv. Docket No. 143] ("PI Opinion").

10.      Even after the filing of these Cases, K&E continues to represent 3M and the Debtors in the MDL.  *See* Husnick Decl. ¶ 34; Supplemental Decl. ¶ 7.  K&E, together with Clement & Murphy, P.A. (whom the Debtors seek to retain with minimal disclosure or oversight as an ordinary course professional, *see* Docket No. 721), also represent 3M and the Debtors in the Eleventh Circuit appeals from the MDL. *See* Supplemental Decl. ¶ 9.

11.      The diverging interests between 3M and the Debtors with respect to the MDL is abundantly clear.  On August 14, 2022, the MDL court stated that "at no point since the beginning of the MDL—over the years of intensive discovery, motions practice, and bellwether trials—did

3M ever hint, much less represent, that any entity other than itself was responsible for the CAEv2 claims in this litigation. Quite the contrary, 3M Company comported itself as the sole entity (besides the federal government or individual plaintiffs, of course) directly and independently responsible for the plaintiffs' claims." *See* Ex. GD (MDL ECF No. 3386).  In other words, the Debtors "[were] a party to [the MDL] in name only." *Id.*

12.    Most recently, 3M opposed a finding of 3M's full and independent liability for CAEv2 liabilities.  *See*, *e.g.*, *3M Company's Memorandum in Opposition to Wave 1 Remand Plaintiffs' Motion for Summary Judgment on 3M Company's Full and Independent Liability for CAEv2-Related Claims*, MDL ECF No. 3451 (Oct. 18, 2022).  Yet, despite such a finding being in the best interests of the Debtors, the Debtors have not supported the CAEv2 plaintiffs' efforts to establish 3M's full and independent liability.  *See*, *e.g.*, Aug. 17, 2022 Hr'g Tr. 28:19–23 (Stein testifying that it would be beneficial for the Debtors if 3M is directly and independently liable for CAEv2 claims).  The Debtors, at the advice of K&E, sought to lift the stay to address "cross-cutting" issues on appeal, *Debtors Motion to Lift the Automatic Stay to Permit Certain Appeals to Proceed* [Docket No. 413], but failed to act to join the Wave 1 Remand Plaintiff's Motion for Summary Judgment.

**D.    The Independent Directors and Conflicts Counsel**

13.    K&E has attempted to cure its conflict of interest by having the Debtors' independent directors retain McDonald Hopkins as their independent counsel.  *See* Supplemental Decl. ¶ 9 ("The Debtors' conflicts counsel, McDonald Hopkins LLC, and 3M's counsel in these chapter 11 cases, White & Case LLP, will represent each of the parties, respectively, in any matter in which their interests diverge.").  McDonald Hopkins, however, has played a small role in these Cases despite the abundance of conflicts.  McDonald Hopkins did not draft the initial Funding Agreement.  They also had little involvement in the hearing on the PI Motion.  Indeed, it was K&E,

not McDonald Hopkins, which defended Mr. Stein at the hearing on the PI Motion.  *See* Aug. 16, 2022 Hr'g Tr. & Aug. 17, 2022 Hr'g Tr. (Mr. McKane of K&E examining and defending McDonald Hopkins' client, independent director Mr. Stein).  Nor has McDonald Hopkins participated on behalf of the independent directors in the mediation (even though the Debtors assert, in their motion to extend exclusivity, that they are actively engaged).

14.  McDonald Hopkins acts at the direction of the Debtors' independent directors.  Yet, the independent directors are largely beholden to 3M.  In fact, 3M appointed the independent directors and has the power to remove the independent directors.  *See* Aug. 16, 2022 Hr'g Tr. 192:4–11, 193:13–19 (Dai testifying) & Aug. 17, 2022 Hr'g Tr. 41:24–42:2 (Stein testifying). Independent director Mr. Stein was recruited by K&E when K&E was representing 3M.  *See* Aug. 17, 2022 Hr'g Tr. 40:8–11 & 48:5–18 (Stein testifying).  In fact, Mr. Stein initially did not even know if his new client would be 3M or the Debtors.  *See* Aug. 17, 2022 Hr'g Tr. 40:12–17 (Stein testifying).  Mr. Stein has also worked for K&E many times before.  Aug. 17, 2022 Hr'g Tr. 38:19–40:4 & 41:1–7 (Stein testifying).

15.  Their lack of independence is further highlighted by the fact that the independent directors refused to take advantage of 3M's full funding commitment in the Funding Agreement before the Petition Date.  Notwithstanding that they had the power to fully and finally resolve the CAEv2 liabilities for the Debtors with a blank check from 3M by virtue of the pre-bankruptcy flexibility under the Funding Agreement, the independent directors never engaged with CAEv2 claimants' counsel.  *See* Aug. 17 58:8–59:23 & 60:11–61:18.  Since the Petition Date, the independent directors have formally met for a total of 15 minutes over two meetings. *See* DDAearo0066–69 (August 29, 2022 & September 9, 2022 Board minutes), attached hereto as **Exhibit D**.

16.   K&E seeks to distance itself in these Cases from its current client 3M by pointing out that White & Case represents 3M in these Cases.  Nevertheless, it was K&E that advised 3M in the days leading up to the bankruptcy.  White & Case was retained effective June 3, 2022, s*ee* 3MC_00000324–29, attached hereto as **Exhibit C**, but was only first introduced to the 3M Board on July 23, 2022.  *See* Ex. GF (July 23, 2022 3M Board minutes at 8).

## E.   Other Conflicts

17.   The Debtors and 3M are not only counterparties to the Funding Agreement, they are on opposite sides of other significant intercompany receivables with the effect that 3M is a net debtor of the Debtors.  In particular, 3M owes the Debtors a $965 million (net $648 million) receivable, yet the Debtors, who have been advised by K&E, have no plans to demand payment of that receivable from K&E's other client 3M.  *See* Aug. 15, 2022 Hr'g Tr. 179:12–18 (Castellano testifying).  3M is also a customer of the Debtors, purchasing approximately $25 million of product per year, accounting for 20% of the Debtors' annual revenue.  *See* Aug. 15, 2022 61:11–14 (Castellano testifying).  In addition, 3M and the Debtors are party to a shared services agreement, pursuant to which 3M provides the Debtors with back-office functions.  *See* Aug. 15, 2022 Hr'g Tr. 68:5–10 (Castellano testifying).  3M is also the holder of the largest insurance policy available to the Debtors, which presumably covers CAEv2 claims.  *See id.* at 220:10–221:16 (Sullivan testifying).

## ARGUMENT

## A.   Legal Standard

18.   A debtor in possession may, with bankruptcy court approval, retain counsel to represent it and to assist it in fulfilling its duties under the Bankruptcy Code.  *See* 11 U.S.C. § 327(a).  The attorneys selected (1) may not be persons who "hold or represent an interest adverse to the estate" and (2) must be "disinterested persons."  *Id.*  "Together, the statutory requirements

12

of disinterestedness and no adverse interest to the estate 'serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *In re Crivello*, 134 F.3d 831, 836 (7th Cir. 1998) (quoting *Robe v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)).

19.    An "adverse interest" includes "any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant" or a "predisposition under circumstances that would render such a bias against the estate." *In re Crivello*, 134 F.3d at 835 (citation omitted).  A "disinterested person" is defined under Bankruptcy Code section 101(14) as a person who, *inter alia*, "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C).  The last clause of the definition "is sufficiently broad to include any professional with an 'interest or relationship that would even faintly color the independence and impartial attitude required by the Code.'" *In re Crivello*, 134 F.3d at 835 (quoting *In re BH&P Inc.*, 949 F.2d 1300, 1308 (3d Cir. 1991)).

20.    Section 327(a) "imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest." *In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir. 2002) (citation omitted).  "[A] conflict is actual, and hence per se disqualifying, if it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest."[8]  *Id.*  Courts also may disqualify an attorney under 327(a) if there exists a

---

[8]    *See also, e.g.*, *In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) (holding that if "it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate"); *In re Interwest Bus. Equip.*, 23 F.3d 311, 316 (10th Cir. 1994) ("The jaundiced eye and scowling mien of counsel for the debtor should fall upon all who have done business with the debtor recently enough to be potential targets for recovery
*(footnote continued)*

potential conflict of interest.  *Id.*; *see also In re Caesars Entertainment Operating Co., Inc.*, 561 B.R. 420, 431 (Bankr. N.D. Ill. 2015).[9]  Bankruptcy jurisprudence clearly allocates all burdens of proof and persuasion on section 327(a) issues to the debtor and its proposed counsel.  *In re Caesars*, 561 B.R. at 431 ("The burden of proving that section 327(a) has been satisfied rests with the applicant seeking to retain a professional, as does the initial burden of going forward at any hearing.").

21.    The "representation of more than one person or entity in a matter which ends up in bankruptcy court is fraught with ethical quagmires for even the most experienced professional." *In re Grabill Corp.*, 113 B.R. 966, 469 (Bankr. N.D. Ill. 1990), *aff'd* 135 B.R. 835 (N.D. Ill. 1991), *aff'd* 983 F.2d 773 (7th Cir. 1993).  Indeed, "[m]any courts have found a conflict of interest when an attorney represents both the corporate debtor and the debtor's shareholders."  *In re Euromotorsport Racing, Inc.*, 2000 WL 33963797, at *2 (Bankr. S.D. Ind. June 13, 2000); *see also In re Rusty Jones, Inc.*, 134 B.R. 321, 343 (Bankr. N.D. Ill. 1991) (citing cases).[10]  "Counsel for a

---

of assets of the estate. The representation of any such party disqualifies counsel from representing a debtor."); *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1256 (5th Cir. 1986) ("The purpose of the rule is to prevent even the emergence of a conflict irrespective of the integrity of the person under consideration."). Courts have "been accorded considerable latitude in using their judgment and discretion in determining whether an actual conflict exists in light of the particular facts of each case." *In re B H & P Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991) (internal quotation marks and citation omitted).

[9]    It is worth noting that in *Caesars*, a committee of noteholders objected to K&E's employment because K&E represented several portfolio companies of Apollo and TPG and both Apollo and TPG controlled four out of seven seats on the debtors' board. *In re Caesars*, 561 B.R. 420, 423 & 429.  In denying the noteholders' objection, the court reasoned the portfolio companies K&E represented were wholly unrelated to the debtors and that "[t]he decision to retain Kirkland had been made by the two independent members of the CEOC board, not by anyone in any way connected with Apollo, TPG, or CEC." *Id.* at 432.  Here, the not only does K&E concurrently represent the 100% owner of the Debtors in matters that are entirely related to the matters at issue in these Cases (indeed they are at the heart of these Cases), but the decision to retain K&E was made by 3M itself.  *Caesars* is thus entirely inapposite to the circumstances here.

[10]    *See, e.g.*, *In re The Harris Agency, LLC*, 462 B.R. 514, 519 (E.D. Pa. 2011) (disqualifying debtor's counsel that represented debtor's affiliate, which was also debtor's creditor and co-obligor); *In re Gordon Properties, LLC*, 504 B.R. 807, 811-812 (Bankr. E.D. Va. 2013) (concluding "adverse interest" test was violated by counsel's representation of debtor's owners in other litigation, where owners were creditors and potential plan funders of the debtor); *In re Star Broadcasting, Inc.*, 81 B.R. 835, 844 (Bankr. D.N.J. 1988) (finding that actual conflict of interest existed in firm's representation of debtor and its 100% shareholder where one estate was indebted to the

*(footnote continued)*

Chapter 11 debtor owes a fiduciary duty to the corporation … as an entity, and represents its interests, not those of its principals." *In re Grabill*, 113 B.R. at 470; *see also In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995) ("A lawyer hired by a trustee in bankruptcy to do legal work for the estate, like the trustee himself, is a fiduciary of the estate.").[11]   In *Grabill*, the court found counsel's concurrent representation of a debtor and its equityholder to be a disqualifying conflict and explained that the equityholder's subsequent retention of separate counsel "at the time the petitions were filed, does not obviate the conflict."  113 B.R. at 470.

22.   Conflicts counsel cannot alleviate bankruptcy counsel's conflict "where the adverse interests… are central to the reorganization efforts… or to other resolutions of the chapter 11 case or where the adverse interests are so extensive that each [party] should have its own independent general bankruptcy counsel." *In re WM Distrib., Inc.*, 571 B.R. 866, 873 (Bankr. D.N.M. 2017); *see also In re Project Orange Assocs., LLC,* 431 B.R. 363, 375 (Bankr. S.D.N.Y. 2010) (conflicts counsel is not curative where "the proposed general bankruptcy counsel has a conflict of interest with a creditor that is central to the debtor's reorganization").  In these circumstances, such a conflict "poses too great a risk that [bankruptcy counsel] would [] be unable to give each debtor

---

other); *In re Kendavis Indus.*, 91 B.R. 742, 752 (Bankr. N.D. Tex. 1988) (concluding where debtor's law firm acted in the interests of the debtor's shareholders, rather than the debtor, the law firm represented an interest materially adverse to the estate and was not disinterested, thus section 327(a) retention was inappropriate); *In re Watson Seafood & Poultry Co.*, 40 B.R. 436, 442 (Bankr. E.D.N.C. 1984) (finding a conflict of interest existed when counsel represented debtor as well as a shareholder and purchaser of property of the estate).  Courts have also denied employment based on an attorney's connection and representation of an affiliate of the debtor, who may have interests that diverge from that of the debtor and other parties in interest.  *In re Rental Systems, L.L.C.*, 511 B.R. 882, 900 (Bankr. N.D. Ill. 2014) (finding that "[g]iven the history of [counsel's] relationship with these affiliates … compliance with Section 327 and Rule 2014 and the underlying policies for these provisions requires the Debtor to seek new, disinterested counsel").

11   *See also, e.g.*, 3 COLLIER ON BANKRUPTCY ¶ 327.04[2][a][ii] (16th ed. rev.) ("The Code requires the same degree of disinterestedness on the part of an attorney … that is required of the trustee….  It would be anomalous to require a trustee to be aloof from all connection with the debtor or its management, yet permit the trustee's attorney … to have a close relationship with the debtor, its management or associates.")

its undivided loyalty and provide to each debtor untainted advice and assistance in furtherance of their fiduciary responsibilities." *In re WM Distrib.*, 571 B.R. at 874.

**B.    Application**

23.    K&E's attempt to concurrently represent 3M in the MDL while also representing the Debtors in these Cases (and in the MDL) is untenable.  K&E's "past" representation of 3M in Project Crane *and* K&E's past and current representation of 3M in other unrelated matters compounds the problem.  As a result of its conflicting representation of the Debtors and 3M, *i.e.*, the Debtors' ultimate equityholder, co-defendant, contract counterparty, plan funder, and customer, K&E represents interests adverse to the estate and is not disinterested.  K&E thus should be disqualified from representing the Debtors under section 327(a).

24.    In *Crivello*, the Seventh Circuit explained that a professional holds an "adverse interest" when the professional has any economic interest that may lessen the value of the estate, create either an actual or potential conflict of interest, or render a bias against the estate.  134 F.3d at 835.  The proposed retention of K&E falls squarely within each of these criteria.  With respect to the parties' respective positions on liability, K&E's loyalty is divided between 3M's interest in minimizing its allocated share of CAEv2 liability and the Debtors' interest, as recognized by Mr. Stein, in foisting that liability on another defendant.  This conflict has already arisen in the MDL, in the context of the Wave 1 Remand Plaintiffs' Motion for Summary Judgment, and, if 3M has its way, is poised to arise in these Cases in connection with estimation proceedings (which the Debtors have repeatedly threatened to invoke).  This conflict is also likely to influence how K&E communicates with Bates White and directs that firm's valuation work, which will be a central issue in these Cases for both the Debtors and 3M.

25.    In addition to being the Debtors' co-defendant with different interests in particular litigation positions, 3M owes the Debtors potentially billions of dollars under the Funding

Agreement (in addition to the intercompany receivable), and the parties' divergent interests under that agreement also pose irreconcilable conflicts for K&E and threaten to lessen the value of the Debtors' estates.  Because the Debtors have an uncapped funding commitment from 3M and an otherwise economically profitable going concern that is wholly unrelated to the CAEv2 business, the Debtors should be focused exclusively on one objective: an expeditious exit from bankruptcy. That objective is most readily achieved by working with creditors to propose and confirm a plan with broad creditor support that pays claimants in full at fair claim values (including, where appropriate, values determined in the tort system).  Indeed, the most efficient approach to resolving these Cases is for the Debtors to simply ask creditors what amount they should request from 3M for the payment of claims under the Funding Agreement.

26.     3M's incentives on these matters differ, which means that K&E must advise its two clients as to their respective duties that are in irreconcilable conflict.  As the ultimate payor of the CAEv2 claims under the Funding Agreement, 3M is incentivized to support strategies that lead to artificially low values on CAEv2 claims and to allow the Debtors to languish indefinitely in bankruptcy (which would tend to pressure claimants to accept a lower offer), as the rest of the 3M conglomerate sits comfortably outside of bankruptcy.  In this conflict, K&E is at odds with itself between its two clients.  Because 3M's payment obligations under the Funding Agreement arise only after a valid funding request from the Debtors, K&E must either advise the Debtors to make a funding request (increasing the amount 3M pays out) or forgo a funding request (forcing the Debtors to draw down their own assets).[12]  The Funding Agreement thus creates a conflict between the Debtors, who are under a fiduciary obligation to maximize the value of their rights under the

---

[12]   The Funding Agreement does not strictly require the Debtors to draw down their own assets before making a funding request, as fundings are permitted if the Debtors' assets are "or are ***projected to be*** … insufficient to pay or satisfy such Liabilities…."  Funding Agreement, p. 7 (definition of "Permitted Funding Use").

Funding Agreement (which is an asset of the estate), and 3M, who, consistent with its own duties to its shareholders, is incentivized to minimize the amount it pays out, including by forcing the Debtors to draw down their own assets before approving any funding request.

27.     The parties' conflict as counterparties to the Funding Agreement pursuant to which 3M is the payor on behalf of the Debtors is emblematic of structural conflicts that permeate all aspects of these Cases.  For many of the same reasons discussed above (including the Debtors' interest in promptly exiting bankruptcy and 3M's ability to withstand protracted negotiations as it continues to operate its other businesses outside of bankruptcy), the Debtors and 3M have divergent incentives with respect to whether, when, and how to settle the CAEv2-related claims and with respect to the architecture and parameters of a proposed plan of reorganization.  3M has committed to provide funding for the Debtors' plan of reorganization, under which 3M expects to receive a non-debtor release and permanent protection from CAEv2 claims.  The ultimate resolution of CAEv2 liability is indisputably related to K&E's concurrent representation of 3M in the MDL, as well as K&E's "past" representation of 3M in the Project Crane matter.  K&E will be faced with simultaneous conflicting duties, on the one hand, in its role as the Debtors' bankruptcy counsel, in which it must seek to maximize 3M's contribution to the Debtors' proposed plan and, on the other hand, in its role as 3M's litigation counsel, in which it must seek to minimize 3M's exposure to CAEv2 claims.

28.     If these conflicts were not enough (and they are), 3M and the Debtors also find themselves on opposite sides of a significant uncollected intercompany receivable in favor of the Debtors, a shared services agreement pursuant to which 3M effectively controls the Debtors' legal, accounting, and insurance departments, and a sales relationship in which 3M is a customer of the Debtors.  These myriad business and contractual interrelationships between the Debtors and 3M,

and their above-described divergent interests, make it impossible for K&E to be disinterested under the test established by the Seventh Circuit. It is untenable to suggest that K&E's independence and impartial attitude in representing the Debtors would not be "even faintly colored" by its connections, both current and past, to its other client, 3M.

29.     Moreover, K&E's adverse interests and lack of disinterestedness cannot be cured by the interjection of independent directors or conflicts counsel in these Cases. As a factual matter, conflicts counsel takes direction from the independent directors, who themselves serve at the pleasure of 3M. So neither is truly free of the fundamental conflict in these Cases. As a legal matter, the retention of conflicts counsel is not curative of K&E's conflict here because the adverse interests of 3M and the Debtors in these Cases are central to the reorganization efforts or other resolutions of these Cases. Further, the interrelatedness of the Debtors and 3M is so extensive as to prevent K&E from providing undivided loyalty to the Debtors.[13]

30.     The central issue in these Cases is beyond dispute: 3M's contribution to a plan. This issue permeates all aspects of these Cases—from implementation of the Funding Agreement to any negotiations or settlement discussions that might take place between the constituencies. K&E's work for 3M pertains to the same body of tort litigation that precipitated the filing of these Cases and necessarily bears on the general case dynamics and central issues in these Cases, including, as between 3M and the Debtors, any apportionment of liability. K&E simply cannot overcome these conflicts. Given that these Cases were filed for the express purpose of permanently

---

[13]   The *Project Orange* case is analogous. There, the debtor entered into a prepetition maintenance agreement. 431 B.R. at 366. Following a dispute under that contract, the counterparty thereto obtained an arbitration award against the debtor. *Id.* at 367. Approximately one month later, the debtor filed for chapter 11 protection. *Id.* at 366. Notwithstanding the debtor's representations that "all major litigation with [creditor] has been substantially resolved," as well as the fact that the debtor had retained conflicts counsel, the court denied the debtor's application to retain bankruptcy counsel. *See id.* at 367. In so holding, the court noted that, "[e]ven if [conflicts counsel] performed *all* work related to [creditor] in this case, the fig leaf of conflicts counsel does not convince the Court that retention of [the conflicted counsel] as general bankruptcy counsel is appropriate in these circumstances. As previously indicated, [creditor] is central to this case." *Id.* at 375.

releasing 3M of its CAEv2 liability, 3M's interests will be impacted by virtually every issue in these Cases, and it is simply not workable to attempt to confine K&E's services to matters not involving 3M.

[The remainder of this page is intentionally blank.]

**CONCLUSION**

WHEREFORE, the CAE Committee respectfully requests that this Court sustain this Objection, deny approval of the Application, and provide such other relief that the Court deems necessary and appropriate.

Dated: November 2, 2022
      Indianapolis, Indiana

Respectfully submitted,

**RUBIN & LEVIN, P.C.**

*/s/ Meredith R. Theisen*
Meredith R. Theisen
Deborah J. Caruso
Meredith R. Theisen
135 N. Pennsylvania St., Suite 1400
Indianapolis, IN 46204
Tel:   (317) 634-0300
Fax:  (317) 263-9411
Email: dcaruso@rubin-levin.net
      mtheisen@rubin-levin.net

*Indiana Counsel for the CAE Committee*

**KTBS LAW LLP**
Michael L. Tuchin (*pro hac vice*)
Robert J. Pfister
Sasha M. Gurvitz (*pro hac vice*)
Nir Maoz (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, CA 90067
Tel:   (310) 407-4000
Fax:  (310) 407-9090

**OTTERBOURG P.C.**
Melanie L. Cyganowski (*pro hac vice*)
Adam C. Silverstein (*pro hac vice*)
Jennifer S. Feeney (*pro hac vice*)
Pauline McTernan (*pro hac vice* to be filed)
230 Park Avenue
New York, NY 10169
Tel:   (212) 661-9100
Fax:  (212) 682-6104

*Co-Lead Counsel for the CAE Committee*

**BROWN RUDNICK LLP**
David J. Molton (*pro hac vice*)
Jeffrey L. Jonas (*pro hac vice*)
Seven Times Square
New York, NY 10036
Tel:   (212) 209-4800
Fax:  (212) 209-4801

*Special Litigation Counsel for the CAE Committee*

**CAPLIN & DRYSDALE, CHARTERED**
Kevin C. Maclay (*pro hac vice*)
Todd E. Phillips (*pro hac vice*)
Kevin M. Davis (*pro hac vice*)
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Tel:   (202) 862-5000
Fax:  (202) 429-3301

*Special Mass Tort and Negotiation Counsel for the CAE Committee*