**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AEARO TECHNOLOGIES LLC, *et al.*,[1] | ) | Case No. 22-02890-JJG-11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' REPLY IN SUPPORT OF THEIR APPLICATION TO RETAIN KIRKLAND**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this reply in support of the *Debtors' Application for Entry of an Order Authorizing the Retention*

*and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for*

*the Debtors and Debtors in Possession Effective as of July 26, 2022* [Docket No. 300]

(the "Application")[2] and in response to the objections filed by the United States Trustee for Region

10 (the "U.S. Trustee") [Docket No. 695] and the Official Committee of Unsecured Creditors for

Tort Claimants – Related to Use of Combat Arms Version 2 Earplugs (the "CAE Committee" and

with the U.S. Trustee, the "Objectors") [Docket No. 730] and the limited objection of the Official

Committee of Unsecured Claimants – Related to Use of Respirators (the "Respirator Committee")

[Docket No. 734] (the "Objections").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief*, entered by the Court for each consolidated Debtor [Docket Nos. 37–42].  The location of the Debtors' service address for the purposes of these chapter 11 cases is:   7911 Zionsville Road, Indianapolis, Indiana 46268.

[2]    Capitalized terms used herein but not immediately defined shall have the meanings given to such terms in the Application or the *Declaration of John R. Castellano in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 11], as applicable.

## Reply

1.      Kirkland's retention should be approved.  Kirkland is disinterested, as the term is defined by section 101(14) of the Bankruptcy Code, and Kirkland does not hold or represent any interest adverse to these chapter 11 estates.  *See* 11 U.S.C. § 327(a).

2.      There is no question that Kirkland is extremely well-qualified to represent the Debtors.  Kirkland is one of the leading restructuring firms in the world, representing companies in dozens of complex chapter 11 cases every year, including companies that, like the Debtors, operate in the industrial and manufacturing space and face mass tort claims.

3.      Since 2019, Kirkland has represented five of the Debtors and their non-Debtor parent, 3M Company ("3M"), as co-defendants in the multidistrict litigation pending in the Northern District of Florida (the "Combat Arms MDL")—matters in which the interests of the Debtors and 3M have been aligned in denying liability for the Combat Arms claims and seeking to settle or otherwise resolve the litigation.  Kirkland has represented the co-defendants in trials, and pre-trial and post-trial proceedings, in which the co-defendants collectively deny liability.  Kirkland is also representing the co-defendants in their appeals before the Eleventh Circuit in which each co-defendant espouses the identical position.

4.      Recognizing that interests could hypothetically diverge, the Debtors appointed two disinterested directors,[3] well in advance of the Petition Date, and vested those directors with

---

[3]    One of the Debtors' disinterested directors, Mr. Jeffrey Stein, has served as an officer or disinterested director or manager for debtors in cases where Kirkland has represented either a party adverse to the debtors or the debtors themselves, but, contrary to the assertions in the CAE Committee's objection, Mr. Stein has never "worked for [Kirkland]."  *See* CAE Comm. Obj. ¶ 14 (alleging that "Mr. Stein has also worked for K&E many times before"); *see also Transcript of Hearing on Debtors' Motion for Declaratory and Injunctive Relief (Day 3)*, *In re Aearo Techs. LLC*, No. 22-02890-JJG-11, Adv. Proc. No. 22-50059 (Bankr. S.D. Ind. Aug. 17, 2022) ("PI Hearing Transcript (Day 3)") at 86:3–10; *Transcript of Hearing on Debtors' Motion for Declaratory and Injunctive Relief (Day 2)*, *In re Aearo Techs. LLC*, No. 22-02890-JJG-11, Adv. Proc. No. 22-50059 (Bankr. S.D. Ind. Aug. 16, 2022) ("PI Hearing Transcript (Day 2)") at 204:9–205:10.

exclusive authority to: (1) determine what constitutes a conflicts matter; and (2) direct the Debtors' actions with regard to any such matter. The Debtors also retained McDonald Hopkins LLC ("MH") to serve as conflicts counsel to the Debtors and advise the disinterested directors on any such issues. Separately, 3M has retained its own counsel, White & Case LLP ("W&C"), to advise on these chapter 11 cases. With appropriate governance measures in place to ensure that the Debtors and their disinterested directors had and have disinterested advisors at all relevant times and for all relevant decisions, any assertion that Kirkland is not disinterested is without merit.

5.     Moreover, as the Respirator Committee noted in its limited objection, disqualifying Kirkland would severely impair the Debtors' ability to successfully reorganize and would substantially harm the prospect for an expeditious and equitable recovery for meritorious tort claims. *See* Respirator Comm. Ltd. Obj. ¶ 12 ("Simply put, the failure to confirm a plan in these cases could result in conversion to chapter 7 or dismissal, jeopardizing any significant return for creditors, and the likelihood of failure increases dramatically if Kirkland is not employed. Denying the Application and removing Kirkland will effectively remove counsel that 3M and the Debtors trust."). Although the Respirator Committee's limited objection is wrong as it relates to Kirkland's disinterestedness, the Respirator Committee rightly recognizes that the path to resolution of all valid claims is far more likely with Kirkland in the fold.

6.     Faced with these incontrovertible facts, the CAE Committee focuses on (i) unlikely hypotheticals; (ii) fundamental misstatements of basic fiduciary duty law and successor liability law; and (iii) the Funding Agreement, which has already been executed, following arms'-length negotiations led by MH, on the one hand, and W&C, on the other hand, and which reduces the potential for conflicts between 3M and the Debtors. None of these arguments are remotely sufficient to dislodge the Debtors' chosen counsel. The CAE Committee appears to recognize as

much, largely ignoring the actual narrow issue at hand (whether Kirkland can be retained under section 327 of the Bankruptcy Code).  Instead, the CAE Committee uses its objection to preview an apparently forthcoming effort to derail these chapter 11 cases by seeking their dismissal.[4]

7.    The U.S. Trustee proffers similarly unsupported, unlikely hypotheticals concerning matters in which the Debtors' and 3M's interests are fully aligned.  Placing the U.S. Trustee's argument in the context of this Court's section 327(a) jurisprudence, the U.S. Trustee appears to argue that hypothetical future scenarios present the appearance of a conflict.  However, this Court has held that "disqualification is improper if only the appearance of conflict exists."  *In re Champ Car World Series, LLC*, 411 B.R. 619, 624 (Bankr. S.D. Ind. 2008) (citing *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 476 (3rd Cir. 1998)).  The U.S. Trustee then argues that this appearance of a conflict cannot be cleansed by the use of conflicts counsel based on a factually distinct case, ignoring that the Debtors and 3M are co-defendants aligned in jointly defending against the Combat Arms claims.

8.    Ultimately, the only question properly before the Court is whether Kirkland can be retained under section 327 of the Bankruptcy Code and this Circuit's prevailing jurisprudence.  For the reasons set forth below, the answer is a resounding yes.

9.    ***First***, there is no actual conflict with respect to Kirkland's representation of the Debtors in these chapter 11 cases that would permit disqualification.  *Champ Car*, 411 B.R. at 625.  Kirkland is the Debtors' general bankruptcy counsel for these chapter 11 cases.  Kirkland does not

---

[4]    In fact, the CAE Committee's brief expressly states they will object to *any* counsel seeking to resolve the Debtors' Combat Arms liabilities in these chapter 11 cases.  *See* CAE Comm. Obj. "Preliminary Statement" ("[T]he CAE Committee seriously doubts that a mere change in Debtors' counsel will resolve the root of the problem.  The fact is that these Cases were designed for 3M's benefit and are being run for 3M's benefit, regardless of which law firm stands before the Court 'for the Debtors' in these Cases.").

represent 3M in connection with these chapter 11 cases and has not, and will not, represent 3M or the Debtors in an adverse matter.

10.     **Second**, while the court may exercise discretion to disqualify counsel where a potential conflict exists, "disqualification is improper if only the appearance of a conflict exists." *Id.* at 624 (Bankr. S.D. Ind. 2008) (citing *Marvel*, 140 F.3d at 476 with approval); *Marvel*, 140 F.3d at 477 ("We therefore reject LaSalle's invitation to read an appearance of conflict disqualification into [section] 327(a)."). A disqualifying adverse interest arises only where a professional "serves two presently competing and adverse interests." *In re Raymond Pro. Grp., Inc.*, 421 B.R. 891, 902 (Bankr. N.D. Ill. 2009).

11.     No competing interests are present here. The Objectors fail to recognize (or intentionally evade) the fact that Kirkland only represents 3M and the Debtors ***jointly as co-clients***. Both in the MDL and in these chapter 11 cases, 3M's and the Debtors' goals are aligned. This unified goal is to negotiate, obtain approval of, and ultimately consummate a plan of reorganization that resolves their respective liability.

12.     To the extent a conflict may arise between 3M and the Debtors, the Debtors have two disinterested directors, Roger Meltzer and Jeffrey Stein, to decide such matters with the advice of independent counsel. That very structure is what facilitated negotiation of the Funding Agreement, which counsel for the CAE Committee conceded was a "pretty darn good deal" for the Debtors. *See* PI Hearing Transcript (Day 3) at 203:2–3.

13.     The terms and existence of the Funding Agreement appear to be at the crux of the CAE Committee's objection to these chapter 11 cases. But the CAE Committee's argument here is predicated on two fatally flawed legal theories—first, that the Debtors' have a fiduciary duty to exploit the so-called "blank check" provided under the Funding Agreement to end these cases

immediately by paying Combat Arms claimants anything they ask for; and second, that principles of successor liability would somehow permit the Debtors to cleanse themselves of any liability by shifting such liability to 3M. Putting aside that the Debtors' disinterested directors and MH remain empowered to pursue either of these theories if they find merit in them, both arguments fail substantively.

14.    As to the first argument, a chapter 11 debtor's fiduciary duty includes maximizing the value of the estate for the benefit of its stakeholders. *See In re Bellevue Place Assocs.*, 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994) ("Chief among the [duties owed by a chapter 11 debtor-in-possession] . . . is that the debtor-in-possession is a fiduciary to all of its creditors and equity security holders."); *In re Microwave Prods. of Am., Inc.*, 102 B.R. 666, 671 (Bankr. W.D. Tenn. 1989) ("Because the [debtor's] fiduciary obligation is to the estate, and not to one group, the [debtor] must act to benefit the estate as a whole."); *Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns Corp.*, No. CIV. A. 12150, 1991 WL 277613, at *34 (Del. Ch. Dec. 30, 1991) ("[A] board of directors is not merely the agent of the residue risk bearers, but owes its duty to the corporate enterprise."). The CAE Committee's argument, if accepted, would turn this hornbook law on its head. It would be a flagrant breach of the Debtors' fiduciary duties and a violation of the fundamental tenets of chapter 11 jurisprudence to propose a plan that pays a ransom to one stakeholder at the expense of another group of stakeholders where fiduciary duties are owed to all, including the Debtors' sole shareholder, 3M.

15.    Ultimately, the Debtors (advised by MH) negotiated and entered into an uncapped Funding Agreement to fully compensate valid claims consistent with their duty to maximize value for stakeholders. But, should any Funding Agreement disputes arise, the Debtors' disinterested directors (advised by MH) are fully empowered to identify and decide those issues.

6

16.     As to the second argument, the CAE Committee simply misunderstands successor liability and ignores the Debtors' indemnification obligations under the Funding Agreement.  *See* CAE Comm. Obj. ¶¶ 23–25.  Successor liability does not ***shift*** liability from one party to another.  Instead, it is a legal construct to ***add additional parties*** who also become jointly and severally liable with their predecessor.  *See, e.g.*, *Russell v. SunAmerica Secs., Inc.*, Civ. No. E90-0084, 1991 WL 352563, at *2 (S.D. Miss. Mar. 6, 1991) ("Reason dictates that in an action such as this, where liability is sought to be imposed against a successor corporation for the torts of its predecessor, the successor's liability, if any, derives exclusively from and is coterminous with the liability to which the predecessor could have been subjected."); Rachel P. Corcoran, *Why Successor Liability Claims Are Not "Interests in Property" Under Section 363(f)*, 18 Am. Bankr. Inst. L. Rev. 697, 715 (2010) ("Surely, a successor liability claim does not 'have an existence independent of the underlying liability of the entity that sold the assets.'").  Moreover, the Debtors agreed to indemnify 3M for its Combat Arms liability in the Funding Agreement.  *See* Funding Agreement § 3(a) ("The Aearo Entity Earplug Defendants shall and hereby agree to jointly and severally indemnify . . . the Payor from and against, and pay and reimburse Payor . . . for any Losses incurred, sustained by or imposed on Payor . . . arising out of, relating in any way to or in connection with any Earplug Liabilities").  Thus, the CAE Committee's position that the Debtors can wash themselves of liability by shifting it to 3M *via* this doctrine is at odds with the Debtors' indemnification obligations under the Funding Agreement.

17.     ***Third***, Kirkland has and will continue to serve the Debtors' interests (and only the Debtors' interests) in these chapter 11 cases.  The suggestion that Kirkland will abdicate its duty to the Debtors because of its relationship to 3M defies reality.  Kirkland represents 3M in the Combat Arms MDL as a co-defendant with the Debtors.  While the Combat Arms MDL, as the

largest MDL in U.S. history, resulted in approximately 1.7 percent of Kirkland's fee receipts in the twelve months preceding the Petition Date, historically, fees generated by Kirkland from 3M have been negligible, as payments from 3M to Kirkland outside of the Combat Arms litigation represented less than 0.025 percent of Kirkland's fee receipts during such period. *See* Supplemental Declaration ¶ 10.[5]

18.   While the Combat Arms MDL representation is noteworthy, Kirkland represents 3M *and* the Debtors in that matter, so its relationship with 3M cannot legally impair Kirkland's ability to impartially advocate for the Debtors in these chapter 11 cases.  As co-clients, Kirkland could not represent 3M adverse to the Debtors.  *See* Model Rules of Pro. Conduct r. 1.7(a).  The fact that resolving the significant litigation facing the Debtors through these chapter 11 cases likely benefits all stakeholders, including 3M, is no reason to disqualify Kirkland.

19.   ***Fourth***, Kirkland's representation of both 3M and the Debtors during the prepetition liability management and contingency planning phase is entirely consistent with the independence and impartiality requirements of the Bankruptcy Code.  Kirkland advised 3M ***and the Debtors*** on "Project Crane," which facilitated the joint effort of 3M and the Debtors to identify alternatives to resolving their joint liability.

20.   As a preliminary matter, Kirkland disclosed its prepetition and ongoing representation of ***both*** the Debtors and 3M in other matters (which included the prepetition liability management and contingency planning period known as Project Crane) in a manner that complied with the requirements set forth in the Bankruptcy Rules and Local Rules.  *See* Fed. R. Bankr.

---

[5]   "Supplemental Declaration" means the *Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 26, 2022* filed at docket number 685.

P. 2014(a); *see also* S.D.Ind. B-2014-1(a).  As disclosed in the Supplemental Declaration, "since 2019, Kirkland has represented five Debtors, plus 3M, as the six co-defendants in the Combat Arms litigation, and certain of the Debtors' or 3M's former employees in preparing for and giving depositions and producing documents in the Combat Arms litigation.  The six co-defendants entered into a joint defense agreement in March 2019 and have collectively denied liability in the litigation and have defended the claims jointly on that basis" in all Combat Arms trials to date. Project Crane was nothing more than an extension of that representation—a representation "limited to those matters in which 3M's and the Debtors' interests are aligned."  See Supplemental Declaration ¶ 7.  And the interests of the six co-defendants are "fully aligned in denying liability for the Combat Arms claims and in seeking to globally settle or otherwise resolve the Combat Arms litigation."  *Id.*

21.     The CAE Committee cannot credibly claim that there was inadequate disclosure of Kirkland's representation of both the Debtors and 3M during the prepetition liability management period.  Between the Husnick Declaration, the Supplemental Declaration, the Debtors' Chief Restructuring Officer's testimony from the preliminary injunction hearing, and the public record of Kirkland appearing on behalf of both the Debtors and 3M in court proceedings more than 200,000 times, Kirkland's representation of both the Debtors and 3M during the prepetition liability management and contingency period is "known to all concerned."  *See In re Jade Mgmt. Servs.*, 386 Fed.Appx. 145, 150 (3d Cir. 2010) (affirming the bankruptcy court's order approving the retention of debtor's counsel despite the omission of debtor's counsel's "dual representation" because "***the record ma[d]e[] clear that the [b]ankruptcy [c]ourt was '[a]rmed with knowledge of all relevant facts'***" (internal citations omitted) (emphasis added)).

22.     Here, the record is clear with respect to present representations—Kirkland **presently** represents the Debtors in these chapter 11 cases and the Debtors and 3M in the Combat Arms MDL regarding issues on which the parties' interests are aligned, and **previously** represented the Debtors and 3M in other matters, including "Project Crane."  This Court has made clear that "[s]ection 327(a) is phrased in the present tense, leading courts to conclude that disqualification is proper only if prospective counsel *presently* 'holds' or 'represents' an interest adverse to the estate, regardless of 'any interests it may have held or represented in the past.'"  *In re Champ Car World Series, LLC*, 411 B.R. 619, 625 (Bankr. S.D. Ind. 2008).  Because under this Court's interpretation and application of section 327(a) representations are evaluated at present, the CAE Committee's argument with respect to Kirkland's past representation in Project Crane is unpersuasive.[6]

23.     There is one question in front of the Court today:  whether Kirkland can be retained as bankruptcy counsel under section 327(a) of the Bankruptcy Code.  For the reasons set forth herein, Kirkland is both disinterested and does not hold or represent any interest adverse to these chapter 11 estates, and therefore, clearly satisfies the standard for retention.  The Objectors failed to show that the Debtors' retention of Kirkland as counsel—a choice entitled to great deference— violates section 327(a) of the Bankruptcy Code and have provided no basis to deprive the Debtors of their attorneys or to impose the irreparable harm that could arise if the Debtors were now stripped of Kirkland's counsel.  Motions to disqualify are disfavored precisely to avoid this type of gamesmanship.  *See Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982)

---

[6]    To state the obvious, it is common for debtor's counsel to advise an entire enterprise with respect to prepetition liability management and contingency planning.  Oftentimes, the entities that file for chapter 11 relief do not determine to do so until well into the representation and are a subset of the broader corporate enterprise.  For example, in *In re FSO Jones, LLC*, Kirkland was retained as general bankruptcy counsel while advising and representing the debtors' non-debtor parent in an out-of-court sale transaction that averted the need for that parent and certain other guarantors to seek chapter 11 relief.  *See In re FSO Jones, LLC*, No. 22-10196 (MSG) (Bankr. E.D. La. May 13, 2022) [Docket No. 176]; *In re FSO Jones LLC*, No. 20-10196 (MSG) (Bankr. E.D. La. June 10, 2022) [Docket No. 181].

("[S]uch motions should be viewed with extreme caution for they can be misused as techniques of harassment."). The Objections should be overruled, and the Application should be approved.

<u>**Legal Standard**</u>

**I.      Retention Under Section 327(a)**

24.      Under section 327(a) of the Bankruptcy Code, the Debtors "may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons . . . ." 11 U.S.C § 327(a). In evaluating objections to a retention under section 327(a), courts are guided by the core principle that a debtor's choice of counsel is entitled to great deference. *See In re Caesars Ent. Operating Co., Inc.*, 561 B.R. 420, 431 (Bankr. N.D. Ill. 2015) ("[D]ebtor[s] ha[ve] 'wide latitude' in selecting counsel, and [their] choice will be disturbed '***only in the rarest cases***.'") (emphasis added). Because a debtor's right to counsel of its choice is so important, attorney disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary" and "should be viewed with extreme caution for they can be misused as techniques of harassment." *In re DeVlieg, Inc.*, 174 B.R. 497, 504 (N.D. Ill. 1994) (citing *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983) and *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 721–22 (7th Cir. 1982)).

**A.      Actual Conflicts**

25.      An "actual" conflict exists where the professional proposed to be retained serves two "presently competing and adverse interests." *In re Am. Printers & Lithographers, Inc.*, 148 B.R. 862, 866 (Bankr. N.D. Ill. 1992) (citing *In re Diamond Mortg. Corp. of Ill.*, 135 B.R. 78, 92 (Bankr. N.D. Ill. 1990)). Even in the context of retention under section 327(a), this Court has proclaimed that an "'actual conflict' has to be a conflict between 'the [debtor] and counsel's creditor client with respect to the specific matter' for which special counsel is to be retained." *In re Champ Car World Series, LLC*, 411 B.R. 619, 625 (Bankr. S.D. Ind. 2008) (citing

*In re AroChem Corp.*, 176 F.3d 610, 629 (2d Cir. 1999)).  Section 327(c) provides that a "person is not disqualified for employment . . . solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."  11 U.S.C. § 327(c).

### B.    Potential Conflicts

26.    A "potential" conflict exists where competition between two interests "is presently dormant, but may become active if certain contingencies occur."  *Diamond Mortg.*, 135 B.R. at 91 (internal quotations omitted).  For potential conflicts, there are "better solutions than depriving [the Debtors] of [their] chosen counsel," including "the retention of conflicts counsel."  *Caesars*, 561 B.R. at 435; *see In re Schwindt*, No. 12-31418, 2013 WL 321297, at *6 (Bankr. D. Colo. Jan. 28, 2013); *In re E. Livestock Co., LLC*, 2012 Bankr. LEXIS 4052, at *13 (Bankr. S.D. Ind. Aug. 31, 2012) ("The Court determined that, by virtue of the engagement of Special Conflicts Counsel, [debtor's counsel] met the standard of disinterestedness established by § 327 notwithstanding [its representation of a creditor of the debtor].").  "[I]t is not uncommon for 'conflicts counsel' to be retained, charged with the duty of undertaking specified matters in which general counsel for the debtor has a conflict."  3 Collier on Bankruptcy P 327.04 (16th 2022); *see, e.g.*, *In re HONX, Inc.*, No. 22-90035 (MI) (S.D. Tex. June 24, 2022) [Docket No. 186] (authorizing retention of conflicts counsel).

27.    This Court and others within the Seventh Circuit have adopted the position that the appearance of a conflict should ***not*** lead to disqualification and potential conflicts should not necessarily lead to disqualification.  *See Champ Car*, 411 B.R. at 624 (adopting the standard articulated in *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463 (3d Cir. 1998)); *see also Caesars*, 561 B.R. at 430–31 n.2 (same).

12

28.     While not even the appearance of conflict exists here, the Seventh Circuit's interpretation of *BH & P* in *Crivello* to which the CAE Committee cites is *dicta*.  *See* CAE Committee Obj. ¶ 19 (citing *In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998).  In *Crivello* it was conceded that counsel was not disinterested and so the issue of disinterestedness was not at issue.  In *dicta*, the court in *Crivello* cited to, *In re BH & P Inc.*, 949 F.2d 1300, 1308 (3d Cir. 1991), which was subsequently determined to be a "misread[ing]" of the law and overturned by the Third Circuit shortly after *Crivello* had been decided.  *See Marvel*, 140 F.3d at 476.  At least one court within the Seventh Circuit has expressly acknowledged that *Crivello*'s reliance on *BH & P* "may no longer reflect the court's views."  *Caesars*, 561 B.R. at 430–31 n.2.

### C.     Adverse Interest

29.     The Seventh Circuit has construed the phrase "hold or represent an interest adverse to the estate" to mean:  "(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate."  *See In re Crivello*, 134 F.3d 831, 835–36 (7th Cir. 1998); *see also Champ Car*, 411 B.R. at 624–25; *Caesars*, 561 B.R. at 430 (Bankr. N.D. Ill. 2015).

30.     Whether proposed debtors' counsel holds an interest adverse to the estate has been framed by courts both inside and outside of the Seventh Circuit as whether the proposed counsel has a "meaningful incentive to act contrary to the best interests of the estate."  *See, e.g.*, *In re J.S. II, L.L.C.*, 371 B.R. 311, 321–22 (Bankr. N.D. Ill. 2007) (quoting *In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) (citing and quoting *In re Martin*, 817 F.2d 175, 180–81 (1st Cir. 1987))).  Courts have evaluated this standard based on whether facts and circumstances indicate that "counsel's attention to the concerns of the debtors' estate[s] was somehow diminished."  *See Martin*, 817 F.2d at 180–81.  Courts have considered the retention of counsel to

be in the best interest of the estate where such retention maintains employment of counsel familiar with debtors' case and evidentiary materials, preventing the duplication of expenses and efforts that would unnecessarily drain assets from the debtors' estates. *See J.S. II*, 371 B.R. at 321.

### D. Disinterestedness

31. A disinterested person has no "interest materially adverse to the interest of the estate . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). This Court has interpreted section 101(14)(C) to "refer[] to only the 'personal interests of the professional whose disinterestedness is under consideration.'" *Champ Car*, 411 B.R. at 626 (quoting *In re AroChem Corp.*, 176 F.3d 610, 629 (2d Cir. 1999)). Section 101(14)(C) "makes no mention of 'representation.' Its sole focus is whether prospective counsel itself 'has' a materially adverse interest, not whether it now or at some point in the past 'represented' a party with a materially adverse interest." *Champ Car*, 411 B.R. at 626. In *Champ Car*, this Court found that proposed counsel did not presently "have" an interest materially adverse to the estate and was thus a disinterested person under section 101(14)(C) for the same reasons it did not hold an interest adverse to the estate under section 327(a). *See id.* The Court should do so again here.

### Argument

32. The facts here show that: (1) there are no actual conflicts that should disqualify Kirkland; (2) there is no possibility of potential conflicts involving Kirkland because the Debtors' adherence to proper corporate governance and use of conflicts counsel eliminates any risk that Kirkland would represent the Debtors in such matter; and (3) Kirkland has met the standard for retention under section 327(a) of the Bankruptcy Code because (a) it does not hold an interest adverse to the Debtors and it only represents 3M alongside the Debtors as co-defendants in matters in which their interests are aligned and (b) Kirkland is disinterested.

14

I.      **There Are No Actual Conflicts That Require Disqualification Under Either Section 327(a) or 327(c).**

33.      Kirkland represents only the Debtors in these chapter 11 cases and the co-defendants jointly in the Combat Arms MDL.  *See* Husnick Declaration ¶ 34.  W&C represents 3M in these chapter 11 cases, and MH represents the Debtors in connection with conflicts matters. *See In re Aearo Techs. LLC*, No. 22-02890-JJG-11 (Bankr. S.D. Ind. 2022) [Docket Nos. 34, 35, 36, 85] (orders granting *pro hac vice* motions for W&C attorneys for non-Debtor 3M).  There is no actual conflict.

II.     **The Debtors' Adherence to Proper Corporate Governance Negates Any Potential Conflicts.**

34.      As discussed above, prior to the Petition Date, the Debtors instituted thorough corporate governance measures to manage any potential conflicts.

35.      The disinterested directors and the Debtors' conflicts counsel have been, and continue to be, actively engaged in the process.  For instance, between June 21, 2022 and November 3, 2022, Roger Meltzer and Jeffery Stein attended thirteen separate meetings of the Aearo board of directors, MH attended every single meeting.  Both conflicts counsel and the disinterested directors are active participants in those meetings.  The Debtors' boards meet regularly and discuss the chapter 11 cases, mediation updates, and customary operational items, among others.  Both conflicts counsel and the disinterested directors also evaluate whether potential conflicts matters exist, and those discussions take place when Kirkland and the other directors are not present.

36.      The Objectors assert that disputes arising from the Funding Agreement, certain intercompany agreements and claims, and possible third-party releases, are all matters which conflicts counsel cannot cure.  *See* UST Obj. p. 10–12; *see also* CAE Comm. Obj. ¶¶ 29–30.  That is clearly incorrect.  These hypothetical future disputes, even if they did materialize, would be

15

discrete intercompany conflict matters that fall within the larger restructuring effort, and, are precisely what the Debtors' disinterested directors and conflicts counsel are for.

37.     Moreover, the U.S. Trustee's and the CAE Committee's attempt to leverage *Project Orange* in support of their arguments is misguided.  *See* UST Obj. p. 12 (citing to *In re Project Orange Assocs., LLC*, 431 B.R. 363 (Bankr. S.D.N.Y. 2010)); CAE Comm. Obj.  ¶¶ 22, 29 n.13 (same).  That case applied a different legal standard and involved different facts.  The bankruptcy court in *Project Orange* did not address the legal distinctions between between actual conflicts, potential conflicts, and the appearance of conflicts, where this Court has adopted that framework. *Compare In re Champ Car World Series, LLC*, 411 B.R. 619, 624 (Bankr. S.D. Ind. 2008) ("The court may exercise its discretion . . . if a potential conflict exists; however disqualification is improper if only the appearance of conflict exists.") *with Project Orange*, 431 B.R. at 373 ("[B]ankruptcy judges in this district have refused to distinguish between actual and potential conflicts.").  In *Project Orange*, debtor's proposed counsel **conceded** there was an actual conflict and that it could "not represent the [d]ebtor in **many** matters regarding [the debtor's largest creditor]."  *Project Orange*, 431 B.R. at 372 (emphasis added).  Here, there is no actual conflict because the Funding Agreement is fully negotiated and the Debtors have agreed to indemnify 3M thereunder.  Moreover, the Debtors retained MH to handle any matter that the disinterested directors deem to be a conflicts matter, negating any "potential conflict."

38.     Even if the legal framework from *Project Orange* were applicable in this district, the facts of *Project Orange* are clearly distinguishable.  In *Project Orange*, the bankruptcy court found that the resolution of the case hinged on the debtor's largest creditor's ability to repair and install turbines that were central to the debtor's profitability and ability to reorganize.  *Id.* at 375 (Bankr. S.D.N.Y. 2010).  The repair and installation of the turbines in question was anticipated to

be a lengthy process subject to "contentious litigation," in which proposed debtor's counsel admitted it could not represent the debtor. *See id.* at 372–73. In short, the creditor was the debtor's primary adversary, largest creditor, and responsible for the operational harm that led to the debtor's chapter 11 case, not a joint co-defendant with aligned interests.

39. The CAE Committee relies on another factually distinguishable, out-of-circuit opinion, *In re WM Distribution, Inc. See* CAE Comm. Obj. ¶ 22 (citing 571 B.R. 866 (Bankr. D.N.M. 2017)). In *WM Distribution*, debtor's counsel represented the debtor and the debtor's largest unsecured creditor in their respective, concurrent bankruptcies. *See* 571. B.R. at 869. In addition to supplying the debtor with core products, the creditor accounted for more than half of the debtor's total unsecured claims, resulting in the creditor's ability to control the class of unsecured creditors in any proposed chapter 11 plan. *See id.* at 869, 873. The bankruptcy court found that the debtor's and creditor's interests were in such direct conflict, based on their roles in each other's respective, concurrent bankruptcies, that these conflicts could not be resolved by conflicts counsel. The court reasoned that one party's pursuit of its own interests would impair the other's ability to reorganize in their respective, concurrent bankruptcies. *See id.* at 869.

40. Here, unlike in *Project Orange* or *WM Distribution*, the Debtors and 3M are not adversaries, nor are they trying to facilitate diametrically opposed reorganizations. Indeed, the factual scenario here is exactly the opposite: they are co-defendants that have entered into a joint defense agreement, and collectively denied liability and defended claims jointly on that basis at bellwether trials. They also entered into the Funding Agreement.

III. **Kirkland Does Not Hold Any Interest Adverse to the Estate.**

41. The CAE Committee alleges a vague, nondescript appearance of conflict, and its attempts to distinguish controlling precedent are not persuasive. The draconian remedy of disqualifying Debtors' counsel of choice, which is reserved for "the rarest cases," is inappropriate

and unnecessary under these circumstances. *See In re Caesars Ent. Operating Co., Inc.*, 561 B.R. 420, 431 (Bankr. N.D. Ill. 2015).[7]

42. Kirkland is neither a creditor, nor does it hold an interest against or contrary to the estates. Kirkland has no incentive to act contrary to the Debtors' estates. In fact, it is quite the opposite. Kirkland has developed a leading practice representing debtors in chapter 11 proceedings, representing debtors in 75 chapter 11 cases since 2019.[8] Over the past three years,

---

[7] The CAE Committee also attempts to differentiate the Debtors' chapter 11 cases from *Caesars* in a footnote. *See* CAE Comm. Obj. ¶ 20 n.9. But the CAE Committee focuses on immaterial details in the *Caesars* court's opinion and mischaracterizes the facts in these chapter 11 cases. First, the CAE Committee focuses on the fact that 3M is the "100% owner of the Debtors." *Id.* The *Caesars* court discussed but gave this factor very little weight, stating that "[c]orporate separateness is a fundamental tenet of American law and corporate existence 'must be respected.'" 561 B.R. at 432–33 (internal citations omitted). The *Caesars* court further noted that "[t]hese companies cannot be lumped together and treated is if they were a single enterprise doing Apollo and TPG's bidding—not without evidence of a kind the Committee did not present." *Id.* at 433 n.3. Further, the *Caesars* court held that Kirkland's retention could not be denied because "the Noteholders Committee did not present evidence demonstrating that Kirkland ha[d] bias against the estates" beyond speculation. *Id.* at 436. So too here. But, perhaps most importantly, here, unlike in *Caesars*, Kirkland only represents 3M in the Combat Arms MDL jointly with the Debtors as co-clients.

[8] *See, e.g.*, *In re Cineworld Grp. plc*, No. 22-90168 (S.D. Tex. Sept. 7, 2022); *In re Carestream Health, Inc.*, No. 22-10778 (D. Del. Aug. 23, 2022); *In re Altera Infrastructure L.P.*, No. 22-90130 (S.D. Tex. Aug. 12, 2022); *In re Celsius Network LLC*, No. 22-10964 (S.D.N.Y. July 13, 2022); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (S.D.N.Y. July 5, 2022); *In re HONX, Inc.*, No. 22-90035 (S.D. Tex. Apr. 28, 2022); *In re FSO Jones, LLC*, No. 22-10196 (E.D. La. Feb. 28, 2022); *In re Seadrill New Fin. Ltd.*, No. 22-90001 (S.D. Tex. Jan. 11, 2022); *In re Nordic Aviation Cap. Designated Activity Co.*, No. 21-33693 (E.D. Va. Dec. 19, 2021); *In re Riverbed Tech., Inc.*, No. 21-11503 (D. Del. Nov. 16, 2021); *In re Carlson Travel, Inc.*, No. 21-90017 (S.D. Tex. Nov. 11, 2021); *In re Wash. Prime Grp. Inc.*, No. 21-31948 (S.D. Tex. June 13, 2021); *In re Alex and Ani, LLC*, No. 21-10918 (D. Del. June 9, 2021); *In re Katerra, Inc.*, No. 21-31861 (S.D. Tex. June 6, 2021); *In re Highpoint Res. Corp.*, No. 21-10565 (D. Del. Mar. 14, 2021); *In re Belk, Inc.*, No. 21-30630 (S.D. Tex. Feb. 23, 2021); *In re Seadrill Ltd.*, No. 21-30427 (S.D. Tex. Feb. 10, 2021); *In re Navient Solutions, LLC*, No. 21-10249 (S.D.N.Y. Feb. 8, 2021); *In re Frontera Holdings LLC*, No. 21-30354 (S.D. Tex. Feb. 3, 2021); *In re Seadrill Partners LLC*, No. 20-35740 (S.D. Tex. Dec. 1, 2020); *In re Gulfport Energy Corp.*, No. 20-35562 (S.D. Tex. Nov. 13, 2020); *In re Oasis Petroleum Inc.*, No. 20-34771 (S.D. Tex. Sept. 30, 2020); *In re Bouchard Transp. Co., Inc.*, No. 20-34682 (S.D. Tex. Sept. 28, 2020); *In re FTS Int'l, Inc.*, No. 20-34622 (S.D. Tex. Sept. 22, 2020); *In re Town Sports Int'l, LLC*, No. 20-12168 (D. Del. Sept. 14, 2020); *In re iQor Holdings Inc.*, No. 20-34500 (S.D. Tex. Sept. 10, 2020); *In re Arena Energy LP*, No. 20-34215 (S.D. Tex. Aug. 20, 2020); *In re Valaris plc*, No. 20-34114 (S.D. Tex. Aug. 19, 2020); *In re Le Tote, Inc.*, No. 20-33332 (E.D. Va. Aug. 2, 2020); *In re Tailored Brands, Inc.*, No. 20-33900 (S.D. Tex. Aug. 2, 2020); *In re Ascena Retail Grp., Inc.*, No. 20-33113 (E.D. Va. July 23, 2020); *In re Lakeland Tours, LLC*, No. 20-11647 (S.D.N.Y. July 20, 2020); *In re Mood Media Corp.*, No. 20-33768 (S.D. Tex. July 30, 2020); *In re Cal. Pizza Kitchen, Inc.*, No. 20-33752 (S.D. Tex. July 29, 2020); *In re Bruin E&P Partners, LLC*, No. 20-33605 (S.D. Tex. July 16, 2020); *In re Covia Holdings Corp.*, No. 20-33295 (S.D. Tex. June 29, 2020); *In re Chesapeake Energy Corp.*, No. 20-33233 (S.D. Tex. June 28, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (S.D.N.Y. June 24, 2020); *In re BJ Servs., LLC*, No. 20-33627 (S.D. Tex. July 20, 2020); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (D. Del. June 14, 2020); *In re APC Auto. Techs. Intermediate Holdings, LLC*, No. 20-11466 (D. Del. June 3, 2020); *In re Akorn, Inc.*, No. 20-11177 (D. Del. May 20, 2020); *In re Hornbeck Offshore Servs., Inc.*, No. 20-32679 (S.D. Tex.

Kirkland has represented 38 debtors with liabilities of over $1 billion in chapter 11 cases. Kirkland has established this presence by providing the best legal counsel possible to further the interests of its debtor clients with the independence and impartiality required by the Bankruptcy Code. Acting against the Debtors' interests would cut against Kirkland's own interest in maintaining its position as one of the "go to" firms for debtors' counsel.

43.     Even the Respirator Committee agrees. While the Respirator Committee's comments on Kirkland's disinterestedness are simply wrong, the Respirator Committee accurately states the consequences of denying Kirkland's retention application. The unnecessary expense, undue delay, and overall breakdown of process that would inevitably result if the Court does not approve Kirkland's retention would severely impair the successful and timely prosecution of these chapter 11 cases. *See* Respirator Ltd. Obj. ¶ 4 ("[A]pproving the Application is in the best interest of all creditors.").

---

May 19, 2020); *In re J. C. Penney Co., Inc.*, No. 20-20182 (S.D. Tex. May 15, 2020); *In re Intelsat S.A.*, No. 20-32299 (E.D. Va. May 13, 2020); *In re Ultra Petroleum Corp.*, No. 20-32631 (S.D. Tex. May 14, 2020); *In re Stage Stores, Inc.*, No. 20-32564 (S.D. Tex. May 10, 2020); *In re Neiman Marcus Grp. Ltd. LLC*, No. 20-32519 (S.D. Tex. May 7, 2020); *In re Frontier Commc'ns Corp.*, No. 20-22476 (S.D.N.Y. Apr. 14, 2020); *In re Longview Power, LLC*, No. 20-10951 (D. Del. Apr. 14, 2020); *In re Whiting Petroleum Corp.*, No. 20-32021 (S.D. Tex. Apr. 1, 2020); *In re Sheridan Holding Co. I, LLC*, No. 20-31884 (S.D. Tex. Mar. 23, 2020); *In re Bluestem Brands, Inc.*, No. 20-10566 (D. Del. Mar. 9, 2020); *In re Pier 1 Imports, Inc.*, No. 20-30805 (E.D. Va. Feb. 17, 2020); *In re McDermott Int'l, Inc.*, No. 20-30336 (S.D. Tex. Jan. 21, 2020); *In re Clover Techs. Grp. LLC*, No. 19-12680 (D. Del. Dec. 16, 2019); *In re Anna Holdings, Inc.*, No. 19-12551 (D. Del. Dec. 1, 2019); *In re Murray Energy Holdings Co.*, No. 19-56885 (S.D. Ohio Oct. 29, 2019); *In re Destination Maternity Corp.*, No. 19-12256 (D. Del. Oct. 21, 2019); *In re Dura Auto. Sys., LLC*, No. 19-12378 (D. Del. Oct. 17, 2019); *In re Deluxe Ent. Servs. Grp. Inc.*, No. 19-23774 (S.D.N.Y. Oct. 3, 2019); *In re Forever 21, Inc.*, No. 19-12122 (D. Del. Sept. 29, 2019); *In re Sheridan Holding Co. II, LLC*, No. 19-35198 (S.D. Tex. Sept. 15, 2019); *In re Barneys New York, Inc.*, No. 19-36300 (S.D.N.Y. Aug. 6, 2019); *In re PES Holdings, LLC*, No. 19-11626 (D. Del. July 21, 2019); *In re Blackhawk Mining LLC*, No. 19-11595 (D. Del. July 19, 2019); *In re HPS Liquidation, LLC*, No. 19-11608 (S.D.N.Y. May 19, 2019); *In re Sungard Availability Servs. Cap., Inc.*, No. 19-22915 (S.D.N.Y. May 1, 2019); *In re Jones Energy, Inc.*, No. 19-32112 (S.D. Tex. Apr. 14, 2019); *In re Vanguard Nat. Res., Inc.*, No. 19-31786 (S.D. Tex. Mar. 31, 2019); *In re Z Gallerie, LLC*, No. 19-10488 (D. Del. Mar. 11, 2019); *In re Windstream Holdings, Inc.*, No. 19-22312 (S.D.N.Y. Feb. 25, 2019); *In re RMBR Liquidation, Inc.*, No. 19-10234 (D. Del. Feb. 6, 2019); *In re Fullbeauty Brands Holdings Corp.*, No. 19-22185 (S.D.N.Y. Feb. 3, 2019); *In re Specialty Retail Shops Holding Corp.*, No. 19-80064 (D. Neb. Jan. 16, 2019).

**IV.     Kirkland Does Not Represent an Interest Adverse to the Estates.**

44.     Kirkland has not represented, does not represent, and will not represent any party adverse to the Debtors.

45.     The Funding Agreement is fully negotiated, and its language is undisputed.  The benefits of the Funding Agreement to the Debtors are significant, and that agreement resulted directly from the conflicts counsel arrangement that the Objectors somehow contend is insufficient to protect the Debtors' interests.  Moreover, an unidentified, speculative dispute in the future regarding the interpretation of a prepetition contract is not an adverse interest.

46.     With the Funding Agreement fully negotiated, the Debtors are focused on the ongoing mediation and progressing these cases toward an efficient and equitable resolution with the tort claimants that have asserted claims against the Debtors, including the approximately 230,000 Combat Arms claimants who seek to hold 3M and the Debtors jointly and severally liable. The interests of the Debtors' and 3M's interests are fully aligned in this goal.

47.     Courts have consistently found that proposed counsel does not represent an interest adverse to the debtors' estates by representing clients whose interests are aligned in reaching a global resolution through the chapter 11 process.  *See, e.g.*, *In re LTL Mgmt. LLC*, No. 21-30589, Hr'g Tr. at 96:14–16 (Bankr. D.N.J. Mar. 8, 2022) (approving the retention of debtor's counsel and finding that interests are aligned where there was "an interest in reaching a global settlement of [tort] liabilities through a [c]hapter 11 process."); *In re Decade, S.A.C., LLC*, 2020 U.S. Dist. LEXIS 18818, at *22, *25 (D. Del. Feb. 5, 2020); *In re 22 Acquisition Corp.*, 2004 U.S. Dist. LEXIS 6435, at *13–14 (E.D. Pa. Mar. 23, 2004); *In re Dow Corning Corp.*, No. 95-20512 (AJS), Hr'g Tr. at 170 (Bankr. E.D. Mich. Feb. 9, 1996); *In re Hurst Lincoln Mercury, Inc.*, 80 B.R. 894, 895–96 (Bankr. S.D. Ohio 1987); *In re AroChem Corp.*, 176 F.3d 610, 627 (2d Cir. 1999).  The same is true here.

## V.      Kirkland Is Disinterested and Is Not Beholden to 3M.

48.      The CAE Committee contends that Kirkland is not disinterested under the test

established by the Seventh Circuit due to "other conflicts" such as the Debtors' intercompany

receivable, the shared services agreement, 3M's insurance policy, and the Debtors' contracts with

3M.  *See* CAE Comm. Obj. ¶¶ 17, 28.  The CAE Committee does not explain why these "other

conflicts" are actual or potential conflicts that necessitate disqualification, when the Debtors have

disinterested directors and conflicts counsel.  But at its core, the CAE Committee's argument

misstates and misapplies the law within the Seventh Circuit and the Southern District of Indiana.

Nowhere in its objection does the CAE Committee attempt to explain how Kirkland's "personal

interests" are implicated by the "myriad business and contractual interrelationships between the

Debtors and 3M," CAE Comm. Obj. ¶ 28, that allegedly render Kirkland not disinterested.

49.      The CAE Committee also raises 3M's prepetition payment of Kirkland's legal fees.

*See* CAE Comm. Obj. ¶ 6.  While 3M paid Kirkland's fees as an initial matter, these payments

were ultimately charged to the Debtors only when it was determined the Debtors would seek relief

under chapter 11 of the Bankruptcy Code.  In any case, this fact does not advance the Objectors'

arguments under the applicable case law.  Courts have repeatedly upheld retention of debtors'

counsel where prepetition legal fees have been paid by non-debtor affiliates.  *See, e.g.*,

*In re Chardon*, 536 B.R. 791, 805 (Bankr. N.D. Ill. 2015) (a non-debtor affiliate's payment of

debtor's counsel's retainer "simply does not show that [debtor's counsel] is conflicted");

*In re Rental Sys., L.L.C.*, 511 B.R. 882, 900 (Bankr. N.D. Ill. 2014) ("The court does not mean to

imply that there is a *per se* rule against an affiliate paying or guaranteeing payment of legal fees

to counsel for a chapter 11 debtor in possession."); *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455,

464 (5th Cir. 2012) (finding that a non-debtor's payment of debtors' counsel's retainer "did not

create an adverse interest or show that [debtors' counsel] was not disinterested"); *In re Paddock*

*Enters., LLC*, No. 20-10028 (LSS) (Bankr. D. Del. May 26, 2020) [Docket No. 329] (authorizing retention of debtor's counsel where the application to retain debtor's counsel indicates that it received prepetition payments for legal services from a non-debtor entity); *In re Bestwall LLC*, No. 17-31795 (LTB) (Bankr. W.D.N.C. Nov. 2, 2017) [Docket No. 39] (same). Arguments alleging nothing "more than speculation" are insufficient to support finding an adverse interest. *See Chardon*, 536 B.R. at 804–05 (finding that "there [wa]s no suggestion that [debtors' counsel] [wa]s acting for the benefit of [the non-debtor affiliate] instead of the [debtors]" because of non-debtor affiliate's payment of the retainer).

### Conclusion

50.     Kirkland has met the standards required for retention under section 327(a) of the Bankruptcy Code. Kirkland is disinterested and does not hold an interest adverse to the Debtors' estates. Kirkland is incentivized to produce the best possible outcome for the Debtors, and the Debtors believe that Kirkland is the best choice of general bankruptcy counsel to achieve the Debtors' objectives in these chapter 11 cases. For the reasons set forth herein, the Debtors respectfully submit that Kirkland's retention effective as of the Petition Date should be approved.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court overrule the Objections and

enter the proposed Order authorizing the Debtors to retain and employ Kirkland.

Indianapolis, Indiana
Dated:  November 7, 2022

/s/ Jeffrey A. Hokanson

**ICE MILLER LLP**
Jeffrey A. Hokanson (Ind. Atty. No. 14579-49)
Connor Skelly (Ind. Atty. No. 35365-06) (admitted *pro hac vice*)
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone:   (317) 236-2100
Facsimile:    (317) 236-2219
Email:         Jeff.Hokanson@icemiller.com
                  Connor.Skelly@icemiller.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Emily Geier (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:         edward.sassower@kirkland.com
                  emily.geier@kirkland.com
                  derek.hunter@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Spencer A. Winters (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:         chad.husnick@kirkland.com
                  spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*