# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

|  |  |
|---|---|
| In re: | ) )   Chapter 11 |
| AEARO TECHNOLOGIES LLC, et al.,[1] | )   Case No. 22-02890-JJG-11 |
| Debtors. | ) )   (Jointly Administered)[2] |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR TORT CLAIMANTS – RELATED TO USE OF RESPIRATORS' BRIEF IN REPLY TO THE DEBTORS' OMNIBUS OBJECTION TO MOTIONS TO DISMISS CHAPTER 11 CASES

The Official Committee of Unsecured Creditors for Tort Claimants – Related to Use of Respirators (the "Respirator Committee") submits its brief in reply (the "Reply Brief") to the *Debtors' Omnibus Objection to the Motions to Dismiss Chapter 11 Cases* [Docket No. 1298] (the "Debtors' Objection" or "Objection") and to *The Disinterested Directors' Omnibus Response in Opposition to Motions to Dismiss* [Docket No. 1300] (the "Directors' Objection" or together with the Debtors' Objection, the "Objections"). The Respirator Committee previously filed its *Motion to Appoint a Trustee Under 1112(b)(1), or Alternatively for Dismissal* [Docket No. 1197] (the "Trustee Motion") and incorporates its contents by reference.[3] In support, the Respirator Committee states the following:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' First Day Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 7]. The location of the Debtors' service address for the purposes of these chapter 11 cases is: 7911 Zionsville Road, Indianapolis, Indiana 46268.
[2]   Collectively, the jointly administered proceedings shall be referred to herein as the "Bankruptcy Cases."
[3]   Capitalized terms not specifically defined herein have the meanings ascribed to such terms in the Trustee Motion.

## I.  INTRODUCTION

The Debtors claimed they filed these cases "in an efficient equitable manner."[4] They have not followed through. Instead, they spent nine months focused on protecting parent 3M Company from the civil justice system. Aearo's actions disregard the Supreme Court's terse dictum: "One of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985). Discovery has shown that Aearo didn't get the message.

Aearo's tactics were conceived and dictated by its parent, 3M Company. Those tactics have left these cases no further advanced today than on the petition date. Although the Debtors actions have bought time for the 3M Company, that same delay harmed every tort claimant in this case. Miners continue to die, and servicemen remain uncompensated for hearing loss.

Aearo also failed to take basic actions to protect its estate. Recent discovery shows a surprising lack of diligence in addressing key issues, lack of control over its most important assets, and lack of ability to make decisions, save as directed by 3M.

A debtor-in-possession is a fiduciary, and these Debtors have failed at the task. It is time for this Court to appoint a trustee.

## II.  FACTS ESTABLISHED SINCE THE FILING OF THE MOTION

1.  Since the Respirator Committee filed its Motion, the discovery process has revealed just how extensive 3M's control has been over this case, and how the Debtors' current management has failed to protect the value of the estate and the interests of creditors. Deposition testimony substantiates these conclusions:

---

[4]    *See* Castellano Dep. 104:21-23, attached as **Exhibit A**.

<u>Current Management Declined to Protect the Estate</u>

- Aearo's CRO refused to take simple actions to protect and increase the Debtors' assets, such as:

  - Collecting Aearo's $963 million receivable from 3M and putting the money in an interest-bearing account[5]
  - Inquiring into the possibility of selling Aearo's assets[6]
  - Responding to 3M's attempts in the MDL to place sole liability for the CAE Claims on the Debtors.[7]

<u>Aearo Ceded the Decision to File Chapter 11 to 3M</u>

- 3M exerted its influence on its subsidiaries to file for bankruptcy because 3M thought that—by Aearo's agreeing to assume all CAE liabilities under the Funding Agreement—it would absolve 3M of its combat arms earplug tort liabilities.[8]

<u>Management Failed to be Duly Diligent</u>

- Aearo's CRO (who was initially hired by 3M) has not conducted an independent review of the value of either the CAE or Respirator liabilities.[9]

<u>Aearo Does Not Control Its Most Basic Corporate Choices</u>

- 3M's Chief Legal Officer, Kevin Rhodes, concocted the idea of Aearo's filing bankruptcy. No Aearo employee even heard of the possibility until 3M hired additional directors for the Debtors in June 2022, one month before the bankruptcy filings.[10][11][12]

- 3M employees control nearly all of the Debtors' essential functions.[13]

- Aearo's CRO does not have unfettered access to the Debtors' own documents; they are stored on 3M's infrastructure. He does not think ensuring Debtors' control and access to their own documents are important enough for his attention. [14]

<u>Aearo had no Need for Bankruptcy Relief</u>

---

[5] *See* Castellano Dep. at 198:7-198:20, 199:13-21, 200:9-201:5, 208:14-209:4, 218:10-219:12, 221:17-222:7 attached as **Exhibit A**.

[6] *See Id*. at 75:11-76:5.

[7] *See Id*. at 183:11-24.

[8] *See* Will Dep. at 326:29-328:7 attached as **Exhibit B**.

[9] *See* Castellano Dep. at 136:13-137:11, 144:17-145:2, attached as **Exhibit A**.

[10] *See* Blaisdell Dep. at 74:12-18 attached as **Exhibit C**.

[11] *See* Dai Dep. at 79:16-85:6 attached as **Exhibit D**.

[12] *See* Will Dep. at 324:21-325:12, attached as **Exhibit B.**

[13] *See* Castellano Dep. at 40:20-41:12, 231:7-231:14, attached as **Exhibit A**.

[14] *See Id*. at 172:13-127:25.

- Aearo was a thriving business with 25% gross revenue growth in the four years before bankruptcy (and had paid only $30 million dollars related to both CAE and Respirator tort liabilities in the three years preceding the bankruptcy).[15]

- 3M freely admits to

  - Forum shopping[16]
  - Bankrupting the Debtors because it preferred bankruptcy's processes and cost efficiency to that of the civil justice system.[17]

2.  Taken together, the testimony gathered in discovery establishes that these are not independent debtors, but rather a set of conscripts commanded to stand between 3M and 3M's extremely large liabilities.

### III.   THE COURT SHOULD USE ITS DISCRETION TO APPOINT A TRUSTEE UNDER § 1112(b)(1)

3.  The Court must choose one of three alternatives:

- **Appoint a trustee** to move the Bankruptcy Cases forward under an independent fiduciary, expeditiously and fairly addressing creditors' claims;

- **Dismiss these cases** for cause, ultimately allowing 3M and the Debtors to reap delay's benefits while leaving hundreds of thousands of claimants worse off than they were prepetition; or

- **Maintain the status quo**, continuing the Debtors-in-possession and permitting 3M's continued manipulation of the Bankruptcy Cases for its sole benefit.

Appointing a trustee is the best remedy under the circumstances.

### A.  The Debtors' Conduct Meets the Seventh Circuit Standard for Cause Under § 1112(b)(1)

4.  The bankruptcy court has broad discretion to determine which remedy best serves creditors and the estate when a debtor-in-possession has not acted in the best interests of creditors

---

[15] *See Id.* at 102:21-104:9, 248:5-248:16.
[16] *See* Will Dep. at 315:21-316:15, attached as **Exhibit B**.
[17] *See Id.*

and the estate and cause under § 1112(b)(1) has been shown. *Woodlawn Community Development Corp v. Official Committee of Unsecured Creditors*, 613 B.R. 671 (Bankr. N.D. Ill. 2020).

5.    The Respirator Committee, the CAE Committee, and the Debtors have each propounded a separate standard to show cause under 1112(b)(1) in the Seventh Circuit. Regardless which standard the Court applies, cause exists for the appointment of a trustee in the Bankruptcy Cases.

### i.    "Cause" exists under the *Grieshop* test for bad faith.

6.    The Respirator Committee and the Debtors agree that courts in the Seventh Circuit apply a totality of the circumstances test on a case-by-case basis when determining cause. However, the parties sharply disagree regarding exactly what the totality of the circumstances shows here.

7.    When considering the totality of the circumstances on a case-by-case basis, courts in the Seventh Circuit recognize that bad faith constitutes "cause" under § 1112(b)(1). *See Matter of Grieshop*, 63 B.R. 657, 662 (N.D. Ind. 1986); *In re Loeb Apartments*, 89 F.2d 461(7th Cir. 1937); *In re Capital Equity Land Trust 2140215,* 646 B.R. 463 (Bankr. N.D. Ill. 2022); *In re Lake Michigan Beach Pottawattamie Resort LLC,* 547 B.R. 899 (Bankr. N.D. Ill. 2016).

8.    The *Grieshop* factors guide the court's totality of the circumstances inquiry.[18]

9.    Here, the Debtors exhibited bad faith in undertaking the chapter 11 bankruptcy process which has persisted post-petition.

---

[18] The fourteen factors where bad faith may exist: 1. The debtor has few or no unsecured creditors; 2. There has been a previous bankruptcy petition by the debtor or a related entity; 3. The pre-petition conduct of the debtor has been improper; 4. The petition effectively allows the debtor to evade court orders; 5. There are few debts to non-moving creditors; 6. The petition was filed on the eve of foreclosure; 7. The foreclosed property is the sole or major asset of the debtor; 8. The debtor has no ongoing business or employees; 9. There is no possibility of reorganization; 10. The debtor's income is not sufficient to operate; 11. There was no pressure from non-moving creditors; 12. Reorganization essentially involves the resolution of a two-party dispute; 13. A corporate debtor was formed and received title to its major assets immediately before the petition; and 14. The debtor filed solely to create the automatic stay. *Matter of Grieshop*, 63 B.R. 657, 663 (N.D. Ind. 1986).

10. The Debtors' conduct cannot be considered separate and apart from that of its parent. Before the bankruptcy filing, the Debtors effectively functioned as a division of 3M. Most of Aearo's critical company functions (*i.e.*, accounting, finance, treasury, risk management, human resources) occurred at the 3M, not the Aearo level. Indeed, even Aearo's president has a 3M email address. Notably, the Court determined at the Debtors' counsel retention hearing that, "at least at this point [Aearo's and 3M's] goals are aligned." See Debtors' Objection ¶ 112 (citing Tr. of Hr'g Held Nov. 10, 2022, at 14:10–11 [Docket No. 795]). By itself, the goals being aligned is inoffensive; the problem lies in the fact that Aearo and 3M have failed to make progress on the creditors' goals.

11. Ultimately, when faced with mounting bellwether verdicts in the MDL, 3M resolved to do four things to protect itself, using the Debtors as pawns:

- ***Change the forum*** for the resolution of Earplug liabilities from the MDL to the Bankruptcy Court;

- ***Shift all liability*** away from 3M to the Debtors by contriving the Funding Agreement before filing;

- ***Retain control*** over the Debtors and the process by, among other actions, installing their own, long-time MDL counsel as counsel for the Debtors, pre-planning the bankruptcy filing without consulting the Debtors and appointing puppet "independent" directors for the Debtors; and

- ***Further shield itself*** from liability by seeking a preliminary injunction for itself—through the Debtors—immediately upon filing.

12. Weighing the *Grieshop* factors against 3M's and the Debtors' concerted actions reveals ample evidence of bad faith. In their analysis, the Debtors have given undue weight to several factors that are either neutral to the outcome or simply inapplicable to the Bankruptcy

Cases here.[19] A brief summary of the factors relevant to the Bankruptcy Cases that indicate bad faith follows:

- ***Improper prepetition conduct.*** Extensive testimony in both the Bankruptcy Cases and the MDL filings demonstrates 3M was in control of the Debtors and claiming Aearo had no liability for Earplug Claims. Likewise, prior to filing, the Payor Group handled the Respirator Claims litigation exclusively, and the Debtors were not actively participating.

  Fast forward to the elaborate planning and creation of the Funding Agreement by 3M orchestrated without the Debtors' knowledge or input and transposing all liabilities away from 3M and onto the Debtors.

- ***Filing to effectively evade court orders***. 3M and Aearo sought to remove themselves from this country's normal tort system:

  - o The bankruptcy filings stayed all actions against the Debtors.

  - o The Debtors and 3M also sought from this Court – but failed to get – an injunction barring pursuit of 3M in all other courts, including the MDL

  - o 3M tried to use the bankruptcy filings to stay state court Respirator Claims against all other defendants, including the Debtors' previous equity owners. Forgetting their fiduciary duty to creditors, the Debtors resisted entry of a simple agreed order allowing the Respirator Claimants to continue to pursue their claims against non-Debtor defendants.

- ***Few debts to non-moving creditors***. Claims submitted on behalf of the only moving creditors—the Respirator Claimants and the Earplug Claimants—exceed 230,000 individual claims and will easily surpass the value of the initial $1 billion trust established pursuant to the Funding Agreement. Other than the tort claims, the Debtors were generally current on their obligations.

- ***Possibility of reorganization***. The Debtors assert their stated goal is global claims resolution. However, reorganization possibilities are dim when the Debtors'

---

[19] Factors with either neutral or no weight for the Bankruptcy Cases include the number of unsecured creditors, no prior bankruptcy petition by the debtor or a related entity, petition filed on the eve of foreclosure, foreclosed property that is the sole or major asset of the debtor, the debtor has no ongoing business or employees, and insufficient operating income.

Objection states the gap between the parties is trillions of dollars. So long as the equity owner retains a veto over plan proposals, global resolution is unlikely.

- ***No pressure from non-moving creditors***. The Debtors concede in their Objection that they "have not faced meaningful pressure from their non-tort, unsecured creditors to date." Debtors' Objection ¶ 74, no. 11.

- ***Two-party dispute***. The two-party-dispute factor is generally used to argue that a debtor is using the bankruptcy system improperly because it needs only to deal with one creditor, which it could do outside of bankruptcy.  In this case, the Respirator Committee's two-party-dispute argument is slightly different. The Respirator Committee and its dying constituents have been largely ignored by the Debtors. Instead, the Debtors' focus on the Earplug Committee has eaten up time and resources to the detriment of the Respirator Claimants. Examples include:

    o The costly and time-consuming preliminary injunction hearing to shield 3M from the Earplug Claims.

    o Prematurely filing a claims estimation motion for Earplug Claims.

    o The Debtors refusal to produce any discovery to the Respirator Committee until the Motions to Dismiss were filed.

    o The Debtors' resistance to allowing the Respirator Committee to depose its CRO, either of the "disinterested" directors, or anyone else with knowledge relevant to the historical corporate relationship between 3M and the Debtors.

- ***Corporate debtor received title to its major assets immediately prior to petition***. Although the Debtors were not originally formed to accept 3M's liabilities, the Debtors were deconsolidated from 3M immediately prior to filing and made to assume all of 3M's liabilities in exchange for funding a $1 billion trust under the Funding Agreement.

- ***Filed solely to create automatic stay***. The Debtors undeniably made the filing of a preliminary injunction motion benefitting 3M the centerpiece of their first day motions in the Bankruptcy Cases.

13. Contrary to the Debtors' assertions in their Objection, when factors relevant to these cases are considered together, the totality of the circumstances demonstrates that the Bankruptcy Cases were filed to protect 3M by hindering tort claimants from pursuing claims against 3M.

14. Accordingly, cause exists pursuant to § 1112(b)(1) under the Seventh Circuit's totality of the circumstances test to appoint a trustee in the Bankruptcy Cases.

### ii.    Cause exists for lack of financial distress.

15. Alternatively, cause exists under the CAE Committee's analysis that relies upon a lack of financial distress on the part of the Debtors.

16. "The Bankruptcy Code was intended to provide relief for financially distressed debtors." *In re Scheffler*, 86 B.R. 576, 579 (Bankr. W.D. Wis. 1986).

17. Following the predominant totality of the circumstances test for cause in the Seventh Circuit, courts determine good faith by examining whether the case was filed to achieve "a legitimate reorganization objective within the scope of the Bankruptcy Code." *In re Liptak*, 304 B.R. 820, 828 (Bankr. N.D. Ill. 2004).

18. The Debtors' record for lack of financial distress is self-incriminating. Filing these cases had nothing to do with financial distress but everything to do with 3M's attempt to avoid liability. Evidence shows that the Debtors have been engaged in a thriving business for years paying their debts as they become due.

19. The Debtors minimize decisions from other circuits, such as the Third Circuit in *SGL Carbon*, for "their consideration of 'financial distress'" as just "one of many factors" in finding bad faith. Debtors' Objection ¶ 60; *See In re SGL Carbon Corp.*, 200 F.3d 154, 164 (3d Cir. 1999). However, the Seventh Circuit applies a totality of the circumstances standard for bad faith that considers "many factors."

iii.    **Cause exists for lack of reasonable prospects to confirm a chapter 11 plan.**

20.  Finally, the Debtors assert that the standard to show cause under § 1112(b)(1) turns solely on a debtor's reasonable prospect for reorganization success. However, the authority the Debtors cite still relies on a multi-factor totality of the circumstances analysis, and the Debtors overstate the Seventh Circuit's reliance on any one factor such as prospects for reorganization success.

21.  For example, the Debtors cite *MGN Co.* for their assertion that the key test in the Seventh Circuit is "whether the debtor has a sincere desire to reorganize and some reasonable possibility of success." *In re MGN Co., III*, 116 B.R. 654, 658 (Bankr. S.D. Ind. 1989). However, the *MGN* court conducted a complete *Grieshop* analysis and considered the debtor in that case's reorganization prospects as just one factor based on a totality of facts completely different from the circumstances here. *See id.* The debtors in that case had one major asset, an apartment complex, that was subject to foreclosure by the moving creditor, and the court found no evidence of filing to evade court orders. *See id.* The court also found there was "a reasonable likelihood for expeditious reorganization." *See id.*

22.  Here, the Debtors have demonstrated a complete unwillingness to move these cases forward. The Debtors' proclamation that "[t]he facts that exist today are the same that existed on the Petition Date" is precisely the problem and demonstrates cause for appointing a trustee. Debtors' Objection ¶ 77. The Debtors' primary goal – protective delay for 3M – has resulted in these cases remaining at a standstill.

23.  The Debtors also rely on *N.R. Guaranteed Ret.* for the concept that "there is every reason to presume that most chapter 11 cases are filed because the debtors are in genuine need of bankruptcy protection." *See In re N.R. Guaranteed Ret., Inc.*, 112 B.R. 263, 273 (Bankr. N.D. Ill.

1990). Once again, the facts in *N.R. Guaranteed* are wholly distinguishable from the facts that exist here. The debtor there was a single-asset entity with property subject to foreclosure that filed three weeks after its formation. *See id.* at 264. In stating that most debtors who file chapter 11 protection have a "genuine need of bankruptcy protection," the court considered the "substantial costs on the debtor—increased legal and accounting expenses" and "diversion of staff time for bankruptcy matters." *See id.* at 273. Such is not the case for the Debtors here, who have their bankruptcy costs completely covered by the Funding Agreement and have access to extensive administrative resources provided by 3M through the Shared Services Agreement.

24.   While the Debtors claim to have "worked diligently since the Petition Date to further enhance their prospects for reorganization," the Debtors' record in the Bankruptcy Cases to date offers no comfort that they will make good on their promises to confirm a plan in a timely manner. Debtors' Objection ¶ 79. The only evidence the Debtors offer in support of such a statement is their engagement in "extensive, good faith mediation." *See id.* However, the Debtors have entirely failed to "engage" with the Respirator Committee and have completely left the Respirator Committee out of the mediation process even though the Respirator Committee is a named mediation party.

25. Accordingly, considering the Debtors' reasonable prospects of successful reorganization under the totality of the circumstances in the Bankruptcy Cases as required in the Seventh Circuit, cause exists for the appointment of a trustee under § 1112(b)(1).

## B.  Appointing a Trustee Under § 1112(b)(1) is in the Best Interests of Creditors and the Estates, and is the Best Remedy

26.   Contrary to the Debtors' assertion that cause does not exist for dismissal under §1112(b)(1), the Respirator Committee has demonstrated, apart from the CAE Committee, sufficient cause to appoint a trustee either under § 1112(b) or independently under § 1104(a).

27.   A trustee is the most effective means to move these cases forward. What is past is prologue: as the Debtors continue to incur setbacks that negatively impact 3M, such as the denial of the preliminary injunction motion, 3M will again cause the Debtors to change course to best protect its interests. In fact, 3M has chosen to change its strategy for the Bankruptcy Cases to delay. Time is money for any tort defendant, and time is toxic for plaintiffs, especially the Respirator Claimants. Thus, the only viable choice to reset these cases is to remove the Debtors from 3M's control and appoint a trustee as an independent fiduciary.

28.   A trustee does not benefit from delay. A trustee will have independent counsel, not the same counsel as 3M. A trustee will act for all parties' welfare, not merely 3M's.

29.   Appointing a trustee is in the best interests of creditors and the estates because it will redirect the Debtors' focus from serving 3M, a non-debtor, to instead begin serving the victims in this case—the Respirator Claimants and the Earplug Claimants.

30.   The Court has repeatedly given the Debtors the opportunity to act responsibly to create resolutions throughout the Bankruptcy Cases. The Court noted at the Debtors' counsel retention hearing in November 2022,

> if the bankruptcy becomes . . . not an alternative to resolving the mass tort litigation through a bankruptcy and mediation, but instead is a stall tactic, the United States Trustee is active in the case and the creditors  have many available tools, such as all I have mentioned, exclusivity and dismissal of the case and bad faith.

Tr. of Hr'g Held Nov. 10, 2022, at 22:10–16 [Docket No. 795].

31.   A trustee would pursue causes of action that benefit the estate, such as investigating whether the Funding Agreement was, in part, a fraudulent transfer. A trustee would seek to collect the approximate $1 billion receivable from 3M and investigate the irresponsible claim by the Debtors that 3M does not have to honor the Funding Agreement if a trustee is appointed. Debtor's Objection ¶ 108. A trustee can also resolve unanswered questions surrounding the indemnity

agreement, address issues stemming from lack of discovery produced to the Respirator Committee by the Debtors, and overcome the lack of independence by the Debtors' board which is controlled by 3M.

**i.      § 1104(a) best interests of creditors and the estate legal standard**

32.   As stated in the Trustee Motion, once a court determines that cause for dismissal exists pursuant to § 1112(b)(1), the bankruptcy court has discretion to appoint a trustee under § 1104(a) "'when to do so would serve the parties' and estate's interests.'" Trustee Motion ¶ 18; *See Woodlawn Cmty. Dev. Corp. v. Official Comm. of Unsecured Creditors (In re Woodlawn Cmty. Dev. Corp.)*, 613 B.R. 671, 675 (N.D. Ill. 2020) (J. Shah) (citing *In re Marvel Entertm't Grp., Inc.*, 140 F.3d 463, 474 (3d. Cir. 1998)).

33.   Section 1104(a) of the Code provides that

> on request of a party in interest, . . . the court shall order the appointment of a trustee—
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after commencement of the case, or similar cause, . . . or
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate.

11 U.S.C. § 1104(a).

34.   The Respirator Committee agrees with the Debtors' assertion that under chapter 11, there is "a strong presumption that the debtor is to remain in possession." Debtors' Objection ¶ 103; *See In re LHC, LLC*, 497 B.R. 281, 291 (Bankr. N.D. Ill. 2013). Notably, however, "the willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'" *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) (citing

*Wolf v. Weinstein*, 372 U.S. 633, 651 (1963)). Here, the assurances *Weintraub* demands from a debtor's officers and managing employees to fulfill their fiduciary responsibilities are missing.

35.  As a fiduciary for its creditors, a debtor-in-possession's "fiduciary obligation includes refraining from acting in a manner which could damage the estate, or hinder a successful reorganization of the business." *See In re Parker Grande Development, Inc.*, 64 B.R. 557, 560 (Bankr. S.D. Ind. 1986). Debtors' (and owners') actions damaging the estate are exactly what the Trustee Motion is about.

36.  The Debtors further assert, without citing authority, that the standard for trustee appointment is "whether such appointment would better achieve the goal of producing a confirmable chapter 11 plan." Debtors Objection ¶ 104. More precisely, the correct standard courts apply when evaluating the "interests" standard under § 1104(a)(2) requires

> "a close and careful scrutiny of a debtor-in-possession's prior and present conduct" to make "an **assessment of the overall management** of the debtor corporation; the experience, skills and competence of the debtor-in-possession to manage; the **performance of the debtor-in-possession** both past and present, and the **trust and confidence in the debtor-in-possession** by members of the business community with whom debtor-in-possession has had business transactions and must, of necessity, continue to have the same."

*See id.* at 561. (emphasis added)

37.  "A trustee can be appointed based solely on the creditor's lack of confidence in the debtor." *See id.* (citing *In re Sillerman*, 605 B.R. at 655) (internal quotation marks omitted)).

38.  "The powers and duties of a trustee are extensive." *See Weintraub*, 471 U.S. at 352. When a trustee is appointed, the trustee is vested with the boards' powers and responsibilities to run the company. A trustee is "empowered to sue officers, directors, and other insiders to recover, on behalf of the estate, fraudulent or preferential transfers of the debtor's property," and "subject to court approval, he may use, sell, or lease property of the estate." *See id.* Thus, contrary to the

Debtors' assertion, the trustee would have the authority to approve a plan and make a funding request. Debtors' Objection ¶ 108.

39. Finally, while the Debtors assert that the movant must establish the grounds for the appointment of a trustee under § 1104(a) by clear and convincing evidence, the Seventh Circuit has not specifically addressed the standard for burden of proof in this context. *See In re Woodlawn,* 613 B.R. at 681. In *Woodlawn*, the district court for the Eastern Division of the Northern District of Illinois recently followed other courts[20] in holding that the preponderance of the evidence standard that applies in most civil cases as the default standard also applies as the evidentiary standard for the appointment of a trustee. *See id.*

### ii.    The Debtors' intentions for the bankruptcy process

40. Examining the totality of the circumstances reveals Debtors controlled by a savvy parent company that intentionally created a "free fall" bankruptcy marked by no sense of urgency in reaching a consensual plan. As the Debtors and 3M repeatedly emphasize, they entered the bankruptcy process eyes wide open, after years of contentious litigation and impasse in both the MDL and in decades of Respirator litigation. 3M and the Debtors *knew* the challenges a complex bankruptcy case would present. With claims of this magnitude, and with counsel deeply experienced in these matters, 3M and the Debtors nonetheless *chose* to start a free-fall bankruptcy, rather than entering the court immediately with fair and workable solutions. The result of this choice has wasted nine months and tens of millions of dollars.

---

[20] Courts in other circuits, including in the 8th and in the 1st Circuits have concluded that preponderance of the evidence is the proper standard for appointment of a chapter 11 trustee. *See In re Keeley & Grabanski Land P'ship,* 455 B.R. 153, 163 (B.A.P. 8th Cir. 2011) ("[W]e conclude that the proper standard for a party seeking the appointment of a chapter 11 trustee is preponderance of the evidence."); *Tradex Corp. v. Morse,* 339 B.R. 823, 832 (D. Mass. 2006).

### iii. Because of their conflict of interest with 3M, the Debtors have failed to properly carry out their fiduciary duties to creditors and to the bankruptcy estates.

41.   Control over the Debtors in these Bankruptcy Cases is retained by a party in direct conflict with the Debtors – its parent, 3M. The direct result of this conflict of interest has been the Debtors' recurring failure throughout the Bankruptcy Cases to properly exercise their fiduciary duties to their creditors and the bankruptcy estates.

42.   The Debtors' continued pursuit of delay and obstruction for 3M's benefit, rather than pursuing expediency and efficiency for the Debtors' creditors, has contravened the Court's direction on that very subject.

> Although we don't have an LTL situation with regard to the CAE Committee as far as terminal illnesses, we do have that with the Respirator Committee, where there's been issues that, as much time as we'd like to spend, there's issues here. People may never see a recovery. They may pass before anything happens, and that's— can't happen, because there does appear to be valid claims here that need to be compensated.

Tr. of Hr'g Held Nov. 10, 2022, at 23:19–24:2 [Docket No. 795]. The harm is significant and continuing.

43.   Despite their repeated claims that they sought bankruptcy to avoid the litigious nature of the MDL process so that they could equitably resolve creditors' claims, the Debtors have repeatedly chosen the most litigious approaches available in the Bankruptcy Cases rather than properly utilizing the unique tools available under the Bankruptcy Code to reach consensus and settlement. Examples of the Debtors' disregard for their fiduciary duties in order to protect 3M include the following:

- Seeking and appealing this Court's preliminary injunction ruling while claiming that the appeal's outcome is determinative in reaching global claims resolution;

- Choosing to pursue an expensive employment application hearing to ensure 3M's legal counsel, Kirkland and Ellis, could continue to protect 3M's interests by controlling the representation of the Debtors in the Bankruptcy Cases;

- Choosing to litigate instead of negotiate the claims valuation process by filing claims bar date and claims estimation motions without first attempting the far more cost-effective method of seeking areas of agreement through negotiations with creditors; and

- Responding, with many months of resistance and stall tactics, culminating in a contested hearing before this Court, to what should have been an expedient, straightforward agreed order sought by the Respirator Committee that automatic stay protections in the Bankruptcy Cases do not apply to already pending Respirator Claims against non-Debtor third parties.

44.   The Debtors have made their loyalties to 3M crystal clear, even going so far as to state that the Court's decision to appoint a trustee in the Bankruptcy Cases "would effectively void the Funding Agreement." *See* Debtors' Objection ¶ 108. For explanation, the Debtors assert, "the Funding Agreement only requires 3M to fund a plan of reorganization that is approved by the Debtors' Boards." *See id.* With 3M in control of the Debtors and calling the shots, such statements raise serious questions about the Debtors' ability to independently fulfill their fiduciary duties to creditors and the bankruptcy estates.

45.   Meanwhile, time continues to tick away, as more than 40 Respirator Claimants have died since the petition date nearly nine months prior to the scheduled dismissal hearing in these cases.

### iv.    Silence is not progress toward confirming a consensual plan nor mediating in good faith.

46.   The Debtors' argument that it is too "early" in the bankruptcy process to negotiate a consensual plan with creditors highlights their irresponsibility and reinforces the need to remove

them from possession. In nine months they have not managed even to circulate a simple plan term sheet. There is no more time to waste.

47.  In tandem, the mediation process, so touted by the Debtors for their avowed "good faith" negotiation efforts, has thus far left the Respirator Committee in the dark. Silence is not good faith negotiation. The Respirator Committee has not been invited to participate in the so-called "ongoing" meetings between the Debtors, the CAE Committee, and the mediators. Not a single proposal or offer of settlement from the Debtors to the Respirator Committee has been forthcoming through the mediation process. Instead, once again, delay and protection of their non-debtor parent and prior equity owners have been the Debtors' primary goals, not settlement.

## IV.   APPOINTMENT OF A TRUSTEE IS APPROPRIATE UNDER § 1104(a)

48.  Even if the Court determines dismissal pursuant to § 1112(b) is not warranted, appointment of a trustee is independently appropriate under § 1104(a). The Respirator Committee asserts through its pleadings and evidence presented in the Bankruptcy Cases that the same grounds dictate the appointment of a trustee under either statute.

49.  Section 1104(a) of the Code provides that

on request of a party in interest, . . . the court shall order the appointment of a trustee—
(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after commencement of the case, or similar cause, . . . or
(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

50.  Appointment of a trustee is mandatory upon a specific finding of cause under §1104(a)(1). However, determination of cause under § 1104(a)(1) is within the bankruptcy court's discretion. *See In re Marvel Entertm't Grp., Inc.*, 140 F.3d 463, 472 (3d. Cir. 1998) (citing *In re*

*Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989)). The four enumerated types of misconduct in § 1104(a)(1) that constitute cause for fraud, dishonesty, incompetence, and gross mismanagement cover a wide range of misconduct and are not exclusive. *See id.* Courts have also found grounds that cause exists for misconduct including conflicts of interest,[21] a failure to discharge fiduciary duties,[22] acrimony between debtors and creditors,[23] and a debtor's unwillingness to pursue causes of action belonging to the estate.[24] Here, as the Respirator Committee has outlined in the § 1112(b) analysis above, more than ample evidence of the Debtors' misconduct demonstrates cause for the appointment of a trustee pursuant to § 1104(a)(1).

51.  When seeking the appointment of a trustee directly under § 1104(a), and even if the Court does *not* find cause exists under § 1104(a)(1), the Court may still appoint a trustee "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . . ."[25] Courts consider several factors in evaluating the "interests" standard under §1104(a)(2), including "the debtor's trustworthiness, the debtor's performance and likelihood of rehabilitation, the confidence of creditors and the business community in current management, and the costs and benefits of appointing a trustee." *In re Woodlawn Cmty. Dev. Corp.*, 613 B.R. 671, 688 (citing *In Re Sillerman*, 605 B.R. 631, 652 (Bankr. S.D.N.Y. 2019)). Further, "[a] trustee can be appointed based solely on the creditor's lack of confidence in the debtor." *See id.* (citing *In re Sillerman*, 605 B.R. at 655) (internal quotation marks omitted)). Here, as the Respirator Committee has outlined in the § 1112(b) analysis above, the same grounds under which the Court may find

---

[21] *See In re Biolitec, Inc.*, No. 13-11157 (DHS), 2013 Bankr. LEXIS 1377 (Bankr. D.N.J. 2013).

[22] *See In re Sillerman*, 605 B.R. at 648.

[23] *See In re Marvel*, 140 F.3d at 472–73.

[24] *See In re LHC, LLC*, 497 B.R. 281, 292 (Bankr. N.D. Ill. 2013).

[25] 11 U.S.C. § 1104(a)(2). The same flexible discretionary standard applies whether the court evaluates a decision to appoint a trustee under § 1112(b) or directly under § 1104(a)(2) and "gives the bankruptcy court discretion to appoint a trustee 'when to do so would serve the parties' and estate's interests.'" *See Woodlawn Cmty. Dev. Corp. v. Official Comm. of Unsecured Creditors (In re Woodlawn Cmty. Dev. Corp.)*, 613 B.R. 671, 675 (N.D. Ill. 2020) (J. Shah) (citing *In re Marvel Entertm't Grp., Inc.*, 140 F.3d 463, 474 (3d. Cir. 1998)).

that appointment of a trustee is in the best interests of creditors and the estates pursuant to § 1112(b) dictate that appointment of a trustee is in the interests of creditors and other interests of the estate under § 1104(a)(2).

## V. THE DOCTRINE OF LACHES IS INAPPLICABLE

52.   The Debtors' claim that the equitable defense of laches bars the Trustee Motion must be denied. Debtors' Objection ¶ 94.

53.   "The mere passage of time is insufficient . . . to establish laches." *White v. Boston*, 104 B.R. 951, 957 (S.D. Ind. 1989). The movant bears the burden to show that the party's "delay in asserting a right was inexcusable, *and* that the debtor was thereby prejudiced." *See id.* (citing *In re Petty*, 93 Bankr. 208, 210 (9th Cir. B.A.P. 1988); *In re Stanke*, 41 B.R. 379, 381 (Bankr. W.D. Mo. 1984)).

54.   The Debtors assert that a motion to dismiss or appoint a trustee should have been filed during the preliminary injunction hearing, which was held August 15-17, 2022, with the Court's decision being rendered on August 26. They neglect to mention that the Respirator Committee was not a party to that motion because it did not exist until the U. S. Trustee's appointment on August 30. No unofficial respirator committee existed before that time, either. The doctrine of laches simply is not available to the Debtors.

55.   The Trustee Motion was timely filed. There was no delay in filing the claim, and the filing resulted in no undue prejudice to the Debtors. Indeed, the Debtors and 3M have used the time to their considerable advantage in seeking to carry out their program of delay and owner favoritism.

# VI.   CONCLUSION

At the start of these cases, the Respirator Committee was willing to give the extremely close ties between 3M and the Debtors a chance to work for everyone's benefit. Instead, the Debtors and their owners focused on benefiting themselves, to the creditors' detriment. The situation must be corrected before more time and money are wasted. This Court should order the appointment of a trustee.

Respectfully submitted by:

/s/   *Michael R. Rochelle*
Michael R. Rochelle (Admitted *Pro Hac Vice*)
Kevin D. McCullough (Admitted *Pro Hac Vice*)
Shannon S. Thomas (Admitted *Pro Hac Vice*)
Tara L. Bush (Admitted *Pro Hac Vice*)
Rochelle McCullough, LLP
325 North Saint Paul St., Suite 4500
Dallas, Texas 75201
Telephone: (214) 580-2525
Facsimile: (888) 467-5979
Email: buzz.rochelle@romclaw.com
Email: kdm@romclaw.com
Email: sthomas@romclaw.com
Email: tbush@romclaw.com

COUNSEL FOR THE RESPIRATOR
COMMITTEE

Curt D. Hochbein
Mattingly Burke Cohen & Biederman LLP
155 E. Market St., Suite 400
Indianapolis, IN 46204
Phone: (317) 759-5035
Email: curt.hochbein@mbcblaw.com

INDIANA COUNSEL FOR
THE RESPIRATOR COMMITTEE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2023, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties through the Court's Electronic Case Filing System, which includes all parties in the Core Group other than those listed below. Parties may access this filing through the Court's system.

I further certify that on April 6, 2023, a true and correct copy of the foregoing was either mailed by first-class U.S. mail, postage prepaid, or electronic mail as indicated and properly addressed to the following remaining parties in the Core Group:

*/s/ Michael R. Rochelle*
Michael R. Rochelle

**United States Department of Defense**
Attn:  Robert Wald
United States Army Legal Services Agency
Gunston Road 9275
Fort Belvoir, VA 22060

**United States Department of Veterans Affairs**
Attn:  Shaquana L. Cooper
Information & Administrative Law Group 810
Vermont Avenue, NW, 11th Floor
Washington, DC 20420

**Aearo Technologies, LLC**
Attn: John Castellano
Email: jcastellano@alixpartners.com

**Kirkland & Ellis LLP**
Attn:  Nicholas A. Binder
Email: Nicholas.binder@kirkland.com