UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| IN RE: | . | Case No. 22-02890-JJG-11 |
| | . | (Jointly Administered) |
| AEARO TECHNOLOGIES, LLC, | . | |
| et al., | . | 116 U.S. Courthouse |
| | . | 46 E. Ohio Street, Room 116 |
| Debtors. | . | Indianapolis, IN  46204 |
| | . | |
| | . | September 27, 2023 |
| | . | 1:30 p.m. |
| . . . . . . . . . . . . . | | |

TRANSCRIPT OF APPLICATION FOR PAYMENT OF
ADMINISTRATIVE EXPENSES PURSUANT TO SEC. 503 FOR
SUBSTANTIAL CONTRIBUTION CLAIMANTS [2080]
BEFORE HONORABLE JEFFREY J. GRAHAM
UNITED STATES BANKRUPTCY COURT CHIEF JUDGE


TELEPHONIC APPEARANCES:

For the Debtors:          Kirkland & Ellis, LLP
                          BY:  SPENCER A. WINTERS, ESQ.
                          300 North LaSalle
                          Chicago, IL  60654

For the U.S. Trustee:     Office of the U.S. Trustee
                          By:  HARRISON E. STRAUSS, ESQ.
                          46 E. Ohio street, Suite 520
                          Indianapolis, IN  46204

For Substantial           Quinn Emanuel Urquhart & Sullivan, LLP
Contribution Claimants:   By:  PATRICIA B. TOMASCO, ESQ.
                          711 Louisiana Street, Suite 500
                          Houston, TX  77002


Audio Operator:           Heather Heiser-Davis

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

```
TELEPHONIC APPEARANCES (Cont'd):

For Aylstock, Witkin:      Aylstock, Witkin, Kreis &
                             Overholtz, PLLC
                           By:  BRYAN AYLSTOCK, ESQ.
                           17 E. Main Street, Suite 200
                           Pensacola, FL  32502

For Judy Weiker,           Kite Law, PC
Independent Fee            By:  ANDREW H. KITE, ESQ.
Examiner:                  160 North Main Street
                           Waynesville, NC  28786


                         - - -
```

1          THE COURT:  Ah, here we go.  Excellent.

2          All right.  How is everyone?

3          MS. TOMASCO:  Good, Your Honor.

4          MR. STRAUSS:  Good, Your Honor.

5          THE COURT:  All right.  Are we ready to begin?

6          MR. STRAUSS:  Yes, Your Honor.

7          MS. TOMASCO:  Yes, Your Honor.

8          THE COURT:  All right.  Now I will, before I begin,

9  give you a preface.  Our latest very exciting and riveting

10  guidance with regard to video conferencing is that it can be

11  done, but if a witness is to testify, then the proceeding can

12  only include parties, attorneys, and those witnesses.  So I

13  don't know if we intend on having witnesses testify today.  But

14  to the extent we do, I will need to have anyone who is not one

15  of those people please disconnect.

16          I apologize, but this is as far as the government has

17  given us, and even though we might shut down, I'm still going

18  to follow what the government tells me to do.  So with that as

19  a preface, why don't I go ahead and call this afternoon's case.

20          It is Case Number 22-2890, Aearo Technologies, LLC,

21  et al.  And this is a continued hearing on an application for

22  payment of administrative claim under 503 for substantial

23  contribution claimants with an objection thereto filed by the

24  United States Trustee.

25          May I have appearances by those who intend to

1  participate this afternoon.

2          MS. TOMASCO:  Your Honor, this is Patty Tomasco with

3  Quinn Emanuel on behalf of the Substantial Contribution

4  Claimants.  I can read them all, but I'm hoping we can refer to

5  the pleadings instead.

6          THE COURT:  Okay.  That's fine.

7          MR. STRAUSS:  Harrison Strauss for the United States

8  Trustee, Your Honor.

9          THE COURT:  Thank you.

10         MR. KITE:  Your Honor, Andy Kite for Judy Wolf

11  Weiker, the Independent Fee Examiner, to the extent I am

12  necessary.

13         THE COURT:  Thank you.

14         MR. WINTERS:  Good afternoon, Your Honor.  Spencer

15  Winters with Kirkland Ellis LLP on behalf of Aearo.

16         THE COURT:  Thank you.

17         All right.  I'm assuming that's the universe.

18         I have reviewed both the application, the objection

19  thereto, and the response that was recently filed so I'm

20  relatively up to speed.  I guess it makes sense, Ms. Tomasco,

21  are you going to be speaking on behalf of the claimants, or are

22  there other voices which may join in?

23         MS. TOMASCO:  Your Honor, I'm sure that if I don't

24  get it right, other voices will join in because they are here

25  on the Zoom, so they have that opportunity.  I'm not going to

1  presuppose that they won't have corrections to whatever I say.

2           THE COURT:  Okay.  And, yes, that's fine.  But to the

3  extent someone decides to exercise that right, I do ask that

4  you please state your name and who you represent when you do

5  that, just for the record.

6           With that being said, why don't you give me an

7  opening statement, Ms. Tomasco?  I'll let Mr. Strauss respond,

8  and we'll take it from there.

9           MS. TOMASCO:  Thank you, Your Honor.

10          The substantial contribution claimants are listed in

11  the various pleadings.  I can go through them, or real quickly,

12  Otterbourg, Rubin and Levin, Seeger Weiss, Fishman Haygood,

13  Quinn Emanuel, Bailey Glasser, Aylstock Witkin, Caplin

14  Drysdale, Clark Love Hutson, and Aylstock Witkin on its own

15  account.

16          Approximately 10, well 9 law firms and 10 line items

17  of fees, and so we can define the universe before we get going

18  of what is really contested at this point.  What is not

19  contested is the pre-CAE period from 7/26/22 to 9/2/22.  That

20  was primarily responding to the debtors' motion for preliminary

21  injunction.

22          What is disputed is -- of course, there's a big gap.

23  From 9/3/2022 to 6/9/23, even though that time period is long,

24  what we're really talking about are the efforts in the

25  claimants in the motion to dismiss.  So that is what is still

1  contested by the U.S. Trustee.

2        What is clear to me, though, is that the pre-CAE

3  period is not contested.  I understand the U.S. Trustee wants

4  to submit all the fees through the fee examiner and we have

5  previously, in email correspondence a couple of months ago.  So

6  that's not really an issue either.  We do have still a small

7  issue with respect to certain law firms not having leads data

8  and leads data is software that allows fee entries to be

9  searched for the convenience of a fee examiner.

10        So that's the universe that we're dealing with.

11  We're dealing with, after the appointment of the CAE Committee,

12  the effective date of the CAE Committee's professional's

13  retention.  That is still contested.  But if you look at the

14  U.S. Trustee's objection, it's only contested to the extent

15  that the efforts of the substantial contribution claimants are

16  duplicative of the CAE Committee's retained professionals.

17        So with that backdrop, we can start with where we

18  are, in my view, with an opening statement, and that is the

19  substantial contribution of the substantial contribution

20  claimants is not contested.  And why is that?

21        Well, after we filed the substantial contribution

22  application in June of 2023, in the MDL mediation, a settlement

23  was reached and that is at MDL ECF Number 3820.  There is a

24  settlement where the 3M entity --

25        THE COURT:  I will confess, I am aware of the

1  settlement.  I was rather interested when that came down and

2  you probably know more than I do, but I do know the parameters

3  of the settlement, yes.

4      MS. TOMASCO:  So there is a $6 billion settlement

5  when, at the beginning of the bankruptcy cases, the offer on

6  the table was 1 billion.  So by my math, that is a $5 billion

7  improvement on the treatment of the Combat Arms claimants in

8  this case.  Well, a lot of cases say, what are the elements of

9  a substantial contribution?  It is materially increasing the

10 assets available for claimants.  And I think that threshold is

11 clearly met here, and nobody has contested that the substantial

12 contribution standard has been met.

13     So what we're really coming down to is the post-CAE

14 duplication of --

15     THE COURT:  Well, I'm going to stop you there.  I

16 still have to make findings.  Don't just say it's not an issue

17 because I still have to make a finding that it is a substantial

18 contribution.  So I don't want you to think that that universe

19 is foreclosed from judicial review because I still have to.

20 Obviously, you've probably got an easier argument where there's

21 no standing objection, but even if there weren't an objection,

22 the Court has to review all the fees in the case.

23     So I want to caution you from saying that well, we

24 don't have to worry about that because I do have some

25 questions.  Your papers indicate that because of the settlement

1  reached in the MDL, which for the record is a significant and
2  wonderful development in the case and I think everyone should
3  be congratulated for their hard work.  But it has to be
4  qualified as substantial contribution.  It also has to be
5  direct.

6          And I'm not completely convinced that because the
7  bankruptcy was dismissed, the direct result is the settlement.
8  That might be a bit hard to get to.  You're going to have to
9  show me or try to explain to me more than that just the case
10  was dismissed, settlement was reached, therefore, we are
11  directly responsible for that and are entitled to substantial
12  contribution.

13          I'd love to say that my little order was directly
14  responsible for the settlement.  I'm not convinced that's true
15  because there was a lot of blood, sweat, and tears after my
16  order, but keep going.  But I just, I don't think it's a
17  foregone conclusion that everything's substantial contribution.
18  We're just looking at it as duplicative.

19          Substantial contribution encompasses more than just
20  duplicative services.  It also has to be of direct benefit to
21  the estate and it has to be narrowly construed.  So I can't
22  just say because a good result happened after that you're
23  automatically entitled to that money.

24          MS. TOMASCO:  I don't disagree, Your Honor.  I will
25  just say for the record, this hearing was set via Zoom.  We had

1 wanted an in-person hearing.  We were told this hearing was not

2 evidentiary.  And so we do not intend to present evidence.

3 That's the communication we had with chambers when the original

4 setting was had.

5          THE COURT:  I'm aware, but you still have to argue

6 and make points.  I'm not going to contest that -- yes.

7          MS. TOMASCO:  Okay.  Your Honor.  So moving on.

8          So the substantial contribution elements are the

9 substantial contribution on behalf of the claimants.  In this

10 case, the claimants are the clients of the applicant law firms

11 who, pre-CAE period when there was no Committee, banded

12 together to overcome the debtors' very substantial litigation

13 position with respect to the preliminary injunction to extend

14 the automatic state to 3M.

15          That has not been contested by the U.S. Trustee.

16 That was the beginning of the ability of the MDL court to then

17 implement the MDL mediation, which ultimately led to the $6

18 billion settlement.  So that was a direct and quantifiable

19 result of the pre-CAE Committee efforts of these law firms.

20          So they incurred, and this has been an element of the

21 substantial contribution cases in a lot of respects before the

22 Committee is even appointed.  The efforts of claimants to

23 countermand the debtors' substantial litigation effort that led

24 directly to the re-implementation of the MDL settlement here.

25 That is what is a direct and quantifiable result because

1  without that MDL mediation would not have gotten restarted.  We

2  would be dealing in hotly contested estimation motions.

3          THE COURT:  May I ask a question on that, though?

4          My recollection, and again, you've all lived it, so

5  I'm going off memory.  At the point in which, and I'm going to

6  focus on the pre-CAE formation.  So this is largely the

7  Preliminary injunction TRO type hearing.  The MDL mediation at

8  that point was ongoing.  Is that correct?

9          MS. TOMASCO:  At that point, the MDL mediation was

10 not ongoing.

11         THE COURT:  Okay.  So when the bankruptcy first

12 started, the MDL had stopped.

13         MS. TOMASCO:  Correct.  Because of the stay, except

14 to the extent that it was continuing with respect to 3M.  And

15 Mr. Aylstock will correct the record on that.  But as far as

16 the mediation is concerned, the MDL mediation, that had

17 restarted in earnest after the preliminary injunction was

18 defeated.

19         THE COURT:  Yes, they restarted.  It did restart and

20 then it stopped again because they were at an impasse.  And

21 then just before the hearing on the eve of the motion -- the

22 time frames are confusing because it stopped, started, stopped,

23 started, stopped, started.  And again, I don't think it's easy

24 to say that when we're just saying a pre-MDL or a pre-CAE

25 foundation, yes, it was going on, or it maybe started after

1  that, but it also came to a screeching halt after that until
2  just before the motion to dismiss.

3          So, again, I agree that the MDL mediation ultimately
4  was incredibly successful, but I have to, in order to allow a
5  substantial contribution claim, make a finding that the efforts
6  of the law firms.  That you represent, that all of you are
7  representing here was directly responsible for that or directly
8  part of that.  And that's part of the part.  One of the reasons
9  I'm going to ask questions today is because I need to become
10 comfortable with that.

11         There's a couple of things that I'm really going to
12 need more answers to, and I don't want to steal Mr. Strauss's
13 thunder.  But one is, it has to be direct, and I need to have
14 arguments why it's direct.

15         And then, the second is, it's not quite duplication,
16 but from my perspective, I'm struggling with the fact that
17 ultimately a CAE Committee was appointed and we also had a
18 respirator committee.  And we had a very active United States
19 Trustee in these cases.  And without question, there was work
20 performed, but I'm struggling with how to process -- how do I
21 do a substantial contribution claim in this instance, where all
22 the other professionals were also active and what is the role
23 then, or how do I tie in having an official committee, two
24 official committees, representing the estate and then allowing
25 compensation to an ad hoc committee when they're dividing work?

1    I struggle with that a little bit because we had a very active

2    well-represented CAE Committee, the same for the Respirator

3    Committee, and the Trustee also joined in the motion to

4    dismiss.  So I'm struggling with how to do that because then

5    whose efforts were directed (indiscernible)?  Were everyone's?

6    In big cases, do we not have to have committees?  Do we just

7    wait until the end and get money.

8            There's no oversight of an ad hoc committee where

9    there is oversight of official committees for the Court.  They

10   have to do leads billing in mega cases if they're on the CAE

11   Committee.  Those are the issues that I'm going to struggle

12   with, and if that will help you focus your arguments to me,

13   that would be greatly beneficial because that's the issue I'm

14   having is, is I have to realize that whatever I rule today will

15   come back to haunt me because I think you pointed out in your

16   papers as well, there's no binding Seventh Circuit law.

17           So at least in our circuit, you're just out there on

18   how to define substantive contribution and how to apply it.

19   And I have to be very cognizant of the fact that what I do here

20   will be brought against me with another one, because without

21   binding authority, they'll look for persuasive.  And look,

22   here's a Judge Graham case.  So I want to make sure I touch all

23   the issues that I see before I make a decision.

24           MS. TOMASCO:  I understand, Your Honor.  With respect

25   to the MDL mediation, it was shrouded in secrecy.  I was not a

1  participant.  So maybe Mr. Aylstock would be better prepared to
2  discuss how the various bankruptcy proceedings interacted with
3  the MDL mediation.

4          THE COURT:  That's fine.

5          MR. AYLSTOCK:  I'd be happy to speak to that if
6  you -- Your Honor, this is Bryan Aylstock, Lead Counselor of
7  the MDL, and I was involved in all of the settlement
8  discussions.  Your Honor, obviously, I can't get into the
9  details of those discussions, and I'm happy to be put under
10 oath on this, but I can tell Your Honor, as an officer of this
11 Court, that there is no doubt, none whatsoever in my mind, that
12 the settlement that we achieved and the timing in which we
13 achieved it, would not have been achievable and certainly would
14 not have been consummated had the work of the substantial
15 contribution members and the applicants not taken place in Your
16 Honor's Court.

17         This is a very unique case, obviously.  I think
18 you've seen that throughout.  But the interplay between the
19 multi-district litigation and the bankruptcy court, and in
20 particular, the arguments that were presented in the motion to
21 dismiss hearing with regard to whether or not the MDL would and
22 could resolve this case was certainly a factor and a
23 consideration and arguments were put before Your Honor with
24 regard to that.

25         Mr. Matt Garretson, for example, my firm retained

1  initially we helped to prepare him for his testimony, but his

2  testimony, as you might recall, related to the MDL processes

3  and how, in fact, MDLs can lead to complete finality for not

4  only the debtor, but also to 3M, both of which our settlement

5  that we achieved shortly after Your Honor's ruling will result

6  in on behalf of 3M and the debtor.

7         In addition, a lot of the case was streamlined

8  because of the stipulated findings of fact that Your Honor may

9  recall, dozens and dozens and dozens of pages that were related

10  to MDL proceedings, facts that were presented in the MDL

11  verdicts, all of those things that both sides frankly wanted to

12  stipulate to so that Your Honor wouldn't have additional weeks

13  and weeks of testimony.  That was also done by primarily the

14  MDL folks, including folks in my office that negotiated for

15  countless hours with our counterparts from Kirkland and Ellis

16  and the other debtor firms to achieve that.

17         So none of that would have happened.  In fact, those

18  facts wouldn't have been known to the bankruptcy counsel.

19  Certainly, it would have taken many, many, many hours to

20  uncover those facts, and probably what would have happened is a

21  much more lengthy trial.  But back to the main point I was

22  trying to make.  With regard to the settlement itself, the work

23  that was done by Ms. Tomasco, Mr. Winston's firm, all of the

24  firms that are applicants here, and the fact that we were able

25  to divide that work amongst ourselves and do it in a very

1  cohesive and efficient way so that we can present it to Your

2  Honor, I think absolutely would qualify for substantial

3  contribution.  And I'm happy to be put under oath and say all

4  of this.

5          THE COURT:  Well, I mean, you're an officer of the

6  Court, and so I'll let that slide.  And I do think when we set

7  this, that we asked that if you think there will be witnesses,

8  then it would be live.  If you think it's just legal argument,

9  it wouldn't be.  So I understand there might be some confusion,

10 but I also have the ability to take witnesses, but that's fine.

11 I mean, these are the questions I ask.  Mr. Strauss has

12 questions, too.

13          I, without question, understand that there was work

14 done, and a significant amount of work done by the substantial

15 contribution claimants.  In addition to that, done by the two

16 official committees.  So whatever I'm saying, I don't want to

17 make it seem as if I'm discounting the work that was done

18 because clearly the billing records show that there was work

19 done and significant amounts thereof.  But my main issue is

20 that, generally, in a bankruptcy proceeding, creditors pay

21 their own fare, except for if you're on an official committee

22 or you're able to qualify under the section you're seeking

23 503(b), make sure I get the right letters, 3(d).

24          But, I have to focus on substantial contribution.

25 Not that there wasn't great work done, but focusing on whether

1   or not it qualifies under substantial contribution under the

2   Bankruptcy Code.  And, Mr. Aylstock, you're probably tired of

3   hearing me sit up here on the bench, in person and on the Zoom,

4   saying that's what the Bankruptcy Code says.  But there really

5   isn't any case law that explains it, so the judge is going to

6   go off and try to figure it out on his own.  Sometimes it works

7   out for you, sometimes it doesn't.  But that's where I am a

8   little bit today.

9           Now, I do want to hear from everyone else as well but

10  those are the concerns when I look at it, is I have to try to

11  make sure that I'm comfortable in making a finding that not

12  just was the work done and was it valuable, but that it was a

13  substantial contribution such that (indiscernible) from the

14  estate.  So, no, I mean I understand that there was work.

15  Obviously, the opinion cites the testimony of the expert

16  witness, Mr. Aylstock, that your firm had and prepared.

17          Obviously, I reviewed all of the stipulated facts

18  because that maybe didn't make (indiscernible) things that I

19  considered.  If I didn't find them relevant, I didn't put it

20  in.  But those were all things that were considered.  But I

21  have to make sure that it's substantial contribution.

22          Ms. Tomasco, you raised your hand.  Yes.

23          MS. TOMASCO:  Sorry, Your Honor.  I mean, I feel like

24  I'm in class.

25          I do understand the Court's reluctance to say, okay,

1  well, you got a good result and so, therefore, the fact that

2  you weren't retained by an official committee is no harm, no

3  foul, right.  So you don't want to create this precedent in the

4  Seventh Circuit that makes substantial contribution an easy

5  hurdle to overcome, and I do understand that reluctance because

6  when I think of substantial contribution, I think of something

7  extraordinary and not self preservation kind of activities.

8        What makes this case very different from that concern

9  is that the overwhelming majority of the claimants in this case

10  were not vendors, landlords, folks like that.  They were 100

11  percent tort claimants, which are, for better or for worse in

12  our system, are aggregated by law firm.  And so you're already

13  starting with something that's not an individual creditor

14  concern, but a group of concerns represented by law firms

15  advocating for these creditors.

16        The second thing is that when you are an estate

17  retained professional, and in the Fifth Circuit, the case is <u>In</u>

18  <u>re Werner</u>, they went from a post hoc evaluation of the

19  reasonableness of your fees, like did you win that adversary

20  proceeding that you brought, which was the Fifth Circuit

21  standard before.  And under <u>Werner</u>, the Fifth Circuit now says,

22  no.  If it was a reasonably good guess that you were going to

23  enhance the estate and all that kind of stuff, you can still be

24  compensated.  You don't have to win.

25        Well, a substantial contribution claimant has the

1   post hoc evaluation of their efforts.  Yes, did these law firms

2   go forward with the sincere belief that they were doing the

3   right thing for the bankruptcy estate in opposing the

4   injunction and in seeking the dismissal of the cases?  Yes,

5   they did.  Now, if they were the official committee only, and

6   they had lost, they still get compensated.  The cases on

7   substantial contributions, such as Envirodyne that the U.S.

8   Trustee cites, they all say well, look, yes, you opposed

9   confirmation of this plan on behalf of the 13.5 percent notes

10  that were subordinated because I said they were subordinated.

11          And even though you opposed the plan and you fought a

12  valiant fight, you lost.  And, oh, by the way, you also don't

13  get substantial contributions, right, so you lost.  This is a

14  post hoc review where there was success and there was success

15  on a large scale, not a small scale, not an incremental scale,

16  but a six-fold scale of where the distributions were going to

17  be to the Combat Arms claimants to where they are now.

18          So it is not as if you're going to create on this set

19  of facts an open door for folks to come in and try crazy things

20  and then seek substantial contribution for them.  We're talking

21  about claimants that saw that this case needed a different

22  direction than the debtors were proposing, and they put forth

23  substantial effort to counterman the debtors' efforts in that

24  regard, and they happened to have been right.

25          Not only did they defeat the injunction and get the

1  dismissal, but they also used that momentum and that knowledge

2  to achieve a $6 billion settlement on behalf of claimants.  So

3  that's really the difference.  I understand that substantial

4  contribution is extraordinary, but when you increase the

5  creditors recovery by six-fold and you ask for substantial

6  contribution after the efforts were already successful, that is

7  the difference between that and somebody who comes in and is

8  retained officially by the Court under the Bankruptcy Code

9  where you know that even if you're not successful in your

10 efforts, you're going to get paid.  So there is a huge

11 difference between those two categories of professionals

12 interacting with the bankruptcy estate.

13          MR. AYLSTOCK:  The only other thing, Your Honor, I --

14 again, this Bryan Aylstock.  Thank you for allowing me to be

15 heard.

16          With regard to the settlement itself and the MDL, I

17 know Your Honor is familiar with it and read about it, it is

18 designed to provide complete finality to the debtor, 3M, and

19 all of the Combat Arms claimants, and I would submit,

20 respectfully, that us being able to work together with the

21 bankruptcy counsel helped for that substantial contribution,

22 because not only does it provide finality, literally payments

23 are being made today.  Certain claimants are going to be paid

24 today, literally, and many, many claimants have the potential

25 for being paid before the end of the year.  So the timing of

1  the payments, the timing of the resolution, I think speaks for

2  itself just from what I know about the Chapter 11 process and

3  the notice and everything.  I don't think we would -- that even

4  there be any possibility that claimants would be paid and the

5  debtor and 3M would be getting finality on those payments.

6        And with regard to the duplication of the work, I

7  think as our papers point out, obviously, that's a subject for

8  the fee examiner themselves.  And then finally, I do think this

9  case is *sui generis*.  As Your Honor knows, the debtor, nor 3M,

10 nobody is objecting to the payment of this particular fee from

11 the debtor for 3M's side.  Obviously, Mr. Strauss has lodged

12 his limited objection and you'll hear from him.

13       But I don't think that, as Ms. Tomasco said, this

14 is -- it seems rather unique for me, again, as a non-bankruptcy

15 lawyer, that this could potentially happen and in this way.

16 Maybe it could, but it certainly, from the timing perspective

17 of when people are getting paid, I want you to know that

18 payments have already been made by 3M into the qualified

19 settlement fund and (indiscernible) will be today

20 (indiscernible).

21       THE COURT:  Okay.  Thank you.

22       I'll give you all a chance to rebut anything later.

23 But is there anyone else who wishes to be heard on behalf of

24 the substantial contribution claimants before I allow the other

25 parties to make their statements?

1                    (No audible response)

2          THE COURT:  All right.  Hearing none, Mr. Strauss,

3  you're appearing on behalf of the United States Trustee who did

4  file an objection to relief sought.  I'll let you go next.

5          MR. STRAUSS:  Great.  Thank you, Your Honor.

6          Real quick, preliminarily, I just want to sort of

7  restate our position in the sense that I think Ms. Tomasco sort

8  of stated a little bit off in that.  Like you said, we're not

9  arguing that there was no work done or there was no benefit at

10 all from the work.  But I think that is different than saying

11 that there was no objection to substantial contribution.  I

12 think in order to find substantial contribution, you need to

13 show that there was no duplicativeness of the work being done.

14         So I would say that we did object to substantial

15 contribution.  And maybe that's just semantics, but in order to

16 find substantial contribution, I believe that you need to find

17 that it wasn't duplicative.  The Court already said this.

18 Generally, in Chapter 11, parties bear the burden of their own

19 fees.  This remedy of substantial contribution is narrowly

20 construed.  It's subject to strict scrutiny.  When you look at

21 this to find if there's substantial contribution, courts look

22 at whether they are duplicative of other parties, in

23 particular, committees.

24         And one issue that has been brewing and it's never

25 come to a head before and maybe this is as to a head as it's

1  going to come is that the CAE Committee that was appointed with

2  nine members hired five law firms.  They represent all the CAE

3  claimants.  And it is fine that other CAE claimants came in and

4  wanted to have their own representation and have their own

5  attorneys, but that does not mean that the CAE Committee did

6  not represent them or did not represent their interests in the

7  bankruptcy.

8       And that's really the core of our argument in this.

9  I know there's other parts of this where there's a direct

10 benefit from what they did and whatnot.  But our core argument

11 is that I really look at it in two ways.  The CAE Committee had

12 a large number of members.  It had, I believe, five law firms

13 working for it, very experienced, quality law firms.  Nobody's

14 saying that they weren't well represented.  And either they

15 didn't need the services of these other law firms that were

16 representing these other claimants, and therefore, they didn't

17 need them to do the job, then there's no reason for it to be a

18 substantial contribution because it's duplicative of the work

19 that they're doing.

20      And if they did need them to do the job, I realize

21 they split up the work, and that's great when they were working

22 together to get the objection or the motion to dismiss done and

23 argued.  If they did need those services, then they needed to

24 seek employment for those law firms and go through that

25 process.  Generally, in order to get compensation from these

1  cases, you need to seek employment and be employed.  And once

2  they started working together with the CAE Committee

3  representing the same parties as the CAE Committee, at that

4  point they should have realized these are very experienced

5  lawyers.  If we want to be compensated for this from the

6  estate, that doesn't mean they can't be compensated from their

7  clients, but if they want to be compensated from the estates,

8  working with the CAE Committee representing the same people,

9  they needed to get employment, and they didn't do that.

10         And so either way you look at it, either the CAE

11  Committee could have done it themselves and represented the

12  same parties, and therefore they can't be a substantial

13  contribution because it's duplicative of the work of the CAE

14  Committee.  Or, if the CAE Committee did need their services,

15  they should have employed them and taken those steps and made

16  sure that there was no conflicts and gotten Court approval for

17  their payment.

18         So I think under either argument that they're -- if

19  their argument is that their services were necessary for the

20  CAE Committee to do their job and complete what they were doing

21  on behalf of the same clients, then they should have gone

22  through the steps of being employed.  And if you look at the --

23  there are in this motion, there are law firms that represent

24  the CAE Committee included, but they are not in the part that

25  we're objecting to, the post CAE Committee because they're

1  already being paid through their own fee applications.

2          So we're only objecting to the post-CAE Committee

3  applications, and none of those parties that are seeking for

4  the pre-period that were employed by the CAE Committee are

5  seeking fees for the post-CAE Committee because they're already

6  getting their fees as being employed by the the estate for the

7  CAE Committee.

8          So that's really the gist of our arguments, and I

9  appreciate that the Court is looking at other parts of that.

10 But our core concern, our core objection is that once that CAE

11 Committee was in place and had all those law firms working for

12 them, at that point, the work of these other attorneys for the

13 same clients, it was -- fundamentally, yes, there are arguments

14 that, or there could be issues of pure line-for-line, if you

15 will, duplication of different attorneys that the examiner

16 would look at.

17         But from a top down perspective, or a macro

18 perspective, they're doing the same work, the same role as the

19 CAE Committee for the same creditors and those creditors that

20 they represent are already represented by the CAE Committee.

21 So not just on a line-by-line basis, from a conceptual basis,

22 they are duplicative of a party that's already being

23 represented in the bankruptcy case.

24         THE COURT:  All right.  Thank you.

25         Before I give a chance for rebuttal to the claimant,

1  Mr. Winters, what position, if any, does Aearo have?

2          MR. WINTERS:  Spencer Winters of Kirkland and Ellis

3  on behalf of Aearo.

4          Your Honor, Aearo has no objection to the

5  application.

6          THE COURT:  Okay.  And I'll ask you first, and then

7  I'll ask --

8          MR. KITE:  (indiscernible)

9          THE COURT:  Someone just tried to talk, but I got a

10 lot of feedback.  So hang on.

11         Mr. Winters, I do have one other question for you,

12 and I'll ask the claimants this, too.

13         Is this fee issue in any way related to the

14 settlement agreement that you're aware of?

15         MR. WINTERS:  Your Honor, Aearo and 3M agreed not to

16 object to this pleading due to settlement.

17         THE COURT:  Okay.  So, kind of, but no.  So you just

18 agreed not to object, correct?  But you didn't agree that --

19 never mind, just leave it at that.  That's fine.

20         All right.  And I think someone else tried to speak,

21 but I don't know if they were trying to speak or not.  Did I

22 cut someone off with the bad audio?

23                     (No audible response)

24         THE COURT:  Well, it's either so bad I can't hear

25 them or they didn't.

1          All right.  Ms. Tomasco, I will -- well, I actually

2    have a question for Mr. Strauss first before I turn it back to

3    you.

4          So Mr. Strauss, when you are indicating, and I think

5    Ms. Tomasco indicated this, too, when you're not objecting to

6    what I'll call the pre-CAE Committee fees, does that mean that

7    you believe that those pre-CAE Committee fees satisfy the

8    criteria of substantial contribution under 503?

9          MR. STRAUSS:  I don't think I can go so far as to say

10   that I agree with it, only that our office did not feel that it

11   was a strong enough objection to make it.  That certainly was

12   a gap there before we were able to get the CAE Committee in

13   place where there were important issues that needed to be

14   addressed.  Parties got together.  They did a lot of work in

15   doing that.  So we just felt that it was not appropriate to

16   object to those without the affirmative assertion that

17   (indiscernible).

18         THE COURT:  I know.  We're only doing non-negatives

19   not affirmatives.  That seems to be the theme.  I have you on

20   gallery view, so that's the right side of the screen for me.

21         All right.  Ms. Tomasco, et al., I guess my first

22   question is, is your understanding the same as Mr. Winters in

23   that, as far as the settlement agreement, the debtors agreed

24   not to object?  Is that the only involvement that this fee

25   dispute had in the settlement?

 1          MS. TOMASCO:  Again, I was not a party to the

 2   mediation in the MDL case.  I will leave that question to

 3   Mr. Aylstock.

 4          MR. AYLSTOCK:  I'd be happy --

 5          THE COURT:  Mr. Aylstock.

 6          MR. AYLSTOCK:  Yes, thank you, Your Honor.  Bryan

 7   Aylstock.

 8          That is correct, Your Honor.

 9          THE COURT:  Okay.

10          MR. AYLSTOCK:  (indiscernible).

11          THE COURT:  Thank you.  Okay.  All right.

12          Then, with respect to the other allegations, so it

13   does appear, Ms. Tomasco, that we're -- let's just focus on the

14   post-CAE, as you said.  I'm getting more comfortable with pre

15   because I do think that that probably did have a direct benefit

16   in the fact that the ability of the MDL to continue during the

17   bankruptcy, except as to Aearo, obviously, which was stayed, I

18   think did benefit everyone because, as Mr. Aylstock

19   highlighted, lots of things happened after that and there were

20   still discussions.

21          They did stop and then they started but things

22   happened.  And I do think that probably was a direct benefit to

23   the estate, especially because there was no committee and

24   someone had -- it was a very -- the motion carried a lot of

25   implications and claimants needed to contest that and they did

1  on short notice.  So I appreciate that.

2         So let's focus on post-CAE then.  And what response

3  do you have to the United States Trustee's position that there

4  was a CAE Committee involved that was representing through the

5  Committee all of the tort claimants and did contest the, or did

6  file the motion to dismiss and persist in prosecuting that.

7  What's the response then to what the Trustee said, which is

8  well, they could have hired you, or added a, I think he said

9  five counsel, added a group of additional counsel for the

10  motion to dismiss as opposed to seeking a substantial

11  contribution claim?

12         MS. TOMASCO:  Your Honor, I hesitate to say that that

13  should be the default position to hire additional committee

14  counsel when additional manpower is required or additional

15  specialties are required to achieve a result that the

16  substantial contribution claimants wanted as well as the

17  Committee.  So if you take sort of like the paradigm that

18  Mr. Harrison (*sic*) now espouses that the Committee should have

19  hired more professionals if it thought that's what was needed

20  to prosecute the motion to dismiss, that puts the burden on the

21  Court on the front end to approve additional counsel.

22         And, again, you don't have the benefit of post hoc,

23  you know, was it successful, as you do with a substantial

24  contribution claimant.  You would be paying for that effort

25  whether or not successful under the current understanding of

1 Section 330.  You would be paying for additional counsel to

2 represent the Committee, whether or not it was successful.

3 That to me is not a correct result.

4        Instead, what we have here is we have the very high

5 substantial contribution burden.  One of the elements of the

6 cases, and you can look at the cases cited by the U.S. Trustee

7 but, in particular, the lack of duplication is one of the

8 elements cited in a Delaware case, In re Worldwide Direct, also

9 mentioned in the Lebron Third Circuit case.  And as we know,

10 there's not Seventh Circuit, so I'm not being prudential in

11 favor of some other circuit here.

12        But one of the elements of substantial contribution

13 that they were not duplicative of services provided by

14 professionals or retained professionals in the case.  So that

15 would mean that for any substantial contribution claimant that

16 was aligned with either the debtor or with the Committee or

17 some other committee that had retained professionals, that they

18 would always have to sign on to represent that group in order

19 to be compensated for what is a substantial contribution.

20        At some point, that would also then implicate whether

21 or not they were generally benefitting the estate or generally

22 benefitting only their own client.  So I think that that

23 paradigm is going to run into itself at some point.  Either

24 you're representing the collective good for the estate or

25 you're representing an individual claimant and only advocating

1  for them.

2         To suggest that because we were aligned with the CAE
3  Committee means that we cannot be a substantial contribution
4  claimant would render the substantial contribution provisions
5  of the Bankruptcy Code superfluous.  We would always have to be
6  retained in order to apply for compensation if we are aligned
7  with a represented element in the case with retained
8  professionals.

9         I don't think that would work.  I think what does
10 work and what works here and what I'm trying to get to, and I
11 did not mean to say that the U.S. Trustee did not contest the
12 plan confirmation.  The U.S. Trustee contests substantial
13 contribution on that third element cited in the Worldwide
14 Direct case, and that is were the services duplicative.

15        And that creates in this instance a "chicken and the
16 egg" problem and that is we're saying our services were not
17 duplicative.  We had clear lines of division, and that is set
18 out in our reply.  Clear lines of division who handled what
19 witness, who handled what part of the closing argument, who
20 handled written discovery, who handled depositions, and that
21 sort of thing.

22        So when we're talking about for all of the fees
23 including pre-CAE Committee fees that we're going to have a fee
24 examiner review for duplication, we're arguing that our fees
25 were not duplicative which is the basis of the U.S. Trustee's

1 substantial contribution objection.  He says, look, if they

2 were duplicative, they're not substantial contribution.  We're

3 saying they're not duplicative.

4 　　　　　The solution it seems to me is to have the fee

5 examiner look at the fees and determine whether or not they

6 were duplicative.  And then we can come back and say they were

7 not duplicative.  And so that element of the U.S. Trustee's

8 objection is factually incorrect.

9 　　　　　Now we can go through in an evidentiary hearing and

10 we can -- you know, we can put in all of these they were not

11 duplicative, this is how we all and I can get Mr. Aylstock and

12 I can get Mr. Manthey and I can get any number of lawyers to

13 say, yes, this is how we've divided it, everybody stuck in

14 their lanes, nobody crossed into each other's lane, we had kind

15 of overall coordination and it would be no different than if we

16 were dealing with a single law firm with, you know, multiple

17 groups handling different parts of that hearing.  But that's

18 what happened.

19 　　　　　So the question is if the U.S. Trustee's only

20 substantial contribution objection is the potential of

21 duplication, then we should come back and look at that after

22 the fee examiner has had a chance to review it.

23 　　　　　MR. STRAUSS:  If I could real quick, I mean I think

24 what I tried to explain was that you're talking about sort of

25 the micro aspect of duplication of being line by line, and

1  that's not so much what we're arguing.  What we're arguing is

2  that the entire role, the entire goal, the position that they

3  are taking in the bankruptcy is duplicative of what the CAE

4  Committee's already doing.  They are filling that role of

5  representing all the CAE claimants.

6       And then you have this ad hoc committee that sort of

7  self-appointed themselves to also represent other claimants,

8  and that's fine.  They just shouldn't be compensated from the

9  estate like the CAE Committee who have been appointed to

10 represent all these people.  So it's not just -- I don't think

11 we need the evidence to say, well, they're not doing it at the

12 same -- exact same role at the same time in a micro sense.  In

13 a macro sense, they're representing the same interests.

14 They're doing the same job.  And if the CAE Committee needed

15 them to do that, they should have employed them.

16      MR. AYLSTOCK:  Your Honor, my only response to that

17 would be if pre-appointment's always necessary, why even have

18 substantial contribution in the Code would be my first point.

19      My second point is from having been in the trenches

20 and I was in the trenches for all of the planning meetings and

21 who's going to do what and who's going to deal with the MDL

22 piece and who's going to do the stipulated facts, what was

23 going on behind the scenes was really no different from the

24 pre-Committee formation, the PI hearing and all of that.  We

25 were doing the stipulated facts.  We were trying to figure out

1  how the interplay of the MDL and everything that already
2  happened that preceded the bankruptcy filing before Your Honor
3  would work.

4          And all of that happened in the same format and
5  fashion as it did post-bankruptcy or Committee formation.  So
6  in both situations, there was I don't think anyone disputes a
7  heck of a lot of work for everyone.  But there's really no
8  distinction.  And with all due respect to my bankruptcy
9  counsel, who are brilliant and I love them, spent a lot of time
10 with them, this MDL world is a very unique world and had they
11 even been able to ever get up to speed on what had happened
12 here and what happens generally, it would have -- we would have
13 had tens of thousands of more hours, perhaps them trying to do
14 that.

15         So was it unique, was it substantial?  In my view,
16 Your Honor, respectfully, it absolutely was.  And could they
17 have done it as effectively without our involvement?  I don't
18 -- honestly, I do not believe so.  And to Ms. Tomasco's point,
19 when you're looking at the contribution, I think it's fair to
20 say was there a contribution before Your Honor has to decide
21 should we hire all of these people.  It does seem to be a
22 chicken and the egg.

23         MR. STRAUSS:  I will say -- point out that we are not
24 objecting to the substantial contribution period before the CAE
25 Committee.  So we're not trying to gut the substantial

1  contribution part of the Code because we're not objecting to it

2  where nobody was employed before the CAE Committee, all those

3  fees for that period, none of those people were employed.  And

4  we're not objecting to them being paid for that before the CAE

5  Committee.  So we're not trying to argue it does not render the

6  substantial contribution portion superfluous.

7          THE COURT:  All right.  One question I have is -- and

8  this is probably me, I think the Trustee pointed out they

9  couldn't tell the breakdown between pre-CAE and post-CAE.  And

10 Ms. Tomasco said, oh, it's easy.  But assume for a moment

11 you're a judge and math is difficult.  What are the rough

12 numbers between the pre-CAE formation request for substantial

13 contribution and the post-CAE?

14         And one reason I want to ask this is because if a

15 person looks just at the total fee, the fee requested under

16 substantial contribution is somewhat close to the final fee

17 applications for the Committee professionals, I mean just the

18 attorneys, not the total world of professionals.  But I know

19 that the fee that you're asking for also includes pre-formation

20 CAE work.

21         So I think -- do you have just an estimate?  It

22 doesn't have to be within --

23         MS. TOMASCO:  Right.  So the total -- I don't have

24 it.  It's on Page 7 of our reply.

25         THE COURT:  Well, I couldn't really tell that because

1 did that add up to roughly 8.5?

2       MS. TOMASCO:  It does, Your Honor.  Well, there was a

3 $600 math shift.  But --

4       THE COURT:  Okay.

5       MS. TOMASCO:  And I can --

6       THE COURT:  So you can put the total on the bottom

7 just this is just if you're ever dealing with bankruptcy

8 attorneys again, at least those from Indianapolis, just put a

9 total column on the bottom.  That would be awesome., so.

10       MS. TOMASCO:  I regret that error, Your Honor.

11       THE COURT:  That's fine.

12       MS. TOMASCO:  It won't happen again.

13       THE COURT:  If you don't let me have the Excel

14 spreadsheet, I need to know.  So we're talking then that most

15 of the argument for the -- and I wrote down 8,400,000, but

16 that's just fees.  That's not expenses.  So I'm just going to

17 use that number.

18       So if I take that number, the bulk of what we're

19 arguing over occurred pre-CAE.  Is that accurate?

20       MS. TOMASCO:  That's correct.  Of the $8 million, I

21 think approximately 2-1/2 is post CAE.  So most of it's --

22       THE COURT:  Okay.

23       MS. TOMASCO:  -- 6 million or so is pre-CAE.

24       THE COURT:  Okay.  That helps with the breakdown.

25 That does give me more comfort because when I was comparing the

1  fee apps, which a lot of you just got your signed fee app so

2  that was probably a good day for a lot of you.  But I just

3  wrote down some of the numbers as far as the professionals, and

4  one of my initial concerns was the amount of the fees requested

5  by the substantial contribution creditors versus the Official

6  Committee fees.

7       But I understand now based upon this and also looking

8  at this chart that a lot of what you're asking for was before a

9  committee was even on the ground.

10      MS. TOMASCO:  Correct, Your Honor.

11      THE COURT:  Okay.  So that does give me some comfort

12  in the fact that a bulk of what you're seeking was before a

13  committee and when everyone was, for lack of a better term,

14  trying to oppose the motions of the debtor on your -- I'd say

15  on your own but without the benefit of a standing committee.

16      MS. TOMASCO:  Correct, Your Honor.

17      THE COURT:  All right.

18      Mr. Strauss, is there any requirement that a

19  substantial contribution applicant not be entirely representing

20  the same position as a standing committee?  I mean doesn't the

21  test, and I say test, I mean I pulled two of the more recent

22  cases, but you certainly can't be representing the interests of

23  your client or your position over the group, for lack of a

24  better term.

25      But is there any prohibition then in that to say that

1 you can't represent the group as well, in a different capacity?

2        MR. STRAUSS:  You're talking about the substantial

3 contribution claimants who are not also part of the CAE

4 Committee attorney group?

5        THE COURT:  Yes.  Yes.

6        MR. STRAUSS:  Okay.  Because there are a number of

7 attorney firms that are seeking substantial contribution for

8 the pre-CAE period who are also CAE counsel.

9        THE COURT:  Right.  And you're not objecting to that.

10 So I'm really just -- it's just a general question, again,

11 because we don't have a lot of structure in the Seventh Circuit

12 which makes it fun for lawyers and bad for judges.

13        But when one of the requirements that had been used

14 by some of the courts is that they have to be for the benefit

15 of the estate, not for their client, does that mean then

16 generally speaking then that any applicant for substantial

17 contribution is going to be largely representing the same

18 interests as a committee because it has to be for the estate?

19        MR. STRAUSS:  I think that is a reasonable argument

20 to make.  If the only benefit of the action taken is for the

21 client, then it can't be a substantial contribution.  But

22 you're right, they are necessarily acting for their client

23 obviously or they wouldn't be doing what they're doing.

24        THE COURT:  Right.  They're not just doing it for

25 fun.

1        MR. STRAUSS:  But it also needs to be a benefit to

2 everyone.  So I don't know.  Could you rephrase the question a

3 little bit?  I'm trying.

4        THE COURT:  No, it's just -- and I'll tell you the

5 two cases I'm looking at.  I'm looking at <u>Envirodyne</u> --

6        MR. STRAUSS:  Okay.

7        THE COURT:  -- which you cited.  And I know the

8 claimants also cited.  And I'm also looking at a relatively

9 newer one from Judge Thorne in the Northern District, <u>Mandile</u>,

10 626 B.R. 915, mainly to just see the most recent cases and none

11 of them cite Seventh Circuit law.  They just pick other

12 circuits.  So there's not a lot here.

13        But one of the -- because one of your arguments is,

14 well, they were -- someone else was doing it.  But I don't

15 think, as I read these, I don't know if that's really a bar per

16 se because obviously a committee should be representing

17 everyone with the exception obviously when you have like a

18 respirator committee, they're more obviously more attuned to

19 their interests for the respirator claimants.  But here, I mean

20 the CAE Committee was representing the large portion of

21 claimants in the case.  But also the substantial contribution

22 claimants were doing the same.

23        So I don't know if that -- I mean, so I think, would

24 you agree with me then that that in and of itself doesn't

25 necessarily disqualify you from substantial contribution,

1 because they all ultimately are rowing in the same direction?

2          MR. STRAUSS:  I think I agree with you.  I don't
3 think that itself disqualifies that.

4          THE COURT:  Okay.

5          MR. STRAUSS:  With the caveat that I think that the
6 ad hoc committee or the other substantial contribution people
7 could only represent their individual clients rather than all
8 the CAE claimants as a whole.

9          THE COURT:  Well, yes, but here, I mean, the
10 difficulty on that which we've had all the time which is all
11 these people represent tens of thousands of people and I think
12 even your papers said hundreds of thousands.  Of course,
13 everyone says they represent hundreds of thousands, so there's
14 obviously some overlap.

15          But I think it's fair to say that they represent a
16 significant portion of the creditor body.  Is that safe to say?

17          MR. STRAUSS:  I would agree with that.  Yes, Your
18 Honor.

19          THE COURT:  Okay.  And when we're concerned about
20 duplication, which I am as well, but that is something that the
21 fee examiner does look at.  So I think that part might be
22 satisfied.

23          But I guess what I'm struggling with and you've
24 raised and the difficulty is what do you do when the CAE
25 Committee who is approved works closely with these people and

1  in fact divides some of the most important arguments and tasks,

2  what does one do then?  Does that mean that I can't look at it

3  through the prism of substantial consummation or, excuse me,

4  substantial contribution?  Does saying that there's a

5  committee, you don't get anything, does it write that out of

6  the Code as Mr. Aylstock said?

7       MR. STRAUSS:  Well, I mean I think it goes back to

8  the default that their clients bear the burden of those

9  expenses like the vast majority of parties in a Chapter 11 bear

10  their own expenses.  And if they got to that point and they

11  wanted those expenses to be paid not by their clients but by

12  the estate, then they should have been employed at that point

13  since they were working for the benefit of directly with,

14  divvying up parts of the same action with the CAE Committee.

15       At that point, I think they should have thought,

16  well, if we want to be compensated from the estate doing this

17  work which, if they didn't do, the attorneys for CAE Committee

18  would have needed to do.  And I don't know if there's any

19  allegations that they couldn't have done it if these people

20  didn't do it, or maybe there was.  I don't know.

21       But at that point, they should have realized, hey, if

22  we want to get paid by the estate, we need to go through the

23  process of being employed by the CAE Committee.  And because

24  they didn't do that, coming back and trying to use substantial

25  contribution, it's not appropriate.  I think the substantial

1  contribution wasn't -- it's almost like they're trying to get

2  around -- not that they're trying to get around but they are

3  effectively getting around having to go through the process of

4  being employed by using substantial contribution to sort of

5  undermine the employment process to represent the Committee.

6          THE COURT:  All right.  Any response to that?

7          MS. TOMASCO:  Your Honor, I think Mr. Harrison [sic]

8  has answered the Court's question accurately the first time.

9  It is not an element of substantial contribution that you not

10 be aligned with any official committee because that -- as the

11 Court recognized, and Mr. Strauss actually said, the

12 substantial contribution claimants were working on behalf of

13 the entire estate in seeking the dismissal of the case.  And to

14 suggest that they would have to be retained is not -- would

15 render substantial contribution superfluous, a nullity.

16          And why have that provision in the Code if only

17 people who were officially retained can get compensated for

18 pulling the laboring oar on behalf of the entire estate?  The

19 reason why the statute is there and it's an exception to having

20 to have been previously retained is that it's a post-hoc

21 analysis.  We look at whether or not you actually gave a

22 substantial contribution.  And we come to the Court having

23 achieved the substantial contribution without having been

24 retained, and we would only come because we were successful.

25 And that success is the dividing line between having to be

42

1  retained and not having to be retained.

2         And to rewrite the Code in the way Mr. Strauss is

3  suggesting that only retained professionals can get compensated

4  is essentially what his argument is, and that's not what the

5  Code says.

6         MR. STRAUSS:  That is not my argument, though.  as I

7  said, we are not objecting to the pre-CAE Committee where

8  nobody was employed.  So we're not saying that you have to be

9  employed in order to get substantial contribution claims

10 because we're not objecting to that whole six million portion

11 from the pre-petition group.  We're objecting to just the post

12 portion.  And the defining difference is that there was a CAE

13 Committee in place representing that interest, those interests

14 of those parties.

15        THE COURT:  All right.

16        MS. TOMASCO:  The effect of Mr. Strauss' argument is

17 if you are aligned with an official committee, you can never be

18 a substantial contribution claimant because you are always

19 necessarily duplicating the efforts of retained professionals.

20

21        THE COURT:  All right.  Does anyone else wish to be

22 heard?

23              (No audible response)

24        THE COURT:  All right.  I don't hear anyone.

25        MR. KITE:  Your Honor, can you hear --

1          THE COURT:  Oh, there we go, Mr. Kite.

2          MR. KITE:  I'm trying.  The only reason -- and this

3   is Andy Kite, I represent Judy Weiker, the independent fee

4   examiner.  The only reason I have tried very hard to unmute my

5   microphone is to let the Court know that the fee examiner does

6   not take a position on the merits of the motion.

7          But if the Court is inclined to have her and her team

8   review these fees, we don't think that it's covered under the

9   order appointing her and would simply ask that the Court make

10  clear what it would like the fee examiner to do if it wishes

11  the fee examiner to do anything.

12         THE COURT:  Okay.

13         MR. STRAUSS:  And, Your Honor, I know Ms. Tomasco

14  touched on this, but we did discuss this with both the debtors

15  and the substantial contribution claimants beforehand.  There

16  was an agreement in principle in place, and I had drafted an

17  agreed motion to get that done.  Unfortunately, we weren't able

18  to get that done in time.

19         But I think everybody is in agreement that to the

20  extent that you want to admit these fees, whether the pre-

21  petition portion or all of it, that everybody is in agreement

22  that it's okay or it's good to have the fee examiner look at

23  them as she would look at -- has looked at all the other fees.

24         THE COURT:  Okay.

25         MR. KITE:  And that would -- she would also ask that

44

1  all of the potential substantial contribution claimants submit

2  their data in leads as any other professional would.

3        THE COURT:  All right.  Well, and let's talk about

4  that because Mr. Strauss' organization has made leads a very

5  important thing for anyone working on a relatively large

6  bankruptcy case.

7        Ms. Tomasco, earlier when it was cloudy but now it's

8  sunny, you had indicated that some of the firms that were

9  seeking awards under your substantial contribution application

10  did not have leads.  Is this something that they could do?  And

11  how much are we talking about?

12        MS. TOMASCO:  I believe that the major firms on the

13  list are leads-capable.  In fact, Mr. Strauss asked for the

14  leads data right after we filed the substantial contribution

15  motion, and we sent him all of the leads data that we had.

16  Some of the firms converted their timesheets into Excel

17  spreadsheets, which should be technically close enough to leads

18  data that it could be searched and sorted and chopped and diced

19  and all of the other things that a fee examiner might want to

20  do.

21        But I believe that the majority of the firms have

22  leads capability.  The other ones we've had them convert them

23  into Excel spreadsheets.  Whether or not they can convert that

24  to leads data is something that I do not know and I do not know

25  how much it would cost for them to acquire that software.  I do

1 believe it is expensive and we may lose some of that

2 functionality if the Court requires leads data.

3        I would personally ask the Court and fee examiner to

4 accept an Excel spreadsheet divided into however they want to

5 divide it into.  A data processor can put it into an Excel

6 spreadsheet and everybody has those.  That would be my request.

7 But I believe that of the firms, there's only three that don't

8 have leads capability.

9        THE COURT:  Okay.  So that was my first question is

10 how many don't have leads capability, and you said there's

11 three.  How many hours are we talking or what's the fee total

12 for those three?  Would you happen to know that?

13        MS. TOMASCO:  I do not know.  I don't have that data

14 in front of me, Your Honor.

15        THE COURT:  Okay.

16        MS. TOMASCO:  I can certainly provide it.

17        THE COURT:  Okay.  Let me ask then I guess the

18 initial question to Mr. Kite and Mr. Strauss who are much more

19 familiar or at least have people who are familiar with the

20 leads data.  How close does an Excel spreadsheet get you?  I'm

21 assuming it has to be coded in a certain way for it to be

22 searchable like you would search under leads.

23        But you tell me if that would work or if that is

24 something that would make it more easily done but yet still not

25 fit the criteria.  Where would that put you getting these three

1 firms' sheets in Excel versus in leads?

2           MR. KITE:  Judge, can you hear me?

3           THE COURT:  Yes.

4           MR. KITE:  I am told that the fee examiner can take

5 Excel spreadsheets and have them manipulated so she can -- she

6 and her team can do what they do with it.  It's not as easy as

7 leads, but it can be done.  The only thing I don't know is if

8 that might add a little hiccup or maybe a little bit of

9 additional time.

10          THE COURT:  Okay.  All right.  Mr. Strauss, what's

11 your understanding?

12          MR. STRAUSS:  I would have no objection to the Excel

13 if that is what the fee examiner is able to use.  As long as

14 the fee examiner is able to do her job, then we have no

15 objection to however they give it over.

16          THE COURT:  Okay.  Thank you.

17          All right.  Mr. Kite, you partook of the anything.

18 Does anyone else wish to say anything further?

19               (No audible response)

20          THE COURT:  All right.  Hearing none, all right,

21 well, as I said at the outset, this is a not difficult but it's

22 an interesting issue and now one we often see that much

23 anymore, substantial contribution, especially in cases with

24 committees.

25          But understanding what I'm to look at, I think I've

1  already told you the two cases.  They generally look at three

2  criteria, and it is the burden of the applicant to meet the

3  criteria.  The first is whether the services rendered were

4  solely to the benefit of the client of the applicant or versus

5  whether or not it was for the benefit of all parties in the

6  case.

7          When I look at that, I think, although I think Mr.

8  Harrison [sic] is correct that although the CAE Committee

9  represented all of the CAE claimants, I think that the

10 substantial contribution claimants represented a significant

11 portion of those, at least based upon the statements and,

12 frankly recognizing the names of the firms listed, it's my

13 understanding that they represented a bulk of the CAE claimants

14 in the case.

15         So I think that in that instance that it is for the

16 benefit I'm not going to say of all the parties in the case but

17 for a large majority of the parties.  I only say that because I

18 know that the respirator claimants had sought the appointment

19 of a trustee first and then secondly of dismissal.

20         Second is whether or not that there was either an

21 actual demonstrative or a direct benefit to the debtors'

22 estate, its creditors, or the debtors' shareholders if

23 applicable.  This one is more difficult.  I don't think I can

24 say that because of the work of these claimants necessarily

25 that the settlement was reached, but I do have to recognize

1 that based first upon the injunction request by the debtors and

2 3M to stay all litigation and then which was denied and may be

3 all continued forward, and then, finally, the motion to

4 dismiss, I'll never exactly know and that's probably a good

5 thing that I don't know all the things that went on.

6      But I think that the temporal relation between the

7 dismissal of the bankruptcy case, the restarting of the MDL

8 mediation, and the frankly joyous news when I read that a

9 settlement had been reached, I think that given the magnitude

10 of the case, the number of parties, and the history that

11 there's enough there to show that there is a benefit that has

12 been reached by the creditors in this case to the work done by

13 the substantial contribution first in opposing the injunction

14 and second in moving to seek the dismissal of these cases.  So

15 I think that's met.

16      Whether or not the work is duplicative of the work

17 done by the committee, the committee itself, or the debtors or

18 their attorneys is also a third factor that's used in these

19 cases.  It gets tricky because we did have a very active CAE

20 Committee, as I mentioned.  We had an active respirator

21 committee.  And we had an active United States Trustee in this

22 case, along with a very active debtor.  This case was well-

23 lawyered by everyone involved which made my job as easy as it

24 could have been given the issues presented.

25      But as I look at 503(b)(3)(D), the language of it

1  makes me believe that when it talks about a creditor or

2  indenture trustee and equity security holder or a committee

3  representing creditors other than a committee appointed under

4  1102 of this Title in making a substantial contribution to this

5  case under either Chapter 9 or 11.

6          As I read this and as I think about whether or not,

7  A, are they representing the estate in general or representing

8  their clients I think kind of goes into this is what is this

9  body, and here it is -- they call it substantial contribution,

10 but I'll put it in two parts.  One is the pre-CAE group of

11 claimants, and then the second I'll call it the ad hoc

12 committee of claimants for the post-CAE committee.

13         Yes, much of their work obviously post was in

14 alignment with the CAE Committee, so much so that they divided

15 a lot of the Committee's work and the substantial contribution

16 such that they divided the motions, they divided discovery.  If

17 they didn't do it, these same fees would be there.  They would

18 just be in the line of Klee Tuchin, Otterbourg, and those that

19 were part of the Committee.

20         Also telling is the fact that the debtors aren't

21 objecting.  Normally, it's the debtors or the Committee that

22 are saying, no, no, no, you're taking money out of the pot that

23 doesn't belong to you.  Well, as we've always had, this has

24 been the most bizarre pot of any bankruptcy I've been involved

25 in which is it's plenty enough for most of the things that we

50

1 are dealing with in the day-to-day administration of a

2 bankruptcy.

3 　　　So although I share Mr. Strauss' concerns and it is

4 troubling when you have such an active Committee and then

5 someone else comes along and says we want to get paid too, I

6 think Ms. Tomasco makes a valid point which is that obviously

7 these two parties were communicating.  Mr. Aylstock also

8 mentioned that.  They were talking.  They did the work.  And

9 more importantly, had there not been a victory, had this case

10 not been dismissed, had there not been the settlement, and

11 honestly, if the settlement hadn't been so close, even I don't

12 think we'd get here.

13 　　　But I think given the closeness of this, that we have

14 to look at that and that it did work and it was important to

15 everybody.  And it probably wouldn't have worked had they not

16 done this and been successful on the motion to dismiss.  So as

17 I looked at this, obviously, I don't do this very often, I

18 think the United States Trustee made some very good arguments,

19 but given the tests that have been thrown out and the good news

20 is I doubt I'll get appealed on this unless the U.S. Trustee

21 wants to make a point.  So someday I'll make Seventh Circuit

22 law on one of these open issues but maybe not today.

23 　　　I think that they satisfy the requirements of the

24 substantial contribution under the Code as more fully discussed

25 in Envirodyne and Mandile such that those tests are there.  So

1  given that, the Court will overrule the objection and grant the

2  application of the substantial contribution claimants

3  contingent upon this.  I do believe that if we're going to get

4  paid by the estate and be treated as a professional, that you

5  should also then be subjected to the same rigors as the other

6  professionals in this case, which is reviewed by the fee

7  examiner, Ms. Wolf Weiker, and her associates that she's hired

8  in this case.

9           I think what I will do is put it in the minute entry.

10 Now, generally speaking, we've said within 14 days of an entry

11 on this, Mr. Kite.  Is that correct?  Generally, we've said 14

12 days after entry of an order?

13           MR. KITE:  Correct.

14           THE COURT:  Isn't there a 14-day kicker with regard

15 to Ms. Weiker's review?

16           MR. KITE:  Fourteen days?  I have talked to her about

17 this.  And given the scope of the review that we're talking

18 about and getting all of the data in the position to be

19 reviewed, she believes that once she has all the data, the team

20 would need about four weeks to review and submit a report.

21           THE COURT:  Okay.  All right.  Ms. Tomasco, that's my

22 understanding that I don't think you're one of the three firms

23 that doesn't have lead and if they're on lurking in the Zoom

24 background, that will be great.  But do you have any idea how

25 long it would take those three firms to convert their billing

1  records to an Excel spreadsheet?

2          You're either on mute or I can't hear you,

3  Ms. Tomasco.

4          MS. TOMASCO:  Sorry.  I believe that most of that has

5  been done already in what we submitted to Mr. Strauss in July,

6  but I will double check.  I think it will take us a few days to

7  make sure that everything is converted to Excel spreadsheets

8  that's not already in leads.

9          THE COURT:  Okay.  So does 45 days sound reasonable

10 given the few days that, Ms. Tomasco, you think your

11 constituents will need and the roughly four weeks that Mr. Kite

12 has indicated that Ms. Wolf Weiker and her folks would need?

13 Does that sound about right?

14         MS. TOMASCO:  That sounds fair to me, Your Honor.  We

15 don't want to rush people on this.

16         THE COURT:  But you might because you get paid.  I

17 always liked getting -- that will still get you in, I don't

18 know if you're on calendar year or fiscal years for the law

19 firms, but I do remember that we were on a calendar year and

20 there was lots of excitement in December of trying to get fee

21 applications done.  But this should give you plenty of time

22 hopefully to get that done.

23         Mr. Kite, I think I also need to indicate and I'll

24 put on the minute entry that I know that Ms. Wolf Weiker and

25 her associates were waiting to file final fee applications for

their services in this case.  And how long do you think it
would take those folks to prepare a final fee application once
they've completed their review?

MR. KITE:  Well, Judge, the current order kicks it
out from 14 days to after the orders -- after the final fee
orders are entered.  So --

THE COURT:  Okay.

MR. KITE:  -- really 28 days if you add the two 14s.
So what I would say is something similar here, 14 days after
the order on the substantial contribution motion is entered for
the --

THE COURT:  Okay.  Oh, after the final order on fees
is entered?

MR. KITE:  After it becomes final 14 days, I would
say.

THE COURT:  Okay.  All right.  So that would be fine.
I'll indicate that Ms. Wolf Weiker and her colleagues would
have within 14 days after entry of a final order approving the
application of substantial contribution claimants,
understanding that we may need either -- we'll need something
if there is some agreement if, for instance, I think Ms. Wold
Reiker usually has reviewed things and taken things down some.
I'm proud to say not like other fee examiners I've heard just a
random ten percent, but she has reviewed each one and taken
different amounts.

1          So to the extent there is something different, I'm

2    assuming you would put that in an order once she issues her

3    final report?  That's how most of them have done it.  When you

4    submit your final order, it takes into account any reductions

5    that she may have put.

6          If there's a dispute, obviously we would have to have

7    a hearing on that if there are disputes with regard to the --

8    any issues that Ms. Wold Weiker may find in the substantial

9    contribution application.

10          MR. KITE:  That sounds --

11          THE COURT: Does that make sense to everyone?  I

12    understand, Ms. Tomasco, you represent different firms which

13    makes it even more fun.  So I understand that you would be

14    saying that, but I'll use Mr. Aylstock as an example because

15    he's spoken and he's still on my view.

16          If, for example, Ms/ Wolf Weiker were to seek a

17    reduction in Mr. Aylstock's firm's fees such that they would

18    disagree, we would have a hearing on that.  But if he would

19    agree, the order would just reflect that based upon the

20    recommendations of the fee examiner, the Aylstock firm is

21    seeking X number of fees which would be their current what's in

22    the motion less what the fee examiner identified.

23          But it hasn't happened yet, but I understand there's

24    different firms and there's always a chance.  That would have

25    to be an evidentiary hearing that would be conducted if there

1   is an issue with regard to those particular fee adjustments.

2            MS. TOMASCO:  We understand, Your Honor.

3            I happen to have a paralegal who enjoys doing fee

4   apps and working with the fee examiner, so we will do our best

5   to make sure that everybody understands what they need to do.

6            THE COURT:  All right.  I wouldn't say his or her

7   name because people will call her and ask -- him or her and ask

8   to do that because that's not a fun job all the time.  But I

9   appreciate their enthusiasm for the issue, so.

10            All right.  So we'll put that in the minute entry.  I

11  obviously am not going to grant it yet because I need to allow

12  the fee examiner to do their work.  So I'll show hearing held,

13  I'll put in the minute entry what it is, which is that

14  Ms. Wolf Weiker will issue recommendations within 45 days.  If

15  those are accepted, then you can tender an order to me that

16  includes those.  If there is a dispute with regard to the

17  recommendations, I'll have to set those for evidentiary

18  hearing.

19            And because it's a combined application, if there is

20  any dispute, I can't grant any of it until I resolve all of the

21  issues.  So you're all in it together, substantial contribution

22  claimants, so keep that in mind as you're talking to each other

23  over coffee that if you don't all agree, you'll have to come to

24  Indianapolis one glorious last time on this matter.

25            MR. AYLSTOCK:  We hope we won't, Judge, but we'll --

1          THE COURT:  That's the wrong answer, Mr. Aylstock.

2    You say we'd love to come.

3          MR. AYLSTOCK:  We'd love to see you again.

4          THE COURT:  There you go.

5          MR. AYLSTOCK:  We would love to see you again in

6    person.

7          MS. TOMASCO:  I knew the right answer.  I would love

8    to come to Indianapolis.

9          THE COURT:  Yes, we hope we don't have to but if we

10   do, it would be great.

11         All right.  And I'll work with my courtroom deputy to

12   make sure we get the minute entry right because that should

13   give Ms. Wolf Weiker what she needs.  If not, Mr. Kite, let us

14   know and we can either -- we can work on amending her current

15   order.  But I think this gives her enough direction because it

16   will be in a minute entry on the docket.

17         MR. KITE:  Thank you, Judge.

18         THE COURT:  All right.  Well, thank you, everyone.  I

19   hate to admit it, I do miss the case because of the lawyering

20   and the issues involved.  But as I've stated before, it's a

21   great settlement and I think everyone should be commended.

22   You've all done wonderful work and represented your various

23   interests incredibly well.

24         And it's been a thrill to work with you.  And feel

25   free to come back someday, not necessarily on the fee dispute

1  but on anything else and we'd love to have you.

2          MS. TOMASCO:  Thank you, Your Honor.  Thank you for

3  your time.

4          UNIDENTIFIED SPEAKER:  Thank you very much, Judge.

5          THE COURT:  Thank you.  And enjoy the rest of your

6  either -- well, I think everyone's on the afternoon now.  Enjoy

7  the rest of your afternoon.  Thank you.

8                      (Proceedings concluded)

9                          * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      **C E R T I F I C A T I O N**

2           We, DIPTI PATEL, and KAREN K. WATSON, court approved

3  transcribers, certify that the foregoing is a correct

4  transcript from the official electronic sound recording of the

5  proceedings in the above-entitled matter, and to the best of

6  our ability.

7

8  /s/ Dipti Patel

9  DIPTI PATEL, CET-997

10

11  /s/ Karen K. Watson

12  KAREN K. WATSON, CET-1039

13  J&J COURT TRANSCRIBERS, INC.      DATE:  September 29, 2023

14

15

16

17

18

19

20

21

22

23

24

25